## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Event Rentals, Inc., *et al.*,[1] | Case No. 14-10282 (PJW) <br> (Jointly Administered) |
| Debtors. | Objection Deadline: March 7, 2014 at 4:00 p.m. <br> Hearing Date: March 14, 2014 at 10:00 a.m. |

**EVENT RENTALS, INC. AND ITS AFFILIATED DEBTORS' MOTION FOR
ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b)
(I) AUTHORIZING THE DEBTORS TO EMPLOY FTI CONSULTING, INC.
AND (II) APPROVING THE DESIGNATION OF ANDREW HINKELMAN
AS DEBTORS' CHIEF RESTRUCTURING OFFICER**

Event Rentals, Inc. ("Event Rentals") and its affiliated debtors and debtors in

possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11

Cases"), hereby file this motion (the "Motion") pursuant to sections 105 and 363(b) of title 11 of

the United States Code (the "Bankruptcy Code") for entry of an order (i) authorizing the Debtors

to employ FTI Consulting, Inc. ("FTI") *nunc pro tunc* to the Petition Date (as defined below)

pursuant to the terms set forth in that certain engagement letter between the Debtors and FTI

dated as of February 10, 2014 (the "Engagement Letter"), a copy of which is attached hereto as

Exhibit A, and (ii) approving the designation of Andrew Hinkelman as the Debtors' Chief

Restructuring Officer ("CRO").  In support of this Motion, the Debtors submit the *Declaration of*

*Andrew Hinkelman in Support of Event Rentals, Inc. and Its Affiliated Debtors' Motion for Entry*

*of an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) (I) Authorizing the Debtors to Employ*

*FTI Consulting, Inc. and (II) Approving the Designation of Andrew Hinkelman as Debtors' Chief*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Classic Midwest, Inc.
(9934); Classic Northeast, Inc. (9871); Classic Panache, Inc. (1237); Classic Party Rentals, Inc. (3911); Classic
Party Rentals LP (0583); Classic/Prime, Inc. (7149); Classic Southeast, Inc. (0700); DBO Acquisition Corp. (1923);
DUBO Acquisition Corp. (8795); Event Rentals, Inc. (9443); Grand Events & Party Rentals, Inc. (7940); Special
Event Holding, Inc. (5659); and Unique Tabletop Rentals, Inc. (4327).  The list of the Debtors' alternate names is
located on the docket for Case No. 14-10282 [D.I. 3] and is also available at http://kccllc.net/CPR.

*Restructuring Officer* (the "Hinkelman Declaration"), attached hereto as Exhibit B, and respectfully state as follows:

## I.   BACKGROUND

### A.   General Background

1.      On February 13, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing these Chapter 11 Cases.  The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      To date, no committee has been appointed by the Office of the United States Trustee in these Chapter 11 Cases.

3.      The Debtors are the nation's largest provider of event rental products and related services, with 39 locations across 22 markets.  The Debtors have the largest offering of event equipment, value-added event services, and temporary structure assets, and provide services for over 145,000 events for approximately 55,000 customers annually.  The Debtors employ approximately 2,500 employees throughout the year and have total annual revenues of approximately $235 million.

4.      Additional background facts on the Debtors, including an overview of the Debtors' businesses, information concerning the Debtors' corporate structure, information concerning the Debtors' debt structure, and information on the events leading up to the Chapter 11 Cases is contained in the *Declaration of Jeffrey M. Black in Support of First Day Motions and Applications* [Docket No. 13] (the "CEO Declaration").[2]

---

[2] Where the context requires, each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the CEO Declaration.

**B.    Background Specific to the Motion**

5.      With the full power of over 4,000 professionals in 25 countries on six continents, FTI is capable of solving strategic, operational and financial issues faced by businesses.  Specifically, FTI provides services in areas ranging from corporate finance and interim management to economic consulting, forensic and litigation consulting, strategic communications, and technology.  FTI's clients include many corporations in the Global 1000, as well as a majority of the largest 25 banks and top 100 law firms in the world.

6.      FTI has advised management, senior lenders, and unsecured creditors in several significant restructurings and turnarounds in recent years, including *Northwest Airlines, American Home Mortgage, Bombay Company, Calpine, Global Power, Tower Automotive, Winn Dixie, Refco, Dana Corporation, Bally Total Fitness, Circuit City, Delphi, Flying J / Big West Oil, Fremont Investment & Loan, Gottschalks, Hawaiian Telecom, Intermet, Lehman Brothers, LyondellBassell, Townsends, Inc., Tribune Company, Nortel Networks, Washington Mutual,* and *WCI Communities,* among others.  FTI has a wealth of experience in providing restructuring and financial advisory services in restructurings and reorganizations, and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

7.      Mr. Hinkelman is a senior managing director at FTI with nearly twenty years of experience in restructuring matters.  Mr. Hinkelman has extensive experience representing debtors and creditors in bankruptcy and out-of-court restructurings, providing pre-lending due diligence on behalf of parties in interest, negotiating new and existing financing agreements, and performing estate wind-down and trustee related services.  Mr. Hinkelman's extensive experience includes serving as interim chief financial officer for a large international advertising agency and chief restructuring officer for *Fairfield Residential LLC,* a fully

3

integrated multifamily housing company, and Trident Microsystems Inc., a global designer and manufacturer of microchips.  Additionally, Mr. Hinkelman has served as plan administrator and vice-president of operations for *Metricom, Inc.* and as plan administrator for the *Omnisky Corp.* and *Lockwood Greene Engineers, Inc.* chapter 11 cases.  Mr. Hinkelman has been a financial advisor in numerous chapter 11 cases, including but not limited to the following: *Mervyn's LLC, Sportsman's Warehouse, Inc., Silicon Graphics, Inc., Redback Networks Inc., Planet Hollywood International, Inc., Magis Networks Inc., U.S. Wireless Corp.*, and *Dillingham Construction Holdings Inc.*

8.     On January 6, 2013, on the basis of the qualifications of FTI's professionals, including Mr. Hinkelman, the Debtors engaged FTI to provide financial advisory and consulting services to the Debtors.  On February 10 2014, the Debtors entered into the Engagement Letter, pursuant to which FTI agreed to provide the Debtors with CRO services.  The Engagement Letter superseded any prior agreement between the Debtors and FTI.   Since FTI's initial engagement and continuing following the execution of the Engagement Letter, FTI has developed a significant amount of institutional knowledge regarding the Debtors' operations, finances, and systems.  On the basis of this experience and knowledge, FTI is uniquely positioned to provide the services described in the Engagement Letter and herein.

9.     The Debtors' Board of Directors has authorized the Debtors' officers to retain and employ all assistance which they may deem necessary or proper with a view to the successful prosecution of these Chapter 11 Cases, including specifically FTI, and the Debtors view the employment of FTI to provide Mr. Hinkelman as CRO, as well as the additional personnel set forth herein (the "Additional Personnel"), to be necessary and proper.

10.     The Debtors have selected Mr. Hinkelman as CRO based upon Mr.

Hinkelman's (i) extensive experience in matters involving complex financial restructurings and

sales of debtors' assets and (ii) excellent reputation for the services rendered in chapter 11 cases

on behalf of debtors and creditors throughout the United States.  He is an expert in leading both

CRO and interim management assignments for debtor clients as well as advisory engagements

for both debtor and creditor clients.

11.     In providing prepetition services to the Debtors in connection with these

matters, Mr. Hinkelman has taken an active role in spearheading the Debtors' efforts to prepare

for their chapter 11 filings, including participating in the negotiations over the Debtors'

postpetition financing and communicating with the Debtors' various constituencies.

Accordingly, Mr. Hinkelman has developed significant relevant experience and expertise

regarding the Debtors that will assist him in providing the Debtors with effective and efficient

services in these Chapter 11 Cases.  The Additional Personnel also have significant relevant

experience and expertise that will provide the Debtors with effective and efficient services.

C.     **Scope of Services**

12.     As set forth in the Engagement Letter, FTI has been providing and will

continue to provide the following financial related services (the "Financial Objectives"), among

others:

- certain liquidity forecasting services, including evaluating the Debtors' current liquidity position and expected future cash flows, assisting with the management and control of cash disbursements, advising the Debtors on cash conservation measures and assisting with implementation of cash forecasting and reporting tools as requested, assisting with the preparation and negotiation of the Debtors' postpetition financing budgets and related documents, and managing liquidity during these Chapter 11 Cases;

- certain restructuring and other advisory services, including assessing potential earnings based on location and product line, analyzing long term capital needs, assisting with working capital management, participating in the development of strategies to negotiate with key stakeholders; assisting the Debtors in developing strategies related to

5

merchandise and other vendors, and assisting the Debtors and other advisors in developing strategy relating to existing and prospective capital provider;

- certain asset sale services, including assisting with data collection and information gathering related to third party due diligence, and advising and assisting the Debtors and other professionals in developing, negotiating, and executing sales of all or portions of the Debtors' assets; and

- certain chapter 11 planning and execution services, including assisting the Debtors' personnel with the communications and negotiations with various stakeholders, advising and assisting the Debtors in compilation and preparation of financial information, statements, schedules, and monthly operating reports necessary due to requirements of the Court and/or Officer of the United States Trustee, assisting the Debtors in the formulation of a chapter 11 plan and the preparation of the corresponding disclosure statement, assisting the Debtors in managing and executing the reconciliation process involving claims filed during these Chapter 11 Cases, and providing testimony in these Chapter 11 Cases as necessary.

13.    As also set forth in the Engagement Letter, FTI has been providing and will continue to provide the following strategic communication services (the "Strategic Communications Objectives"), among others:

- certain restructuring initiatives services, including developing a multi-stakeholder program to communicate events to employees, customers, suppliers, investors, and other key audiences, and developing a full suite of restructuring communications materials for all key stakeholder audiences; and

- certain post-restructuring communications, including developing and executing a post-restructuring process communications program to provide updates to all key stakeholder audiences, and developing a full suite of materials as needed for each key milestone beyond the initial restructuring.

### D.    FTI's Disinterestedness

14.    Although the Debtors submit that the employment of FTI is not governed by section 327 of the Bankruptcy Code, the Debtors attach the Hinkelman Declaration, which discloses, among other things, any relationship that FTI or Mr. Hinkelman has with the Debtors, their significant creditors, or other significant parties in interest known to FTI.  If any new material facts or relationships are discovered or arise, Mr. Hinkelman will provide the Court with a supplemental declaration.

15.     FTI has informed the Debtors that, except as may be set forth in the

Hinkelman Declaration, it (i) has no connection with the Debtors, their creditors or other parties-

in-interest in these Chapter 11 Cases; (ii) does not hold any interest adverse to the Debtors'

estates; and (iii) believes it is a "disinterested person" as defined in section 101(14) of the

Bankruptcy Code.

16.     Finally, FTI has agreed not to share with any person or firm the

compensation to be paid for its services rendered in connection with these Chapter 11 Cases.

### E.     Terms of Engagement

17.     Pursuant to the terms set forth in the Engagement Letter, the Debtors will

compensate FTI as follows:[3]

a) Compensation:  The Debtors have agreed to pay FTI a monthly, non-refundable
advisory fee of $185,000 (the "Monthly Fee") for the services of the Mr. Hinkelman
and those FTI employees identified in the Engagement Letter as working on the
Financial Objectives; *provided, however*, that should the Debtors determine that Mr.
Hinkelman does not need to be engaged on a full-time basis, then provided that the
Debtors give FTI five (5) days written notice prior to the first day of the following
calendar month, the Debtors may pay FTI an hourly fee (in lieu of the Monthly Fee)
based upon the hours incurred by Mr. Hinkelman and other FTI employees on behalf
of the Debtors multiplied by the standard hourly rates of such professionals, as set
forth in the Engagement Letter.  The Debtors have also agreed that Mr. Hinkelman, as
CRO, may add additional FTI employees with the prior written consent of the
Debtors and the Prepetition Secured Agent at a mutually negotiated fixed weekly rate.
Finally, the Debtors have agreed to pay FTI an additional monthly fee of $15,000 in
exchange for FTI's work on the Strategic Communication Objectives, beginning on
February 14, 2014 and continuing on the fourteenth (14th) day of each calendar
month thereafter until the earlier of (i) consummation of a sale of substantially all of
the Debtors' assets under section 363 of the Bankruptcy Code or (ii) the effective date
of a confirmed plan of reorganization in these Chapter 11 Cases.

b) Reimbursement of Expenses: Out of pocket expenses (including certain telephone,
overnight mail, messenger, travel, meals, accommodations, and other expenses
specifically related to FTI's employment) will be billed at the actual amounts
incurred.

---

[3] To the extent there is any inconsistency in connection with the summary of the principal terms of the Engagement
Letter set forth in this Motion and the principal terms as set forth in the Engagement Letter, the terms of the
Engagement Letter shall control.

c) <u>Indemnification</u>: The indemnification provisions of the Engagement Letter are subject to the following supplemental provisions:

The Debtors will indemnify FTI, its principals, employees, and affiliates in the event of certain losses, subject to the following limitations and notwithstanding the provisions of the Engagement Letter:

(i)     FTI shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

(ii)    notwithstanding any provisions of the Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify FTI, its affiliates, and their respective shareholders, members, managers, employees, agents, representatives, and subcontractors, or provide contribution or reimbursement to FTI for any claim or expense that is (i) judicially determined (the determination having become final) to have arisen from FTI's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors alleges the breach of FTI's contractual obligations, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co., et al.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination as to FTI's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which FTI should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter, as modified by the attached proposed order of this Court;

(iii)   if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these Chapter 11 Cases, FTI believes that it is entitled to the payment of any amount by the Debtors on account of Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by the attached proposed order), including, without limitation, the advancement of defense costs, FTI must file an application therefor in this Court, and the Debtors may not pay any such amounts to FTI before the entry of an order by this Court approving the payment; *provided, however*, that for the avoidance of doubt, this subparagraph (c)(iii) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by FTI for indemnification, contribution, or

8

reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify FTI; and

(iv)   during the course of these Chapter 11 Cases, all provisions in the Engagement Letter, the Motion, or elsewhere that attempt to limit FTI's liability to the amount of its fees (or a multiple thereof) shall be of no force or effect.

18.   Because FTI is not being employed as a professional under section 327 of the Bankruptcy Code, it will not be submitting fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  Instead, the Debtors intend that the fees and expenses incurred by FTI in completion of its services under the Engagement Letter be treated as administrative expenses of the Debtors' chapter 11 estates and paid by the Debtors in the ordinary course of business. FTI will be entitled to be paid in full immediately upon invoicing the Debtors, but will file with the Court and provide notice to the U.S. Trustee and counsel for the Official Committee of Unsecured Creditors (the "Creditors' Committee"), once appointed, reports of compensation and expenses on a quarterly basis, as detailed in the order attached hereto as Exhibit C.  Additionally, FTI shall file with the Court, with copies to the U.S. Trustee and the Creditors' Committee, a report of staffing on the engagement for the previous month.  Such reports shall include the names and functions filled of the individuals assigned, and shall include detailed time entries describing the task(s) performed, recorded in one-half hour increments, and organized by project category.  Such notice will provide a time period for objections as to compensation previously paid.  All compensation previously paid and staffing will be subject to review by the Court in the event an objection is filed.  The Debtors believe that FTI's fees and compensation as set forth herein are reasonable and justified under the circumstances.

F.   **Fees and Expenses Paid Under the Initial Engagement Letter**

19.   Within the ninety (90) days preceding the Petition Date, FTI billed the Debtors and received payment as follows:

| Invoice Date | Dates of Service | Invoice Amount | Payment Date | Payment Amount | Retainer Balance |
|---|---|---|---|---|---|
| 1/13/2014 | 1/1 – 1/31 | $150,000 | 1/16/2014 | $150,000 | $0 |
| 1/30/2014 | 2/1 – 2/28 | $218,540 | 2/4/2014 | $218,540 | $0 |
| 2/13/2014 | 2/1 – 2/28 | $35,000 | 2/13/2014 | $35,000 | $0 |

### G.    Indemnification

20.    FTI on the one hand and the Debtors on the other negotiated the terms and conditions of the Engagement Letter, including the provisions regarding indemnification of FTI, at arm's length and in good faith.  The Debtors and FTI believe that the indemnification language, as subject to paragraph 17(c) herein, is customary and reasonable for similar engagements in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.  *See, e.g., In re Tropicana Entm't., LLC*, No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008); *In re Sharper Image Corp.*, No. 08-10446 (KJC) (Bankr. D. Del Apr. 23, 2008); *In re Leiner Health Prods., Inc.*, No. 08-10446 (KJC) (Bankr. D. Del. April 5, 2008); *In re Friedman's Inc.*, No 08-10161 (CSS) (Bankr. D. Del. Jan. 28, 2008); *In re Am. Home Mortg. Holdings, Inc.*, No. 07-11047 (CSS) (Bankr. D. Del Sept. 5, 2007); *In re FLYi, Inc.*, No. 05-20011 (MFW) (Bankr. D. Del. Jan. 17, 2006).

## II.    JURISDICTION

21.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.   RELIEF REQUESTED

22.     By this Motion, the Debtors are seeking to continue to employ FTI and Andrew Hinkelman as CRO pursuant to sections 105(a) and 363(b) of the Bankruptcy Code in accordance with the terms of the Engagement Letter.

## IV.   BASIS FOR RELIEF

**A.     The Debtors Employment of FTI and Mr. Hinkelman as CRO is Appropriate pursuant to Sections 105(a) and 363 of the Bankruptcy Code.**

23.     Based on the foregoing, the Debtors submit that the engagement of FTI to assist the Debtors during their Chapter 11 Cases is essential to the success of these cases.

24.     The Debtors seek approval of the employment of FTI, to provide Mr. Hinkelman to serve as CRO, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. Section 363 of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In order to do so, the debtor must articulate some business justification. *See In re Chateaugay Corp.,* 973 F.2d 141, 143 (2d Cir. 1992) (holding that in reviewing a section 363(b) application, the court must find from the evidence presented before him, a good business reason to grant such application); *see also In re Ionosphere Clubs, Inc.,* 100 B.R. 670,674 (Bankr. S.D.N.Y. 1989) (noting that the standard for determining a section 363(b) motion is a "good business reason").

25.     Further, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide additional authority for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." *See* 11 U.S.C. § 105(a); *see also US. v. Energy Res. Co.,* 495 U.S. 545, 549 (1990); *Adelphia Commc'ns Corp. v. Am. Channel (In re*

*Adelphia Commc'ns Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process."); *Gillman v. Cont'l Airlines (In re Cont'l Airlines)*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code.").

26.     The employment of FTI and its professionals is a sound exercise of the Debtors' business judgment. As detailed herein, the Debtors selected FTI to provide their CRO because of Mr. Hinkelman's experience and reputation for providing restructuring services in large, complex restructuring cases. Moreover, FTI has acquired significant knowledge of the Debtors and their business operations as a result of the extensive prepetition work performed on the Debtors' behalf, making FTI the obvious choice to provide the services detailed in the Engagement Letter. Thus, the employment of FTI is necessary and appropriate to provide such services.

27.     Further, the Debtors believe that FTI's fee structure is fair and reasonable in light of the type of services being provided and compares favorably with the fee structures generally offered by firms of similar stature to FTI for comparable engagements. In addition, given the numerous issues FTI has addressed prior to the Petition Date and may need to address during these Chapter 11 Cases, FTI's commitment to the variable level of time and effort necessary to address all such related issues as they arise, and the market prices for FTI's services for engagements of this nature in an out-of-court context, the Debtors believe that the FTI fee arrangement is fair and reasonable.

28.     Finally, the Debtors are not seeking to retain FTI as a professional under section 327 of the Bankruptcy Code.  Accordingly, the Debtors submit there is no requirement that FTI be disinterested.  However, to the best of the Debtors' knowledge, information, and belief, FTI does not have any interest materially adverse to the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason. Further, the Debtors understand that FTI believes it is disinterested because, to the best of FTI's knowledge, information, and belief, FTI has no connection with the Debtors, their creditors, or any other party-in-interest, except as disclosed in the Hinkelman Declaration.

29.     The employment of corporate officers is proper under section 363 of the Bankruptcy Code, and courts in this district have recognized that such employment is an appropriate exercise of a debtor's business judgment. *See, e.g., In re School Specialty, Inc.*, No. 13-10125 (KJC) (Bankr. D. Del. Feb. 25, 2013); *In re Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012); *In re Filene's Basement*, LLC, No. 11-13511 (KJC) (Bankr. D. Del. Jan. 24, 2012); *In re Harry & David Holdings, Inc.*, No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011).

30.     The Debtors submit that the employment of FTI is a sound exercise of their business judgment and satisfies section 363 of the Bankruptcy Code as FTI's services are necessary and essential to the Debtors' restructuring efforts.  In addition to the specific knowledge they have acquired about the Debtors' businesses, FTI and its personnel have extensive experience providing management services to distressed companies.

## V.     NOTICE

31.     Notice of this Motion has been provided to the Office of the United States Trustee for the District of Delaware, counsel to the Prepetition Secured Lenders, the Debtors' 20

largest unsecured creditors on a consolidated basis (including counsel, if known), and all parties requesting notices pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be provided.

32.    No previous motion for the relief sought herein has been made to this or any other court.

[*Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request this Court enter an order

(a) authorizing the Debtors to engage FTI in accordance with this Motion; (b) appointing

Andrew Hinkelman as the CRO; and (c) granting the Debtors such other and further relief as is

just and proper.

Dated:  February 21, 2014
        Wilmington, Delaware

**FOX ROTHSCHILD LLP**

By: _____
Jeffrey M. Schlerf (No. 3047)
John H. Strock (No. 4965)
L. John Bird (No. 5310)
919 North Market Street
Suite 1600
Wilmington, Delaware 19801
Telephone:    (302) 654-7444

—and—

John K. Cunningham
(*pro hac vice* pending)
**WHITE & CASE LLP**
Southeast Financial Center
200 South Biscayne Boulevard
49th Floor
Miami, Florida 33131
Telephone:        (305)-371-2700

—and—

Craig H. Averch
(*pro hac vice* pending)
**WHITE & CASE LLP**
633 West Fifth Street
Suite 1900
Los Angeles, California 90071
Telephone:        (213) 620-7700

*Proposed Attorneys for the Debtors
and Debtors in Possession*
