**Exhibit B**

Settlement Agreement

EXECUTION VERSION

## COMPROMISE AND SETTLEMENT AGREEMENT

THIS COMPROMISE AND SETTLEMENT AGREEMENT (this "Agreement") is made and entered into as of April 11, 2014, by and among (i) Special Event Holding, Inc., and its subsidiaries Event Rentals, Inc., Dubo Acquisition Corporation, DBO Acquisition Corporation, Classic Party Rentals LP, Classic Party Rentals, Inc., Classic Midwest, Inc., Classic Northeast, Inc., Classic Panache, Inc., Classic/Prime, Inc., Classic Southeast, Inc., Unique Tabletop Rentals, Inc., and Grand Events and Party Rentals, Inc. (collectively, the "Debtors"); (ii) the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 bankruptcy cases (the "Committee"), on behalf of itself and its members (solely in their capacities as such and not in their individual capacities, the "Committee Members"); (iii) Ableco Finance LLC in its capacity as the successor administrative agent (in such capacity, the "Prepetition Agent") under the Prepetition Financing Agreement (as defined below) among the Debtors, the Prepetition Agent, and the lenders party thereto (collectively, the "Prepetition Lenders") and the Prepetition Lenders signatory hereto; (iv) Ableco Finance LLC in its capacity as the administrative agent (in such capacity, the "DIP Agent") under the DIP Financing Agreement (as defined below) among the Debtors, the DIP Agent, and the lenders party thereto (collectively, the "DIP Lenders") and the DIP Lenders signatory hereto; and (v) CPR Acquisition Holdings, LLC (together with its subsidiaries and any successors or assigns, or other entity designated to effect the transactions contemplated by the APA (as defined below), the "Buyer").  The foregoing parties are sometimes referred to herein individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, on February 13, 2014, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

WHEREAS, the Debtors' chapter 11 bankruptcy cases are docketed and remain pending in the Bankruptcy Court as *In re Event Rentals, Inc.*, Jointly Administered Case No. 14-10282 (PJW) (the "Bankruptcy Cases"); and

WHEREAS, on or about February 25, 2014, the Office of the United States Trustee for the District of Delaware appointed the Committee in the Bankruptcy Cases pursuant to section 1102 of the Bankruptcy Code; and

WHEREAS, the Prepetition Lenders extended prepetition financing to the Debtors pursuant to that certain Financing Agreement, dated as of December 20, 2006 (as amended, restated, or otherwise modified from time to time, the "Prepetition Financing Agreement," and collectively with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the "Loan Documents" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition Loan Documents"); and

WHEREAS, in connection with the Prepetition Financing Agreement, the Prepetition Agent and the Prepetition Lenders allege that the Debtors granted them liens (the "Prepetition Liens") on substantially all the Debtors' assets, which liens secure all obligations of the Debtors arising under the Prepetition Financing Agreement (including, without limitation, the "Obligations" as defined therein) or the other Prepetition Loan Documents (collectively, the "Prepetition Obligations"); and

WHEREAS, the DIP Lenders are providing debtor-in-possession financing to the estates pursuant to that certain Senior Secured and Superpriority Financing Agreement, dated as of February 18, 2014 (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms and the terms of the DIP Financing Order (as defined below), the "DIP Financing Agreement"), and that certain *Final Order (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code; (II) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code; (III) Granting Adequate Protection to the Prepetition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code; (IV) Granting Liens and Superpriority Claims; and (V) Modifying the Automatic Stay* (the "DIP Financing Order"), which includes certain stipulations and agreements by the Debtors (as defined and more fully set forth in the DIP Financing Order, the "Debtors' Stipulations"), including, without limitation, that the Prepetition Liens securing the Prepetition Obligations are valid and enforceable; and

WHEREAS, Paragraph 6 of the DIP Financing Order provides the Committee until May 23, 2014 (the "Challenge Deadline") to assert any "Challenge" (as defined in the DIP Financing Order) with respect to the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Obligations, and the other matters described therein; and

WHEREAS, the Committee asserts, and the Prepetition Agent and Prepetition Lenders dispute, that the Debtors' estates may have certain claims or defenses against the Prepetition Agent and Prepetition Lenders related to the Prepetition Obligations and the Prepetition Liens; and

WHEREAS, the Debtors have filed a motion to sell substantially all of their assets to the Buyer, subject to potential overbids (the "Sale"), pursuant to section 363 of the Bankruptcy Code and that certain Asset Purchase Agreement dated as of February 14, 2014 (the "APA"), a hearing on which Sale is presently scheduled for April 29, 2014 (such hearing, the "Sale Hearing"); and

WHEREAS, the Committee has indicated that it intends to oppose and object to the Sale absent a settlement acceptable to the Committee; and

WHEREAS, in order to avoid the expense of litigating any Challenge or any objections by the Committee to the Sale, the Parties have reached a compromise and settlement as set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the mutual covenants, agreements, and promises set forth herein, and for other good and valuable considerations, the receipt

and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows.

1.    <u>Prepetition Liens Are Valid</u>.  The Debtors and the Committee, on behalf of themselves and the Debtors' estates, acknowledge and agree that (a) the Prepetition Liens are valid and duly perfected first priority security interests on substantially all the Debtors' assets and the products and proceeds thereof in accordance with the terms of the Prepetition Financing Agreement, the other Prepetition Loan Documents, and the DIP Financing Order, and (b) the Debtors and Committee will not assert any Challenge with respect to the Prepetition Liens.  Without limiting the generality of the foregoing, the Committee adopts and agrees to be bound by the Debtors' Stipulations with respect to the Prepetition Liens.  For the avoidance of doubt, regardless of whether this Agreement is approved and becomes effective, the Debtors' Stipulations with respect to the Prepetition Liens shall remain in full force and effect to the full extent set forth in DIP Financing Order.

2.    <u>Prepetition Obligations Are Valid</u>.  The Debtors and the Committee, on behalf of themselves and the Debtors' estates, acknowledge and agree that (a) the Prepetition Obligations constitute allowed, legal, valid, binding, enforceable, and non-avoidable obligations of each of the applicable Debtors; (b) the Prepetition Obligations are not subject to any setoffs, recoupments, offsets, objections, defenses, or counterclaims pursuant to the Bankruptcy Code or any other applicable law; (c) no portion of the Prepetition Obligations or any payments made to any or all of the Prepetition Agent or the Prepetition Lenders are subject to avoidance, disallowance, impairment, recharacterization, recovery, disgorgement, subordination, attack, setoff, offset, recoupment, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or any applicable non-bankruptcy law; and (d) the Debtors and Committee will not assert any Challenge with respect to the Prepetition Obligations.  Without limiting the generality of the foregoing, the Committee adopts and agrees to be bound by the Debtors' Stipulations with respect to the Prepetition Obligations.  For the avoidance of doubt, regardless of whether this Agreement is approved and becomes effective, the Debtors' Stipulations with respect to the Prepetition Obligations shall remain in full force and effect to the full extent set forth in DIP Financing Order.

3.    <u>Binding Effect of Releases and Stipulations</u>.  In addition to being bound by Paragraphs 1 and 2 of this Agreement, the Debtors, the Debtors' estates, the Committee, and all other parties in interest will be bound by all of the Debtors' Stipulations, including, without limitation, the releases set forth in Paragraph E.(iv) of the DIP Financing Order.  Without limiting the generality of the foregoing, the Committee agrees and acknowledges that neither it nor the Committee Members will bring or support any Challenge.

4.    <u>Settlement Payments to the Estates</u>.  In exchange for the covenants, agreements, and promises set forth herein, the Prepetition Agent, Prepetition Lenders, DIP Agent, and DIP Lenders agree:

a.      On and subject to the closing date of the Sale (the "Closing Date"), the Wind Down Budget set forth as Exhibit D to the APA or the Wind-Down Budget attached as Exhibit B to the DIP Financing Order, as applicable, will be revised to provide for the additional transfer of $600,000 free and clear of liens and claims of the Prepetition Lenders and of the DIP Lenders (the "Unencumbered Settlement Cash") to a segregated account that will be maintained by the Debtors as property of their bankruptcy estates for distribution in accordance with a chapter 11 plan or further order of the Bankruptcy Court.

b.      In the event that the ultimate purchaser in the Sale is an overbidder (the "Prevailing Bidder"), on and subject to the Closing Date and subject to the condition that all cash and other proceeds of the Sale are paid and applied as required by Paragraph 12 of the DIP Financing Order, the amount of the Unencumbered Settlement Cash will be increased by (x) 2.5% of the amount of any cash consideration paid by the Prevailing Bidder in excess of $125,000,000 but less than $130,000,000, and (y) 5% of the amount of any cash consideration paid by the Prevailing Bidder in excess of $130,000,000 (together, such aggregate amount to be added to the Unencumbered Settlement Cash, the "Sale Cash Proceeds Carve-Out"); *provided, however*, that in no event shall the aggregate amount of the Sale Cash Proceeds Carve-Out exceed $400,000.

c.      If the aggregate amount of the actual "Total Post-Sale Professional Fees" contemplated by and payable pursuant to the Wind Down Budget set forth as Exhibit D to the APA or the Wind-Down Budget attached as Exhibit B to the DIP Financing Order, as applicable, is less than $1,573,000[1] (such difference, the "Post-Sale Professional Fee Savings"), then, notwithstanding anything to the contrary in the APA or the DIP Financing Order, (x) an amount of the wind-down funds equal to 75% of the Post-Sale Professional Fee Savings (the "Post-Sale Professional Fee Savings Carve-Out") shall be retained by the Debtors' estates and treated as Unencumbered Settlement Cash, and (y) the remaining 25% of the Post-Sale Professional Fee Savings shall be remitted to the Prepetition Agent or to the Buyer, as applicable, pursuant to Paragraph 7(c) of the DIP Financing Order or Section 3.1(b) of the APA, as applicable; *provided, however*, that in no event shall the aggregate amount of the Post-Sale Professional Fee Savings Carve-Out exceed $150,000 (for the avoidance of doubt, 100% of any Post-Sale Professional Fee Savings in excess of this cap shall be remitted to the Prepetition Agent or to the Buyer, as applicable).  Except as expressly set forth herein, nothing in this Agreement shall modify or alter Paragraph 7(c) of the DIP Financing Order or Section 3.1(b) of the APA, including, without limitation, with respect to the payment of unused wind-down amounts to the Prepetition Agent or to the Buyer, as applicable.

5.      Support of the Sale.  The Committee consents to the Sale and approval of the APA and agrees and acknowledges that neither it nor the Committee Members will

---

[1]     The line item for $75,000 on account of "Committee Advisors (Counsel & FA)" has been deemed removed from the wind-down budgets pursuant to Paragraph 19 of the DIP Financing Order.

(a) directly or indirectly object to or otherwise oppose the Debtors' motion to approve the Sale, the consummation of the Sale, or the APA (or any other asset purchase agreement between the Debtors and the Prevailing Bidder) or (b) directly or indirectly support any other person or entity in taking any action prohibited by clause (a) of this sentence. Without limiting the generality of the foregoing, neither the Committee nor the Committee Members will object to (or support any other person or entity in objecting to) any finding, conclusion, or provision set forth in the form of *Order: (1) Approving Asset Purchase Agreement Among the Debtors and the Buyer; (2) Approving Sale of Substantially All Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f), and 363(m); (3) Approving Assumption, Assignment, Transfer, and/or Sale of Certain Executory Contracts and Unexpired Leases Free and Clear of all Liens, Claims, Encumbrances, and Other Interests Pursuant to Bankruptcy Code Sections 363 and 365; (4) Determining the Amounts Necessary to Cure Such Executory Contracts and Unexpired Leases; and (5) Granting Related Relief* attached hereto as **Exhibit 1** (an order substantially in the form thereof, the "Sale Order").

6.     Deficiency Claims and Related Rights.  In exchange for the covenants, agreements, and promises set forth in this Agreement, to the extent that all of the Prepetition Obligations are not satisfied in full upon consummation of the Sale, after and subject to the Closing Date, the Prepetition Agent, on behalf of the Prepetition Lenders and as contemplated by that certain Credit Bid Agreement dated as of February 14, 2014, shall not receive any distribution from or in connection with the Bankruptcy Cases (including, without limitation, pursuant to subordination agreements applicable to any of the Debtors' other creditors) on account of any Prepetition Obligations that are not satisfied in full upon consummation of the Sale; *provided, however*, that any and all rights of payments under Paragraphs 4(d), 7(c), and 12 of the DIP Financing Order shall be fully preserved and unaffected by this Agreement.  For the avoidance of doubt, nothing in this Agreement shall affect or diminish (i) any rights under Sections 2.4(e) or 3.1(b) of the APA, or (ii) any claims of the DIP Lenders or the Prepetition Lenders as against the Buyer (including, without limitation, in respect of any obligations that are assumed by the Buyer as contemplated by the APA).

7.     Covenant Not to Sue.  Pursuant to Section 2.1(q) of the APA, the Buyer will acquire all rights, claims, and causes of action of the Debtors and their estates (whether arising before or after the Bankruptcy Cases), including, without limitation, all rights, claims, or causes of action arising under chapter 5 of the Bankruptcy Code and any similar law, relating to assets, properties, business, or operations of the Debtors or the Purchased Assets (as defined in the APA) (collectively, the "Litigation Claims").  The Buyer agrees (a) not to prosecute, or assert, any Litigation Claims that arise under chapter 5 of the Bankruptcy Code other than as a defense or offset to an affirmative claim or cause of action brought against the Buyer based on any conduct, claim, action, or inaction arising prior to the Closing Date; *provided, however*, that nothing in this Agreement shall expand or create any third party rights or claims against the Buyer; and (b) not to sell, transfer, or convey any such Litigation Claims to any other person or entity unless such person or entity agrees to be bound by this covenant not to sue.

8.     <u>Releases</u>.  In addition to and without limiting the releases provided under the DIP Financing Agreement and the APA, the Parties' compromise and settlement includes the following releases.

a.     Effective as of, and subject to the occurrence of, the Closing Date, the Committee and the Committee Members, each on behalf of itself and its respective employees, officers, managers, directors, representatives, agents, successors, assigns, and attorneys, in each case solely in such capacity with respect to the Committee (collectively, the "<u>Committee Parties</u>"), each hereby releases, acquits, and forever discharges the Prepetition Agent, each Prepetition Lender signatory hereto, the DIP Agent, each DIP Lender signatory hereto, and each of their respective affiliates, employees, officers, directors, managers, members, representatives, agents, attorneys, direct or indirect equityholders, successors (other than the Buyer), predecessors, and assigns (other than the Buyer), in each case solely in such capacity with respect to the Prepetition Agent, a Prepetition Lender signatory hereto, the DIP Agent, or a DIP Lender signatory hereto, as the case may be (collectively, the "<u>Lender Released Parties</u>"), each in any and all capacities under the Prepetition Financing Agreement or the DIP Financing Agreement, from any and all claims, rights, demands, causes of action, suits, debts, obligations, liabilities, damages, losses, fees, costs, and expenses (including, without limitation, attorneys' fees, costs, and expenses), whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, of any kind, nature, and/or description, matured or unmatured, liquidated or unliquidated, accrued or unaccrued, actual or potential, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not asserted, threatened, alleged, or litigated, at law, equity, or otherwise (collectively, "<u>Claims</u>"), that have arisen or could have arisen or that could arise in the future on account of, arising out of, relating to, or resulting from any circumstances, conduct, facts, events, transactions, acts, occurrences, statements, representations, misrepresentations or omissions, errors, negligence, breach of contract, tort, violation of law, matter, or cause occurring or arising prior to the Closing Date or attributable to such period, in each case which any of Committee Parties has had, now has, or may have in the future against any of the Lender Released Parties in connection with or arising out of (i) the Prepetition Financing Agreement, the DIP Financing Agreement, and any transactions contemplated thereby or any action or omission in connection therewith, (ii) the Debtors or their businesses, and (iii) the Bankruptcy Cases (the foregoing release being the "<u>Lender Release</u>"); *provided, however*, that the Lender Release shall not include (x) Claims arising from fraud of the Lender Released Parties as finally determined by a court of competent jurisdiction or (y) Claims in connection with or arising out of this Agreement.

b.     Effective as of, and subject to the occurrence of, the Closing Date, the Prepetition Agent, each of the Prepetition Lenders signatory hereto, the DIP Agent, and each of the DIP Lenders signatory hereto, each on behalf of itself and its respective employees, officers, managers, directors, representatives, agents, successors (other than the Buyer), assigns (other than the Buyer), and attorneys, in

each case solely in such capacity with respect to the Prepetition Agent, a Prepetition Lender signatory hereto, the DIP Agent, or a DIP Lender signatory hereto, as the case may be (collectively, the "Lender Parties"), each hereby releases, acquits, and forever discharges the Committee, the Committee Members, and each of their respective affiliates, employees, officers, directors, managers, members, representatives, agents, attorneys, direct or indirect equityholders, successors, predecessors, and assigns, in each case solely in such capacity with respect to the Committee (collectively, the "Committee Released Parties") from any and all Claims that have arisen or could have arisen or that could arise in the future on account of, arising out of, relating to, or resulting from any circumstances, conduct, facts, events, transactions, acts, occurrences, statements, representations, misrepresentations or omissions, errors, negligence, breach of contract, tort, violation of law, matter, or cause occurring or arising prior to the Closing Date or attributable to such period, in each case which any of the Lender Parties has had, now has, or may have in the future against any of the Committee Released Parties in connection with or arising out of (i) the Prepetition Financing Agreement, the DIP Financing Agreement, and any transactions contemplated thereby or any action or omission in connection therewith, (ii) the Debtors or their businesses, and (iii) the Bankruptcy Cases (the foregoing release being the "Committee Parties Release"); *provided, however*, that the Committee Parties Release shall not include (x) Claims arising from fraud of the Committee Released Parties as finally determined by a court of competent jurisdiction or (y) Claims in connection with or arising out of this Agreement.

c.      It is the intention of the Committee Parties and the Lender Parties in executing this Agreement that, upon the entry of the Approval Order (as defined below) and the Closing Date, the releases set forth in this Paragraph 8 shall be effective as a bar to each and every Claim mentioned or implied in Paragraph 8(a) and 8(b), and each Committee Party and Lender Party hereby knowingly and voluntarily waives any and all such Claims.  Each Committee Party and Lender Party expressly consents that the releases in this Agreement shall be given full force and effect according to each and all of their express terms and provisions, including, without limitation, those relating to unknown and unsuspected Claims, demands, charges, and causes of action (notwithstanding any state statute or other law that expressly limits the effectiveness of a general release of the unknown, unsuspected and unanticipated Claims).

d.      To the extent that California law is deemed to apply to the release provisions of this Agreement, each Committee Party and Lender Party hereby warrants, represents, and agrees that it is fully aware of California Civil Code Section 1542, which provides as follows:

**SECTION 1542.  GENERAL RELEASE**.  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST

HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Each Committee Party and Lender Party hereby knowingly and voluntarily waives and relinquishes the provisions, rights, and benefits of Section 1542 and all similar federal, state, rights, rules, or legal principles of any other jurisdiction that may be applicable herein, and any rights it may have to invoke the provisions of any such law now or in the future with respect to the Claims being released by it pursuant to this Agreement, and each of parties hereby agrees and acknowledges that this Paragraph 8(d) is an essential term of this Agreement.  In connection with the releases set forth herein, each Committee Party and Lender Party acknowledges that it is aware that it or its attorneys or others may hereafter discover claims or facts presently unknown or unsuspected in addition to or different from those which it now knows or believes to be true with respect to the subject matter of the Claims being released pursuant to this Agreement.  Nevertheless, it is the intention of each Committee Party and Lender Party in executing this Agreement to fully, finally, and forever settle and release all matters and all claims relating thereto, which exist, hereafter may exist or might have existed (whether or not previously or currently asserted in any action) constituting Claims released pursuant to this Agreement.

9.      _Bankruptcy Court Approval and Approval Process_.  The Parties hereby agree to the following process regarding approval and consummation of this Agreement:

a.      This Agreement must be submitted to the Bankruptcy Court for final approval after notice and a hearing in accordance with Federal Rule of Bankruptcy Procedure 9019 and other applicable law.  The Debtors and the Committee agree (1) to file a joint motion to approve the settlement set forth herein, in form and substance reasonably acceptable to the Debtors, the Committee, the Prepetition Agent, the DIP Agent, and the Required DIP Lenders (as defined in the DIP Financing Agreement) (the "_Settlement Motion_") on or before April 14, 2014; (2) not to withdraw the Settlement Motion after it has been filed; and (3) not to file any other motion, application, pleading, or request that is in any respect inconsistent with the Settlement Motion, or that would threaten, hinder, or prevent the relief requested in the Settlement Motion.  The Parties agree to use their reasonable best efforts to schedule a hearing on the Settlement Motion contemporaneously with the Sale Hearing but in all events before the Closing Date; _provided, however_, that the Parties understand and acknowledge that the Sale Hearing may occur prior to any hearing on the Settlement Motion and that no Party shall be required to agree to an extension of the Sale Hearing in the event that a hearing on the Settlement Motion cannot be scheduled contemporaneously with the Sale Hearing.  Without limiting the provisions of Paragraphs 1, 2, and 3 of this Agreement, the Committee agrees and acknowledges that neither it nor the Committee Members will bring or support any Challenge before the date on which the Settlement Motion is set for hearing; _provided, however_, that if the date on which the Settlement Motion is scheduled for hearing is after the Challenge Deadline and if the Challenge Deadline is not extended pursuant to the

requirements of the DIP Financing Order, then the Committee may commence a Challenge as a protective measure (but not prosecute such Challenge further pending the hearing on the Settlement Motion), which Challenge shall be promptly dismissed with prejudice if the Bankruptcy Court subsequently grants the Settlement Motion.

b.      Except with respect to the covenants contained in Paragraphs 5 and 9(a) of this Agreement and the provisions of Paragraphs 9(b), 9(c), and 13-16 of this Agreement, none of the terms or provisions of this Agreement will be effective and binding on any of the Parties or any other creditors and parties in interest until such time as (1) the Bankruptcy Court has entered an order granting the Settlement Motion (the "Approval Order"), in form and substance acceptable to the Debtors, the Committee, the Prepetition Agent, the DIP Agent, and the Required DIP Lenders, providing, among other things, that the Debtors' Stipulations shall be binding on the Debtors, the Debtors' estates, the Committee, and all other parties in interest, that no party will be allowed to pursue any Challenge, and that once the Approval Order becomes final and unappealable, no entity can seek any relief from its provisions under sections 105 or 502(j) of the Bankruptcy Code or other applicable law; and (2) the Approval Order has become a final and unappealable order.  Each of the Parties agrees to use its reasonable best efforts to seek timely entry of the Approval Order and to make the Approval Order final and unappealable.  With the exception of the Approval Order, the Parties agree that no other order or ruling from the Bankruptcy Court will be required to implement this Agreement.

c.      If the Bankruptcy Court declines to approve this Agreement despite the reasonable best efforts of the Parties to obtain such approval, then (1) this Agreement shall be null and void and of no force or effect (other than with respect to the evidentiary stipulations in Paragraph 13(e) hereof) and (2) the Parties' respective rights with respect to all matters addressed by this Agreement shall be fully reserved and the Parties shall be restored to their respective positions, *status quo ante*, as of April 11, 2014; *provided, however*, that nothing in this Agreement will create, impair, or otherwise affect any right of any Party to attempt to challenge, void, or reverse the Bankruptcy Court's approval of any sale transaction, and all Parties' rights with respect to any such attempt are fully reserved; *provided, further, however*, that the Committee and the Committee Members agree that they shall have no right to invalidate, void, unwind, or otherwise reverse any sale transaction that has been approved by the Bankruptcy Court and has closed, and nothing in this Agreement will create, impair, or otherwise affect any right of any Party with respect to the closing of any sale transaction.

10.     Exit Mechanism.  The Debtors and the Committee, in consultation with the Prepetition Agent, the Prepetition Lenders, the DIP Agent, and the DIP Lenders, will negotiate in good faith the provisions of a chapter 11 plan in the Bankruptcy Cases (an "Acceptable Plan"), which Acceptable Plan shall contain customary broad and mutual release provisions (the "Plan Releases") among the Debtors (and their respective officers

and directors), the Committee, the Prepetition Agent, each Prepetition Lender signatory hereto, the DIP Agent, each DIP Lender signatory hereto, and other participating creditors and equity holders relating to the Debtors or their businesses, the Bankruptcy Cases, the Prepetition Financing Agreement, the DIP Financing Agreement, and any transactions contemplated thereby or any action or omission in connection therewith (but without reducing or impairing the effectiveness of any releases set forth in this Agreement, in the DIP Financing Order, and in the APA); *provided, however*, that no Acceptable Plan or other exit strategy shall be in any respect inconsistent with, or threaten, hinder, or prevent the implementation of, any terms of (a) the DIP Financing Agreement, (b) the DIP Financing Agreement, (c) the APA (including, without limitation, all exhibits and schedules thereto), (d) the Sale Order, or (e) this Agreement or the Approval Order.   Subject to Bankruptcy Code sections 1125 and 1126, and provided that an Acceptable Plan (x) complies in all respects with this Agreement, (y) is otherwise reasonably acceptable to the Prepetition Agent and the Prepetition Lenders signatory hereto, and (z) does not contain any terms (other than the Plan Releases) that impose any obligations on the Prepetition Agent or the Prepetition Lenders or that otherwise are adverse to the Prepetition Agent or the Prepetition Lenders in their respective good faith determination, each of the Prepetition Lenders signatory hereto agrees that it will vote its claims to accept an Acceptable Plan.  For the avoidance of doubt, (A) none of the Lender Parties shall have any obligations with respect to an Acceptable Plan except to vote to accept such Acceptable Plan in accordance with this Paragraph 10, including, without limitation, (1) to fund (directly or indirectly) any payments, distributions, or other amounts, or to agree to any carve-out, in excess of the amounts already provided for in the DIP Financing Order and in the Wind Down Budget set forth as Exhibit D to the APA or the Wind-Down Budget attached as Exhibit B to the DIP Financing Order, as applicable; or (2) to take any other act or action that may be required for the confirmation or effectiveness of any Acceptable Plan; and (B) none of the preparation, completion, filing, confirmation, or effectiveness of any chapter 11 plan is a condition to the consummation of any transactions contemplated by this Agreement and the APA (or any other asset purchase agreement between the Debtors and the Prevailing Bidder).

11.   <u>Cooperation</u>.  The Parties shall cooperate with each other in good faith and shall coordinate their activities (to the extent practicable) in respect of the Sale and the transactions contemplated by this Agreement and the APA (or any other asset purchase agreement between the Debtors and the Prevailing Bidder); *provided*, that the Parties' compliance with this Paragraph 11 shall not be deemed to be, require, or constitute a waiver of any applicable attorney-client, work product, or other privilege.

12.   <u>Successors and Assigns</u>.   This Agreement and each of the provisions hereof will apply to, bind, and benefit the Parties' respective successors and assigns, including, without limitation, any chapter 11 or chapter 7 trustee that may be appointed with respect to one or more of the Debtors' estates and any transferee of any claims held by any of the Prepetition Lenders or any of the DIP Lenders.

13.    <u>Entire Agreement; Drafting and Interpretation; Settlement Protections</u>.

a.      This Agreement is the entire agreement among the Parties with respect to the compromise and settlement set forth herein and supersedes all prior agreements, oral or written, between or among the Parties with respect thereto.

b.      This Agreement is the product of negotiation by and among the Parties. There shall be no presumption concerning whether to interpret this Agreement for or against any Party by reason of that Party having drafted this Agreement, or any portion thereof, or caused it or any portion thereof to be drafted.  Each Party acknowledges that it has had the opportunity to be represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement.  Accordingly, any rule of law or legal decision that would provide any Party with a defense to the enforcement of the terms of this Agreement against such Party based on lack of legal counsel shall have no application and is expressly waived.

c.      Each Party hereby confirms that its decision to execute this Agreement has been based upon its independent investigation of the operations, businesses, financial and other conditions and prospects of the Debtors.  Each Party acknowledges that any materials or information furnished to it by any other Party has been provided for informational purposes only, without any representation or warranty by such other Party.

d.      The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

e.      This Agreement is part of a proposed compromise and settlement among the Parties.  Except as expressly provided in this Agreement, nothing herein is intended to, or does, in any manner waive, limit, impair, or restrict the ability of each of the Parties hereto to protect and preserve their rights, remedies, claims, and interests, and all such rights are fully reserved.  Nothing herein shall be deemed an admission of any kind.  All pre-execution drafts of this Agreement and all communications among counsel for the Parties regarding this Agreement (collectively, the "<u>Negotiation Materials</u>") shall constitute settlement discussions pursuant to Federal Rule of Evidence 408 and any other applicable rules of similar import.  The Parties hereby stipulate and agree that unless and until the Bankruptcy Court approves this Agreement and this Agreement becomes effective pursuant to Paragraph 9(b) hereof, this Agreement will be inadmissible as evidence for any purpose other than to enforce the covenants contained in Paragraphs 5 and 9(a) of this Agreement.

14.    <u>Execution</u>.  This Agreement may be executed and delivered (by facsimile, PDF, or otherwise) in any number of counterparts, each of which, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement.  Delivery of an executed signature page of this Agreement by telecopier or

email shall be as effective as delivery of a manually executed signature page of this Agreement.  Each Party represents that each individual executing this Agreement on behalf of such Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of such Party.

15.    <u>Modification; Waivers</u>.  No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing by all of the Parties.  No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the Party making the waiver.

16.    <u>Governing Law; Jurisdiction</u>.  This Agreement shall be governed by and construed in accordance with the substantive law of the State of Delaware, without regard to its conflict of laws or any other choice of law rules; *provided, however*, that with respect to any matters arising under the Bankruptcy Code, this Agreement shall be governed by and construed in accordance with federal bankruptcy law.  By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees that any dispute with respect to this Agreement shall be resolved by the Bankruptcy Court, which shall have and retain jurisdiction and power to enforce the terms of this Agreement.

[remainder of page intentionally left blank; signature pages follow]

IN WITNESS WHEREOF, each of the Parties has caused this Agreement to be executed and delivered as of the date first written above.

**PARENT DEBTOR:**          **SPECIAL EVENT HOLDING, INC.**

By: _____

Name: _JEFFREY M. BLACK_

Title: _Pres/CEO_

[Signature Page to Compromise and Settlement Agreement]

**<u>DEBTOR SUBSIDIARIES</u>:**

**EVENT RENTALS, INC.**
**DUBO ACQUISITION CORPORATION**
**DBO ACQUISITION CORPORATION**
**CLASSIC PARTY RENTALS LP**
**CLASSIC PARTY RENTALS, INC.**
**CLASSIC MIDWEST, INC.**
**CLASSIC NORTHEAST, INC.**
**CLASSIC PANACHE, INC.**
**CLASSIC/PRIME, INC.**
**CLASSIC SOUTHEAST, INC.**
**UNIQUE TABLETOP RENTALS, INC.**
**GRAND EVENTS AND PARTY RENTALS, INC.**

By: _____

Name: _JEFFREY M. BEACH_

Title: _PRES/ CEO_

**COMMITTEE:**

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By: _____

Name: Joel Nevens
Title: Committee Co-Chair

**ABLECO FINANCE LLC**, as Prepetition Agent

By: _____
Name:  Eric Miller
Title:  Senior vice President

[Signature Page to Compromise and Settlement Agreement]

**ABLECO FINANCE LLC**, as DIP Agent

By: _____

Name: _Eric Miller_____

Title: _Senior Vice President____

[Signature Page to Compromise and Settlement Agreement]

**ABLECO FINANCE LLC**, in its capacity as a DIP
Lender

By: _____

Name: Eric Miller

Title: Senior Vice President

[Signature Page to Compromise and Settlement Agreement]

**ABLECO CAPITAL LLC**, in its capacity as a
Prepetition Lender

By: _____
Name: Eric Miller
Title: Senior Vice President

[Signature Page to Compromise and Settlement Agreement]

**COLTS 2005-2 LTD.**, in its capacity as a Prepetition Lender

By:    Structured Asset Investors, LLC, as Collateral Manager

      By:  Ivy Hill Asset Management, L.P., as Subservicer

By:    _____

      Name:    _____

      Title:    _____

               Ryan Cascade
            Duly Authorized Signatory

[Signature Page to Compromise and Settlement Agreement]

**CREDIT SUISSE LOAN FUNDING LLC**, in its
capacity as a Prepetition Lender and as a DIP Lender

By: _____

Name: ~~Leigh Dworkin~~

Title: ~~Authorized Signatory~~

ROBERT FRANZ
AUTHORIZED SIGNATORY

[Signature Page to Compromise and Settlement Agreement]

**299 CREDIT FINANCE HOLDINGS LLC**, in its
capacity as a Prepetition Lender

By: _____

Name: _Daniel Wolf_____

Title: _Senior Managing Director_____

[Signature Page to Compromise and Settlement Agreement]

**EMPORIA PREFERRED FUNDING II, LTD.,** in its capacity as a Prepetition Lender

By:   Ivy Hill Asset Management, L.P., as Collateral
      Manager

By:   _____
      Name: _____
      Ryan Cascade
      Title: _____
      Duly Authorized Signatory

**EMPORIA PREFERRED FUNDING III, LTD.,** in its capacity as a Prepetition Lender

By:   Ivy Hill Asset Management, L.P., as Collateral
      Manager

By:   _____
      Name: _____
      Title: _____
      Ryan Cascade
      Duly Authorized Signatory

**FM LEVERAGED CAPITAL FUND I,** in its capacity
as a Prepetition Lender
By:  GSO/Blackstone Debt Funds Management LLC as
Subadviser to FriedbergMilstein LLC

By: _____

Name: _____
           Daniel H. Smith

Title: _____
        Authorized Signatory


**FM LEVERAGED CAPITAL FUND II.,** in its capacity
as a Prepetition Lender
By:  GSO/Blackstone Debt Funds Management LLC as
Subadviser to FriedbergMilstein LLC

By: _____

Name: _____
          Daniel H. Smith

Title: _____
        Authorized Signatory

**FORTRESS CREDIT OPPORTUNITIES I LP,** in its
capacity as a DIP Lender

By: Fortress Credit Opportunities I GP LLC, its general
partner

By: _____
    Name:    CONSTANTINE M. DAKOLIAS
    Title:        PRESIDENT

[Signature Page to Compromise and Settlement Agreement]

**FORTRESS CREDIT FUNDING III LP,** in its capacity
as a Prepetition Lender

By:  Fortress Credit Funding III GP LLC,
     its general partner

By:  _____
     Name:  CONSTANTINE M. DAKOLIAS
     Title:          PRESIDENT


**FORTRESS CREDIT FUNDING IV LP,** in its capacity
as a Prepetition Lender

By:  Fortress Credit Funding IV GP LLC,
     its general partner

By:  _____
     Name:  CONSTANTINE M. DAKOLIAS
     Title:          PRESIDENT

[Signature Page to Compromise and Settlement Agreement]

**GENERAL ELECTRIC CAPITAL CORPORATION,**
in its capacity as a Prepetition Lender and as a DIP Lender

By: _____

Name: David Kopchick

Title: Duly Authorized Signatory

[Signature Page to Compromise and Settlement Agreement]

**GSC PARTNERS CDO FUND VI, LIMITED,** in its capacity as a Prepetition Lender

By:   GSC Acquisition Holdings, L.L.C., as its Collateral Manager
By:   GSC MANAGER, LLC, in its capacity as Manager
By:   BLACK DIAMOND CAPITAL MANAGEMENT, L.L.C., in its capacity as Member

Name: _____
Title: _____
Stephen H. Deckoff
Managing Principal

**GSC PARTNERS CDO FUND VII, LIMITED,** in its capacity as a Prepetition Lender

By:   GSC Acquisition Holdings, L.L.C., as its Collateral Manager
By:   GSC MANAGER, LLC, in its capacity as Manager
By:   BLACK DIAMOND CAPITAL MANAGEMENT, L.L.C., in its capacity as Member

Name: _____
Title: _____
Stephen H. Deckoff
Managing Principal

[Signature Page to Compromise and Settlement Agreement]

**IVY HILL INVESTMENT HOLDINGS LLC,** in its
capacity as a Prepetition Lender and as a DIP Lender

By: _____

Name: _____

Title: _____

Ryan Cascade
Duly Authorized Signatory

[Signature Page to Compromise and Settlement Agreement]

**NEWSTAR LOAN FUNDING, LLC,** in its capacity as a
Prepetition Lender and as a DIP Lender


By:     NewStar Financial, Inc.,
        its Manager

By:     _____
        Name:    Robert E. Hornstein
        Title:    Managing Director

[Signature Page to Compromise and Settlement Agreement]

**SARGAS CLO I LTD.,** in its capacity as a Prepetition Lender

By:    Sargas Asset Management, LLC,
        as PortfolioManager

By:    _____
        Name:    CONSTANTINE M. DAKOLIAS
        Title:        PRESIDENT

[Signature Page to Compromise and Settlement Agreement]

**TWIN HAVEN SPECIAL OPPORTUNITIES IV, L.P.,** in its capacity as a Prepetition Lender and as a DIP Lender

By:    Twin Haven Capital Partners, LLC,
       its Investment Manager

By:    _____
       Name:    Robert Webster
       Title:    Managing Member

**WELLS FARGO BANK N.A.,** in its capacity as a
Prepetition Lender

By:   _____

Name:   _Brian Carrico_

Title:   _Senior Vice President_

[Signature Page to Compromise and Settlement Agreement]

**BUYER:**                              **CPR ACQUISITION HOLDINGS, LLC**

By: _____
Name: Eric Miller
Title: Authorized Person

[Signature Page to Compromise and Settlement Agreement]

## Exhibit 1

**Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Event Rentals, Inc., *et al.*,[1] | Case No. 14-10282 (PJW) |
| Debtors. | Jointly Administered<br>Related Docket Nos. 29, 175 & [] |

**ORDER: (1) APPROVING ASSET PURCHASE AGREEMENT AMONG THE
DEBTORS AND THE BUYER; (2) APPROVING SALE OF SUBSTANTIALLY ALL
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND
OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(b),
363(f), AND 363(m); (3) APPROVING ASSUMPTION, ASSIGNMENT, TRANSFER,
AND/OR SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND
OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365;
(4) DETERMINING THE AMOUNTS NECESSARY TO CURE SUCH EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (5) GRANTING RELATED RELIEF**

Upon the motion dated February 14, 2014 (the "Sale Motion") of Event Rentals, Inc. and

its affiliates (collectively, the "Debtors"), debtors and debtors in possession in the above-

captioned cases ("Bankruptcy Cases") pursuant to sections 105, 363, and 365 of title 11 of the

United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, 9014,

and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule

6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware

(the "Local Rules") seeking, among other things, entry of an order: (a) approving the sale of

substantially all of the Debtors' assets pursuant to that certain Asset Purchase Agreement, dated

as of February 14, 2014 (as amended, supplemented, or otherwise modified from time to time

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are: Classic
Midwest, Inc. (9934); Classic Northeast, Inc. (9871); Classic Panache, Inc. (1237); Classic Party
Rentals, Inc. (3911); Classic Party Rentals LP (0583); Classic/Prime, Inc. (7149); Classic Southeast,
Inc. (0700); DBO Acquisition Corp. (1923); DUBO Acquisition Corp. (8795); Event Rentals, Inc.
(9443); Grand Events & Party Rentals, Inc. (7940); Special Event Holding, Inc. (5659); and Unique
Tabletop Rentals, Inc. (4327).  The list of the Debtors' alternate names is located on the docket for
Case No. 14-10282 [D.I. 3] and is also available at http://kccllc.net/CPR.

after the filing of the Sale Motion, including all Exhibits, Schedules, and Appendices thereto, the "Asset Purchase Agreement")[2] by and among the Debtors and CPR Acquisition Holdings, LLC, a Delaware limited liability company (together with its subsidiaries and any successors or assigns, or other entity designated to effect the transactions contemplated by the Asset Purchase Agreement, the "Buyer"), free and clear of all Liens, claims, interests, and encumbrances (other than Liens specifically assumed by the Buyer under the Asset Purchase Agreement and Permitted Exceptions), in accordance with the terms and conditions contained in the Asset Purchase Agreement, (b) providing for the sale by the Debtors to the Buyer of the Purchased Assets, including the assumption, assignment, transfer, and/or sale to the Buyer of the Purchased Contracts, free and clear of all Liens, claims, interests, and encumbrances (other than Liens specifically assumed by the Buyer under the Asset Purchase Agreement and Permitted Exceptions) in accordance with the terms and conditions contained in the Asset Purchase Agreement, and (c) authorizing the consummation of the transactions contemplated by the Asset Purchase Agreement (collectively, the "Sale Transaction"); and this Court having entered an order on March 14, 2014 [Docket No. 175] (as amended, supplemented, or otherwise modified with the consent of the Buyer, the "Bid Procedures Order") approving, among other things, the dates, deadlines, and bidding procedures (the "Bid Procedures") with respect to, and notice of, the Sale Transaction; and an Auction having been set for April 21, 2014, in accordance with the Bid Procedures Order; and the Debtors, after consultation with the Official Committee of Unsecured Creditors (the "Committee"), having determined that the Asset Purchase Agreement represents the highest or otherwise best bid for the Purchased Assets; and a hearing having been

---

[2] A true and correct copy of the Asset Purchase Agreement (without Schedules or Exhibits) is attached hereto as **Exhibit A**.  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Asset Purchase Agreement.

held on April 29, 2014 (the "Sale Hearing") to consider approval of the Asset Purchase Agreement; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and reasonable, adequate, and sufficient notice of the Sale Motion and the Sale Hearing having been given to all parties in interest in these cases; and all such parties having been afforded due process and an opportunity to be heard with respect to the Sale Motion and all relief requested therein; and the Court having reviewed and considered: (a) the Sale Motion; (b) the objections to the Sale Motion, if any; and (c) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation and sufficient cause appearing;

**IT HEREBY IS FOUND, DETERMINED AND CONCLUDED THAT**:

A.     Any of the findings of fact contained herein shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law contained herein shall constitute a conclusion of law even if it is stated as a finding of fact.  The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.

B.     The Court has jurisdiction over this matter, over the property of the Debtors' estates, including the Purchased Assets to be sold, transferred, or conveyed pursuant to the Asset Purchase Agreement, and over the Debtors' respective estates pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these Bankruptcy Cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      The statutory and other bases for the relief sought in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9014, and 9019, and Local Rule 6004-1.

D.      As evidenced by the affidavits of service on file with the Court, (i) due, proper, timely, adequate, and sufficient notice of the Bid Procedures, the Auction, the Sale Hearing, and the Sale Motion and the relief requested therein, has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Bid Procedures Order, and the Asset Purchase Agreement; (ii) such notice was good, sufficient, and appropriate under the circumstances; and (iii) no other or further notice of the Bid Procedures, the Auction, the Sale Hearing, the Asset Purchase Agreement, the Sale Transaction, or the Sale Motion is or shall be required.

E.      Actual written notice of, and a reasonable opportunity to object and to be heard with respect to, the Sale Motion has been given, in light of the circumstances, to all interested persons and entities, including, without limitation, to (i) the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the DIP Agent and the Prepetition Secured Agent, and to the lenders party to the DIP Facility (each as defined in the DIP Order); (iv) all entities known to have expressed an interest in acquiring any of the Purchased Assets; (v) all parties known to be asserting a Lien on any of the Debtors' assets; (vi) all known vendors, suppliers, lenders, contract, license and lease counterparties; (vii) the United States Attorney's office; (viii) various federal and state agencies and authorities asserting jurisdiction over the Purchased Assets, including the Internal Revenue Service; (ix) all federal, state, and local taxing authorities with jurisdiction over the Business; (x) all regulatory authorities that have a reasonably known interest in the relief requested in the Sale Motion; (xi) the non-Debtor parties to the Purchased Contracts;

and (xii) all other parties that have filed a notice of appearance and demand for service of papers in these Bankruptcy Cases as of the date of entry of the Bid Procedures Order.

F.      As demonstrated by (i) the evidence adduced at and prior to the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have conducted a fair and open sale process in a manner reasonably calculated to produce the highest and otherwise best offer for the Purchased Assets in compliance with the Bid Procedures Order. The Bid Procedures were substantively and procedurally fair to all parties, and were the result of arms' length negotiations.  The sale process, Bid Procedures, and Auction were non-collusive, duly noticed, and afforded a full, fair, and reasonable opportunity for any Person to make a higher and otherwise better offer to purchase all or any of the Purchased Assets.  The bidding and related procedures established by the Bid Procedures Order have been complied with in all material respects by the Debtors, the Buyer, and their respective counsel and other advisors.  The Bid Procedures obtained the highest value for the Purchased Assets for the Debtors and their estates, and any other transaction would not have yielded as favorable an economic result.

G.      The Debtors provided all interested parties with timely and proper notice of the Sale, Sale Hearing, and Auction. Notice of the Debtors' assumption, assignment, transfer, and/or sale to the Buyer of the Purchased Contracts has been provided to each non-debtor party thereto, together with a statement therein from the Debtors with respect to the amount, if any, to be paid to such non-debtor party under Bankruptcy Code section 365(b) as a condition to assumption and assignment.  As to each Purchased Contract, payment of the amounts set forth on **Exhibit B** hereto (each a "Cure Amount" and collectively, the "Cure Amounts") is sufficient for the Debtors to comply fully with the requirements of section 365(b)(1)(A) and (B) of the Bankruptcy Code.  Each of the non-Debtor parties to the Purchased Contract have had an opportunity to

object to the Cure Amounts set forth in the notice. In addition, the Buyer has provided adequate assurance of its ability to perform its obligations under each of the Purchased Contracts within the meaning of section 365(f)(2)(B) of the Bankruptcy Code. Therefore, the Purchased Contracts may be assumed by the Debtors and assigned and sold to the Buyer.

H.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, and Sale Transaction has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014. The Debtors also have complied with all obligations to provide notice of the Sale Motion, Auction, Sale Hearing, and Sale Transaction required by the Bid Procedures Order. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale Hearing, Sale Transaction, or assumption, assignment, transfer, and/or sale of the Purchased Contracts is required.

I.      The disclosures made by the Debtors concerning the Asset Purchase Agreement, Auction, Sale Transaction, Sale Hearing, and the assumption, assignment, transfer, and/or sale of the Purchased Contracts were good, complete, and adequate.

J.      The Purchased Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The Debtors have all right, title, and interest in the Purchased Assets required to transfer and convey the Purchased Assets to the Buyer. The Debtors have taken all corporate or other entity action necessary to authorize and approve the Asset Purchase Agreement and the consummation of the Sale Transaction, and the Debtors' sale of the Purchased Assets to the Buyer has been duly and validly authorized by all necessary corporate or other entity action. Upon entry of this Sale

Order, the Debtors shall have full authority to consummate the Asset Purchase Agreement and transactions contemplated by the Asset Purchase Agreement.

K.      Approval of the Asset Purchase Agreement and consummation of the Sale Transaction is in the best interests of the Debtors, their estates, creditors, and other parties in interest.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the sale to the Buyer pursuant to section 363(b) of the Bankruptcy Code.  Such business purposes and justifications include, but are not limited to, the following: (i) the Sale Transaction is the only viable alternative to liquidation; and (ii) the Asset Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Purchased Assets on a going concern basis and avoid decline and devaluation of the Purchased Assets.

L.      The Asset Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arms' length bargaining positions.  The Buyer is not an "insider" or an "affiliate" of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code.

M.      The sale price in respect of the Purchased Assets was not controlled by any agreement among potential bidders at such sale and neither the Debtors nor the Buyer engaged in collusion or any other conduct that would cause or permit the Asset Purchase Agreement or Sale Transaction to be avoidable under section 363(n) of the Bankruptcy Code.  Accordingly, neither the Asset Purchase Agreement nor the Sale Transaction may be avoided and no party shall be entitled to any damages or other recovery pursuant to section 363(n).

N.      The release provisions contained in Section 12.12 of the Asset Purchase Agreement were negotiated, proposed, and entered into by the parties without collusion, in good faith, and from arms' length bargaining positions.   Such releases constitute good faith

compromises and settlements of the matters covered thereby.  Such compromises and settlements are (i) made in exchange for adequate consideration; (ii) in the best interests of each of the Debtors' estates, creditors, and other parties in interest; (iii) fair, equitable, and reasonable; (iv) integral elements of the Sale Transaction; and (v) otherwise approved by the Court as appropriate pursuant to applicable law.

O.    The Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  The Buyer is acting in good faith within the meaning of section 363(m) in consummating the Sale Transaction.  The Buyer has proceeded in good faith in all respects in that, among other things, (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Buyer complied with the provisions of the Bid Procedures Order; (iii) the Buyer's bid was subjected to the competitive bid procedures set forth in the Bid Procedures Order; (iv) no common identity of directors or officers exists among the Buyer and the Debtors; and (v) all payments to be made by the Buyer and all other material agreements or arrangements entered into by the Buyer and the Debtors in connection with the Sale Transaction have been disclosed and are appropriate.

P.    The consideration to be provided by the Buyer pursuant to the Asset Purchase Agreement: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Purchased Assets; (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration.  In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Debtors' estates and the indirect benefits of the Sale Transaction for the Debtors' employees, landlords, vendors and suppliers, and the public served,

directly and indirectly, by the functions performed by the Debtors' employees and the Business. The Debtors' determination that the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets is a result of due deliberation by the Debtors and constitutes a valid and sound exercise of the Debtors' business judgment consistent with their fiduciary duties. Entry of an order approving the Sale Motion, the Asset Purchase Agreement, and the Sale Transaction is a necessary condition precedent to the Buyer consummating the Sale Transaction.

Q. The transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets and will vest the Buyer with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Liens, claims, encumbrances, and other interests of any kind and every kind whatsoever, other than (i) Liens specifically assumed by Buyer under the Asset Purchase Agreement, (ii) Permits that are subject to review and approval by a Governmental Body, and (iii) Permitted Exceptions; provided, that all Liens, claims, encumbrances, and interests of which the Purchased Assets are sold free and clear shall attach to the proceeds of the sale in order of priority.

R. The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates, and their creditors, if the transfer of the Purchased Assets to the Buyer and the assumption, assignment, and sale of the Purchased Contracts to the Buyer were not free and clear of all Liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (other than as expressly specified in the Asset Purchase Agreement), or if the Buyer would, or in the future could, be liable for any such Liens, claims, encumbrances, or other interests. A sale of the Purchased Assets other than one free and clear of such Liens, claims, encumbrances, and other

interests would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale Transaction.

S.      The Debtors may sell the Purchased Assets free and clear of all Liens, claims, encumbrances, and interests of any kind or nature whatsoever (other than Liens specifically assumed by Buyer under the Asset Purchase Agreement and Permitted Exceptions), because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied.  Each entity with a Lien, claim, encumbrance, or other interest in the Purchased Assets to be transferred on the Closing Date (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale Transaction or is deemed to have consented; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, claim, encumbrance, or interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.   Those holders of Liens, claims, encumbrances, and interests who did not object to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

T.      The transfer of the Purchased Assets to the Buyer, including the assumption by the Debtors and assignment, transfer, and/or sale to the Buyer of the Purchased Contracts, will not subject the Buyer to any liability whatsoever (including any successor liability) with respect to the operation of the Business prior to the Closing or by reason of such transfer, except that the Buyer shall remain liable for the Assumed Liabilities.  The Buyer (i) is not, and shall not be, considered a successor to the Debtors; (ii) has not, *de facto* or otherwise, merged with or into the Debtors; (iii) is not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors; (iv) does not have a common identity of incorporators, directors, or equity holders with the Debtors; and (v) is not holding itself out to the public as a continuation of the Debtors.

U.     The Asset Purchase Agreement is a valid and binding contract between the Debtors and the Buyer, which is and shall be enforceable according to its terms.  The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  No Debtor nor the Buyer is entering into the Sale Transaction fraudulently.

V.     The assumption, assignment, and/or transfer of the Purchased Contracts pursuant to the terms of this Sale Order is integral to the Asset Purchase Agreement and is in the best interests of the Debtors and their estates, creditors, and other parties in interest, and constitutes a valid and sound exercise of the Debtors' business judgment consistent with their fiduciary duties.

W.     Pursuant to section 365 of the Bankruptcy Code, upon payment of the Cure Amounts or reservation of the Claimed Cure Amount (as defined in the Bid Procedures Order), the Debtors or the Buyer, as applicable, shall have: (i) cured and/or provided adequate assurance of cure of any monetary default existing prior to the Petition Date under any of the Purchased Contracts; and (ii) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Petition Date under any of the Purchased Contracts.

X.     Other than claims arising under the Asset Purchase Agreement, the Debtors agree and acknowledge that they have no claims against the Buyer.

Y.     The Sale Transaction must be approved and consummated promptly in order to preserve the viability of the Business and maximize the value of the Debtors' estates.  Time is of the essence in consummating the Sale Transaction.  Cause has been shown as to why this Sale Order should not be subject to any stay provided by Bankruptcy Rules 6004(h) and 6006(d).

Z.    The Sale Transaction does not constitute a de facto plan of reorganization or liquidation or an element of such a plan for any of the Debtors, as it does not and does not propose to (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests or extend debt maturities.

AA.    The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale Transactions.

BB.    There is other good and sufficient cause to grant the relief requested in the Sale Motion and approve the Asset Purchase Agreement and the Sale Transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Sale Motion is GRANTED and complies with all aspects of Local Rule 6004-1.

2.    Any objections to the Sale Motion or the entry of this Sale Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are DENIED and OVERRULED on the merits and with prejudice.

3.    The Asset Purchase Agreement, including the Credit Bid and all of its other terms and conditions and all other ancillary documents, and the Sale Transaction are APPROVED in all respects.

4.      Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtors are authorized to (i) execute, deliver, and perform under, consummate, and implement the Asset Purchase Agreement and the Sale Transaction together with all additional instruments and documents that are requested by the Buyer and may be reasonably necessary or desirable to implement the Asset Purchase Agreement, (ii) take any and all actions as the Debtors deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to Buyer's possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement, including, without limitation, any and all actions reasonably requested by the Buyer which are consistent with the Asset Purchase Agreement; and (iii) take all other and further acts or actions as may be reasonably necessary to implement the Sale Transaction.

5.      Pursuant to sections 105(a), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing: (i) the transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement shall constitute a legal, valid, and effective transfer of the Purchased Assets and shall vest the Buyer with all right, title, and interest in and to the Purchased Assets; (ii) the Purchased Assets shall be transferred to the Buyer free and clear of all Liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including Liens, claims, encumbrances, and interests of any Governmental Body), other than Liens specifically assumed by Buyer under the Asset Purchase Agreement and Permitted Exceptions, in accordance with section 363(f) of the Bankruptcy Code, with any such Liens, claims, encumbrances, and interests of which the Purchased Assets are sold free and clear to attach to the proceeds of the Sale Transaction, in the order of their priority, with the same validity, force, and effect which they had against the

Purchased Assets prior to the entry of this Sale Order, subject to any rights, claims, and defenses the Debtors and all interested parties may possess with respect thereto; and (iii) each of the Contracts designated as Purchased Contracts at Closing shall be deemed assumed by the Debtors and assigned, transferred, and/or sold to the Buyer.

6.      Upon the occurrence of the Closing, this Sale Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets acquired under the Asset Purchase Agreement or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in all the Purchased Assets to the Buyer.

7.      This Sale Order is and shall be effective as a determination that all Liens, claims, encumbrances, and interests, other than Liens specifically assumed by Buyer under the Asset Purchase Agreement and Permitted Exceptions, shall be and are, without further action by any Person, released with respect to the Purchased Assets as of the Closing Date.  Following the Closing, no holder of any Liens, claims, encumbrances, and interests, other than Liens specifically assumed by Buyer under the Asset Purchase Agreement and Permitted Exceptions, or other party in interest may interfere with the Buyer's use and enjoyment of the Purchased Assets based on or related to such Lien, Claim, encumbrance, or other interest, or any actions that the Debtors may take in their Bankruptcy Cases, and no party may take any action to prevent, interfere with, impair, or otherwise enjoin consummation of the Sale Transaction.  All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to the Buyer in accordance with the terms of the Asset Purchase Agreement and this Sale Order.

8.     The Buyer and its Affiliates, successors, and assigns shall not be deemed or considered a successor to the Debtors or the Debtors' estates by reason of any theory of law or equity and the Buyer has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except as otherwise expressly provided in the Asset Purchase Agreement.  Without limitation, the Buyer and its Affiliates, successors, and assigns shall have no successor, transferee, or vicarious liability of any kind or character, including, without limitation, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, de facto merger, substantial continuity, or other law, rule, regulation, or doctrine, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors, the Business, or any obligations of the Debtors arising prior to the Closing Date, including, without limitation, liabilities on account of any taxes or other Governmental Body fees, contributions, or surcharges, in each case arising, accruing, or payable under, out of, in connection with, or in any way relating to, the operation of the Purchased Assets prior to the Closing Date or arising based on actions of the Debtors taken after the Closing Date.

9.     Except to the extent expressly included in the Assumed Liabilities or to enforce the Asset Purchase Agreement or Permitted Exceptions, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, without limitation, the Debtors, the Committee, all debt security holders, all equity security holders, the Debtors' employees or former employees, governmental, tax, and regulatory or investigatory authorities of any sort, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding any Liens, claims, encumbrances, and other interests of any kind and every kind

whatsoever against, in or with respect to any of the Debtors, the Business, or all or any part of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, all or any part of the Purchased Assets, the operation of the Business prior to the Closing Date, or the transfer of the Purchased Assets to the Buyer shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Liens, claims, encumbrances, or other interests, whether by payment, setoff, or otherwise, directly or indirectly, against the Buyer or any affiliate, successor, or assign thereof, or against the Purchased Assets.  Nothing contained in this Sale Order shall limit, alter, or otherwise modify the provisions of the DIP Order or the rights of any parties thereunder.

10.     The Buyer has given substantial consideration under the Asset Purchase Agreement to the Debtors' estates.  The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of successor or transferee liability of the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of Liens, claims, encumbrances, and other interests against the Debtors or the Purchased Assets.

11.     On the Closing Date all of the rights, claims, or causes of action of Debtors, including any rights or claims that arise under chapter 5 of the Bankruptcy Code or any other similar Law, that relate to the assets, properties, Business, or operations of Debtors or the Purchased Assets (including, without limitation, all defenses, offsets, setoffs, or recoupments with respect to any Assumed Liabilities) shall be assigned, sold, and transferred to Buyer, free and clear of all Liens, claims, encumbrances, and interests, and Buyer shall have standing and authority to assert such rights, claims, and causes of action.

12.     Pursuant to section 365 of the Bankruptcy Code, the Debtors are authorized to assume the Purchased Contracts and assign, transfer, and/or sell the Purchased Contracts to the Buyer.  The Buyer shall pay the Cure Amounts set forth on **Exhibit B** hereto promptly after the Closing of the Sale Transaction; *provided, however*, that the Buyer may direct the removal of any such contract or lease from the list of Purchased Contracts set forth in Schedule 1.1(b) of the Asset Purchase Agreement in accordance with the Asset Purchase Agreement, in which case such contract or lease shall not constitute a Purchased Contract and Buyer shall have no obligation to pay any Cure Amount with respect thereto.  Buyer may direct the removal of any Contract from the list of Purchased Contracts set forth in Schedule 1.1(b) of the Asset Purchase Agreement (i) prior to the Closing Date, for any reason, and (ii) after the Closing Date, if the Cure Amount for such Contract is subject to dispute as of the Closing and is determined by the Bankruptcy Court after the Closing to be greater than the amount set forth in Schedule 2.4(g) to the Asset Purchase Agreement.

13.     The Purchased Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Purchased Contract (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  Pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Purchased Contracts after such assignment and sale to the Buyer.

14.     All defaults or other obligations of the Debtors under each Purchased Contract arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be

deemed cured and any pecuniary loss arising therefrom deemed compensated, upon payment of the Cure Amount with respect thereto, if any, and the Buyer shall have no liability or obligation arising or accruing in respect of the Purchased Contracts on or prior to the Closing.  The non-debtor parties to the Purchased Contracts are barred from asserting against the Debtors, the Buyer, and their respective successors and assigns, any default or unpaid obligation allegedly arising or accruing before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Purchased Contracts arising or incurred prior to the Closing, other than the Cure Amounts.  Any provisions in any Purchased Contract that prohibit or condition the assignment of such Purchased Contract or allow the non-debtor party to such Purchased Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Purchased Contract, shall constitute unenforceable anti-assignment provisions that are void and of no force and effect.  Any portion of any Purchased Contract that purports to permit a landlord thereunder to cancel the remaining term of such Purchased Contract if the Debtors discontinue their use or operation of the leased premises is void and of no force and effect, and shall not be enforceable against the Buyer, its assignees, and any sublessees; and the landlords under any such Purchased Contract shall not have the right to cancel or otherwise modify such Purchased Contract or increase the rent, assert any claim, or impose any penalty by reason of such discontinuation, the Debtors' cessation of operations, the assignment of such Purchased Contract to the Buyer, or the interruption of business activities at any of the leased premises.

15.     To the extent a counterparty to a Purchased Contract failed to timely object to a Cure Amount, such Cure Amount shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and

finality of the Cure Amount at any time, and such Cure Amount, when paid, shall completely revive any Purchased Contract to which it relates.

16.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions or of the right of the Debtors or the Buyer, as the case may be, to enforce every term and condition of the Purchased Contracts.  The validity of the assumption, assignment, and sale of the Purchased Contracts to the Buyer shall not be affected by any existing dispute between any of the Debtors and any non-debtor party to such Purchased Contract other than with respect to the allowance and payment of any Cure Amount as provided in this Sale Order and in the Asset Purchase Agreement.  Any party that may have had the right to consent to the assignment of any Purchased Contract is deemed to have consented for the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code.

17.     There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Buyer or the Debtors as a result of the assumption, assignment, transfer, and/or sale of the Purchased Contracts.  The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Buyer's rights to enforce every term and condition of the Purchased Contracts.

18.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all non-Debtor parties to the Purchased Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Buyer any assignment fee, default, breach, or claim or pecuniary loss arising under or related to the Purchased Contracts existing as of the Petition Date or any assignment fee or condition to assignment arising by reason of the Closing other than with

respect to the allowance and payment of any Cure Amount as provided in this Sale Order and in the Asset Purchase Agreement.

19.     The Buyer is hereby authorized in connection with the consummation of the Sale Transaction to allocate the Purchased Assets and the Purchased Contracts among its affiliates, designees, assignees, or successors in a manner as it, in its sole discretion, deems appropriate and to assign, sublease, sublicense, transfer, or otherwise dispose of any of the Purchased Assets or the rights under any Purchased Contract to its affiliates, designees, assignees, or successors with all of the rights and protections accorded under this Sale Order and the Asset Purchase Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by the Buyer to effectuate any of the foregoing.

20.     The consideration provided by the Buyer for the Purchased Assets under the Asset Purchase Agreement, including the portion of the consideration that consists of the Credit Bid and the assumption of the Assumed Liabilities, is fair and reasonable and constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia.

21.     On the Closing Date, the Buyer will fund an amount equal to the Wind Down Amounts set forth in the Wind Down Budget attached as Exhibit D to the Asset Purchase Agreement.  From and after the Closing Date, the Debtors are hereby authorized and directed to comply with the provisions of Section 3.1(b) of the Asset Purchase Agreement regarding the payment of Wind Down Amounts, including, without limitation, the remittal of unspent Wind Down Amounts to the Buyer.  Buyer's right to receive any unspent Wind Down Amounts

pursuant to the Asset Purchase Agreement shall constitute a deemed allowed administrative expense in the Bankruptcy Cases under section 503(b) of the Bankruptcy Code with priority over all expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code and shall survive the termination of the Asset Purchase Agreement.  To secure the Debtors' obligations under Section 3.1(b) of the Asset Purchase Agreement, the Buyer shall have a senior lien on, and security interest in, the Wind Down Amounts, any bank accounts, deposit accounts, or other accounts to which any of the Wind Down Amounts are deposited, and all substitutions, accessions, profits, replacements, and cash and non-cash proceeds of all of the foregoing (the "Wind Down Lien").  The Wind Down Lien shall be binding, valid, perfected, unavoidable, and enforceable without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, control agreement, or other instrument or document which may otherwise be required under the law of any jurisdiction or (b) taking any other act or action to validate or perfect the Wind Down Lien.

22.    The Asset Purchase Agreement and Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) in respect of the Asset Purchase Agreement or the Sale Transaction.

23.    The Asset Purchase Agreement and the Sale Transaction are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Asset Purchase Agreement and the Sale Transaction shall not affect the validity of the sale of the Purchased Assets to the Buyer, unless this Sale Order is duly stayed pending such appeal.  The Buyer is a good faith purchaser of the Purchased Assets and is

entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code. The Debtors and the Buyer will be acting in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Sale Order.

24.     Upon Closing, (i) to the extent that the DIP Obligations are not assumed by the Buyer in accordance with the Asset Purchase Agreement, the Buyer shall pay in full in cash all Obligations (as defined in the DIP Credit Agreement) as part of the Purchase Price paid by the Buyer; and (ii) other than obligations that specifically survive termination pursuant and to the extent provided in the DIP Credit Agreement, such as any indemnification obligations, the DIP Credit Agreement shall be terminated after such payment in full.

25.     The releases set forth in Section 12.12 of the Asset Purchase Agreement are incorporated as if set forth in full herein and are hereby approved and shall be, and hereby are, effective and binding, subject to the respective terms thereof, on all persons and entities to the extent set forth therein, and no person or entity shall possess any right or standing to assert any matters described by Section 12.12 of the Asset Purchase Agreement after the Closing Date.

26.     Pursuant to the requirements set forth in Section 8.10 of the Asset Purchase Agreement and promptly after the Closing, the Debtors shall change their names and the caption of the Bankruptcy Cases to names reasonably satisfactory to the Buyer which do not include the words "Special Event Holding", "Event Rentals", "Events", "Classic", "Party Rentals", and any derivation thereof or any other trade name, trade mark, corporate name, service mark, or the domain names conveyed to the Buyer in the Asset Purchase Agreement, either alone or in combination with other words, graphics, or designs.  The Clerk of the Court is directed to make a docket entry in these Bankruptcy Cases as may be necessary and appropriate to implement the terms of this paragraph.

27.     All persons and entities that are in possession of some or all of the Purchased Assets as of or after the Closing are hereby ordered to surrender possession of such Purchased Assets to the Buyer as of the Closing or at such time thereafter as the Buyer may request.  The Debtors agree to exercise commercially reasonable efforts to assist the Buyer in assuring that all persons or entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets in which the Debtors hold an interest will surrender possession of the Purchased Assets to either (i) the Debtors before the Closing Date, or (ii) the Buyer on or after the Closing Date.

28.     This Sale Order is and shall be binding on and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Buyer is the assignee and owner of the Purchased Assets free and clear of all Liens, claims, encumbrances, and interests, other than Liens specifically assumed by Buyer under the Asset Purchase Agreement and Permitted Exceptions (all such entities being referred to as "Recording Officers").  All Recording Officers are authorized and specifically directed to strike recorded encumbrances, claims, Liens, and other interests against the Purchased Assets recorded prior to the date of this Sale Order, other than Liens specifically assumed by Buyer under the Asset Purchase Agreement and Permitted Exceptions.  A certified copy of this Sale Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, Liens, and other interests against the Purchased Assets recorded

prior to the date of this Sale Order, other than Liens specifically assumed by Buyer under the Asset Purchase Agreement and Permitted Exceptions.

29.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Asset Purchase Agreement and the Sale Transaction.

30.     To the greatest extent available under applicable law and to the extent provided for under the Asset Purchase Agreement, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and, to the greatest extent available under applicable law and to the extent provided for under the Asset Purchase Agreement, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing Date. To the extent any license or permit necessary for the operation of the Business at those locations assumed by the Debtors and assigned to the Buyer is not an assumable and assignable executory contract, Buyer shall make reasonable efforts to apply for and obtain any such license or permit promptly after the Closing Date, and Debtors shall cooperate reasonably with Buyer in those efforts.  All existing licenses or permits applicable to the Business shall remain in place for Buyer's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures.

31.     The acts or actions that the Debtors are required to take under the Asset Purchase Agreement or this Sale Order after the Closing Date or as otherwise set forth in the Asset Purchase Agreement shall be taken at the Buyer's expense, in each case solely to the extent set

forth in the Asset Purchase Agreement (and subject to all related terms and conditions of the Asset Purchase Agreement).

32.     The terms and provisions of the Asset Purchase Agreement, the ancillary agreements, and this Sale Order shall be binding in all respects on, and shall inure to the benefit of, the Debtors, the Buyer, and their respective affiliates, successors and assigns, and any other affected third parties, notwithstanding the dismissal of any of the Debtors' cases or any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code or conversion of the Debtors' cases to cases under chapter 7, as to which trustee(s) such terms and provisions likewise shall be binding and not subject to rejection or avoidance.   The Asset Purchase Agreement, the Sale Transaction, and this Sale Order shall be enforceable against and binding on, and shall not be subject to rejection or avoidance by, any chapter 7 or chapter 11 trustee appointed in the Bankruptcy Cases.

33.     Nothing contained in any chapter 11 plan confirmed in the Debtors' cases, in any order confirming any such plan, or in any other order of any type or kind entered in these Bankruptcy Cases (including, without limitation, any order entered after any conversion of any or all of these Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code) or in any related proceeding shall alter, conflict with, or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.

34.     The Asset Purchase Agreement and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that (i) any such amendment does not have a material adverse effect on the Debtors or the Debtors' estates and (ii) notice of any such amendment shall be provided to the Committee.

35.     The failure to include specifically any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be and is authorized and approved in its entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order prior to Closing.

36.     To the extent of any inconsistency between the provisions of this Sale Order, the Asset Purchase Agreement, and any documents executed in connection therewith, the provisions contained in the Sale Order, the Asset Purchase Agreement, and any documents executed in connection therewith shall govern, in that order.

37.     The provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of all Liens, claims, encumbrances, and interests, other than Liens specifically assumed by the Buyer under the Asset Purchase Agreement and Permitted Exceptions, shall be self-executing, and notwithstanding the failure of the Debtors, the Buyer, or any other party to execute, file, or obtain releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, or implement the provisions hereof, all Liens, claims, encumbrances, and other interests on or against such Purchased Assets (other than Liens specifically assumed by the Buyer under the Asset Purchase Agreement and Permitted Exceptions), if any, shall be deemed released, discharged, and terminated in all respects.  To the extent the Buyer deems it necessary or appropriate, if, upon consummation of the transactions set forth in the Asset Purchase Agreement, any Person or entity which has filed statements or other documents or agreements evidencing Liens, claims, encumbrances, or other interests on or in all or any portion of the Purchased Assets (other than Liens specifically assumed by the Buyer under the Asset Purchase Agreement and Permitted Exceptions) shall not have delivered to the

Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all such Liens, claims, encumbrances, or other interests, the Buyer is hereby authorized (but not required) to execute and file such statements, instruments, releases, and other documents on behalf of such Person or entity with respect to the Purchased Assets.

38.    From time to time, as and when requested by any Party, each Party to the Asset Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other acts or actions as such other party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such acts or actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Buyer its right, title, and interest in and to all the Purchased Assets.

39.    Subject to all of the applicable terms and conditions set forth in the Asset Purchase Agreement:

(a)    During the Designation Rights Period, the Debtors shall (i) not reject any Contract unless such Contract is expressly designated by Buyer in writing as an Excluded Contract or unless otherwise agreed to in writing by Buyer and (ii) hold all Designation Rights Contracts in abeyance pending designation for assignment or exclusion by Buyer in accordance with Section 2.7(e) of the Asset Purchase Agreement.   During the Designation Rights Period, Buyer shall have access to and use of the real property, personal property, and all other rights, benefits, and services subject of the Designation Rights Contracts from and after the Closing, and such use, other rights, and benefits will be subject to and consistent with the Debtors' obligations, if any, to third parties with

respect to such Designation Rights Contracts; and Buyer (and, if necessary and at Buyer's expense, the Debtors) will pay and perform the Debtors' obligations to the extent and as required under such Designation Rights Contracts and applicable law arising from and after the Closing Date (provided that the Debtors shall not be required to, and shall not, pay any Cure Amounts in respect of any such Designation Rights Contracts except as required by Section 2.7(e)(ii) of the Asset Purchase Agreement).

(b)     As to each Designation Rights Contract, within three (3) business days after receiving further written notice(s) (each, a "Designation Notice") from Buyer during the Designation Rights Period requesting assumption, assignment, transfer, and/or sale of any Designation Rights Contract to Buyer, the Debtors shall (at Buyer's expense) file with the Bankruptcy Court and serve on (i) each non-debtor party to such Contract, (ii) counsel to the Buyer and the Agent, and (iii) counsel to the Committee (collectively, the "Designation Notice Parties"), a notice (a "Counterparty Notice") substantially in the form attached hereto as **Exhibit C** of the assumption and assignment of such Designation Rights Contract to Buyer pursuant to sections 363 and 365 of the Bankruptcy Code and the terms of this Sale Order.  Each Counterparty Notice shall (1) identify the relevant Designation Rights Contract(s) specified by Buyer; (2) inform the counterparty of the proposed assumption, assignment, transfer, and/or sale; and (3) specify the Cure Amounts applicable to such Contract(s).

(c)     Any objection to the assumption, assignment, transfer, and/or sale of Contract(s) specified in a Counterparty Notice and/or to the Cure Amount specified therein (a "Counterparty Objection") must be filed with the Bankruptcy Court and served on the Designation Notice Parties so as to be received no later than fourteen (14) calendar days

after the date on which the Debtors served the Counterparty Notice. All necessary authority for the assumption, assignment, transfer, and/or sale, including a finding that the Debtors and the Buyer have provided "adequate assurance of future performance" as and to the extent required by section 365 of the Bankruptcy Code, is provided by this Sale Order. Failure to file and serve a Counterparty Objection in accordance with this Paragraph 39(c) (x) will forever bar the non-debtor counterparty from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to the subject Contract, and the Debtors shall be entitled to rely solely upon the Cure Amount specified in the Counterparty Notice, and (y) will mean that the non-debtor counterparty is deemed to have consented to the assumption, assignment, transfer, and/or sale of such Contract and will be forever barred and estopped from asserting or claiming against the Debtors or the Buyer (or any other assignee of the relevant Contract) that any additional amounts are due or defaults exist, or conditions to assumption, assignment, transfer, and/or sale must be satisfied, under such Contract.

(d)    If a Counterparty Objection challenges the Cure Amount specified in a Counterparty Notice, such objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof. Upon receipt of a Counterparty Objection, subject to the Buyer's rights under the Agreement, the Buyer (on behalf of the Debtors' estates) may hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the Buyer and the objecting party, and the Buyer shall have the right to litigate any dispute about the Claimed Cure Amount on behalf of the Debtors' estates. So long as the Buyer holds the Claimed Cure Amount in reserve, subject to the Buyer's rights

under the Agreement, the Debtors may assume, assign, transfer, and/or sell the Contract that is the subject of an objection without further delay.

(e)      In the event that a Counterparty Objection is filed, the Debtors will seek (at Buyer's expense) to schedule an expedited hearing before the Bankruptcy Court to resolve such objection.

40.      To the extent applicable, the automatic stay pursuant to section 362(a) of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Debtors any notice under the Asset Purchase Agreement, and (b) to allow the Buyer to take any and all acts or actions in accordance with the Asset Purchase Agreement.

41.      Any amounts that become payable by the Debtors to the Buyer pursuant to the Asset Purchase Agreement (or any related agreements executed in connection therewith) (a) shall constitute allowed administrative expenses of the Debtors' estates under sections 503(b) and 507(a)(2) of the Bankruptcy Code, and (b) shall be paid by the Debtors in the time and manner provided for in the Asset Purchase Agreement (and such related agreements) without further Court order.

42.      Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), or 7062, this Sale Order shall be effective and enforceable immediately and shall not be stayed.  Time is of the essence in closing the Sale Transaction and the Debtors and the Buyer intend to close the Sale Transaction as soon as practicable.  This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being dismissed as moot.

43.    This Court shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or related to this Sale Order, the Asset Purchase Agreement, or any related agreements, including, without limitation: (a) any actual or alleged breach or violation of this Sale Order, the Asset Purchase Agreement, or any related agreements; (b) the enforcement of any relief granted in this Sale Order; or (c) as otherwise set forth in the Asset Purchase Agreement.

Dated: _____, 2014
      Wilmington, Delaware

_____
THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE