**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Event Rentals, Inc., *et al*.,[1] | Case No. 14-10282 (PJW) |
| Debtors. | Jointly Administered |
| | **Proposed Objection Deadline: April 28, 2014 at 4:00 p.m.**<br>**Proposed Hearing Date: April 29, 2014 at 2:00 p.m.** |

**JOINT MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND EVENT RENTALS, INC. AND ITS AFFILIATED DEBTORS FOR ORDER PURSUANT TO FED. R. BANKR. P. 9019 APPROVING SETTLEMENT AGREEMENT AND MUTUAL RELEASES BY AND AMONG (I) THE DEBTORS; (II) THE COMMITTEE AND ITS MEMBERS; AND (III) THE LIQUIDITY PARTIES**

Event Rentals, Inc. and its affiliated debtors and debtors in possession (collectively, the

"Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), together with the

official committee of unsecured creditors appointed in the Chapter 11 Cases (the "Committee,"

and, together with the Debtors, the "Movants"), hereby file this motion (the "Motion") pursuant

to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry

of an order, substantially in the form attached hereto as Exhibit A, approving the Settlement

Agreement and Mutual Releases, in form and substance as attached hereto as Exhibit 1 to

Exhibit A (the "Settlement Agreement"),[2] by and among (i) the Debtors; (ii) the Committee, on

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Classic Midwest, Inc. (9934); Classic Northeast, Inc. (9871); Classic Panache, Inc. (1237); Classic Party Rentals, Inc. (3911); Classic Party Rentals LP (0583); Classic/Prime, Inc. (7149); Classic Southeast, Inc. (0700); DBO Acquisition Corp. (1923); DUBO Acquisition Corp. (8795); Event Rentals, Inc. (9443); Grand Events & Party Rentals, Inc. (7940); Special Event Holding, Inc. (5659); and Unique Tabletop Rentals, Inc. (4327). The list of the Debtors' alternate names is located on the docket for Case No. 14-10282 [D.I. 3 as amended by D.I. 92] and is also available at http://www.kccllc.net/CPR.

[2] Where the context requires, each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Settlement Agreement.

behalf of itself and its members (solely in their capacities as such and not in their individual capacities, the "Committee Members"); and (iii) S.A.C. Offshore Capital Funding, Ltd., S.A.C. Domestic Capital Funding, Ltd., JPM Mezzanine Capital, LLC, Quad-C Partners VII, L.P., Quad-C Principals LLC, Quad-C Management, Inc., and Quad-C VII Management Corp. (collectively, the "Liquidity Parties" and, together with the Debtors and the Committee, the "Parties").  In support of the Motion, the Movants respectfully represent as follows:

**I.     BACKGROUND**

**A.  General Background**

1.     On February 13, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the Chapter 11 Cases.  The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.     On or about February 25, 2014, the Office of the United States Trustee for the District of Delaware appointed the Committee [D.I. 91].  As of the date hereof, no trustee or examiner has been requested or appointed in the Chapter 11 Cases.

3.     The Debtors are the nation's largest provider of event rental products and related services, with 39 locations across 22 markets.  The Debtors have the largest offering of event equipment, value-added event services, and temporary structure assets, and provide services for over 145,000 events for approximately 55,000 customers annually.  The Debtors employ approximately 2,500 employees throughout the year and have total annual revenues of approximately $235 million.

4.     Additional background facts on the Debtors, including an overview of the Debtors' businesses, information concerning the Debtors' corporate structure, information concerning the Debtors' debt structure, and information on the events leading up to the Chapter 11 Cases is contained in the *Declaration of Jeffrey M. Black in Support of First Day Motions and Applications* filed on February 13, 2014 [D.I. 13].

**B.  Background Fact Specific to the Motion**

5.     The Liquidity Parties or their affiliates own all or substantially all of the equity interests in the parent Debtor, Special Event Holding, Inc.  Additionally, certain of the Liquidity Parties have purchased, *inter alia*, certain senior subordinated unsecured notes from the Debtors pursuant to (i) that certain Amended and Restated Liquidity Note Purchase Agreement, dated as of March 31, 2011, and (ii) that certain 2011 Liquidity Note Purchase Agreement, dated as of November 9, 2011 (the "Obligations" as defined in (i) and (ii) together collectively with any other agreements or documents executed or delivered in connection therewith and as may be amended, restated, or otherwise modified from time to time, the "Liquidity Note Obligations"). Quad-C Management, Inc. or its affiliates are also owed various (i) management fees and other expenses by the Debtors pursuant to that certain Management Agreement, dated as of December 15, 2006, and (ii) other reimbursable expenses by the Debtors (together with the Liquidity Note Obligations, the "Liquidity Obligations").

6.     The Debtors commenced the Chapter 11 Cases for the purpose of effecting a going-concern sale of substantially all of their assets pursuant to an auction process before this Court (the "Sale").  On February 14, 2014, the Debtors filed the *Motion of Event Rentals, Inc. and Its Affiliated Debtors for Entry of (i) an Order (a) Authorizing and Approving Bid Procedures To Be Employed in Connection with the Proposed Sale of Substantially All of the*

3

*Assets of the Debtors; (b) Scheduling an Auction and Sale Hearing; (c) Authorizing and*

*Approving Assignment Procedures to be Employed in Connection with the Identification and*

*Assumption of Certain Contracts, Leases, and Intellectual Property Rights; and (d) Approving*

*the Manner and Form of Notice of the Auction, Sale Hearing, and Assignment Procedures; and*

*(ii) an Order (a) Approving the Agreement for the Sale and Purchase of the Assets Free and*

*Clear of Liens, Claims, Encumbrances, and Interests; and (b) Granting Related Relief* [D.I. 29]

(the "Sale Motion").

7.      On April 14, 2014, and in connection with the upcoming hearing on the

Sale, the Debtors and the Committee filed their *Joint Motion of the Official Committee of*

*Unsecured Creditors and Event Rentals, Inc. and Its Affiliated Debtors for Order Pursuant to*

*Fed. R. Bankr. P. 9019 Approving Compromise and Settlement Agreement by and Among (I) the*

*Debtors; (II) the Committee and Its Members; (III) the Prepetition Agent and the Prepetition*

*Lenders Party Thereto; (IV) the DIP Agent and the DIP Lenders Party Thereto; and (V) the*

*Buyer* [D.I. 314] (the "First 9019 Motion").  Pursuant to the First 9019 Motion, the Debtors and

the Committee seek approval of a Compromise and Settlement Agreement (the "Lender

Settlement Agreement") by and among the Debtors, the Committee, the Committee Members,

and substantially all of the holders of the Debtors secured pre- and post-petition secured debt (the

"Lenders").

8.      In connection with the Lender Settlement Agreement, the Debtors, the

Committee, and the Lenders have agreed to negotiate in good faith the provisions of a chapter 11

plan in these Chapter 11 Cases (an "Acceptable Plan"), which Acceptable Plan shall contain

customary broad and mutual release provisions (the "Plan Releases") among the Debtors (and

their respective officers and directors), the Committee, the Liquidity Parties, the Lenders, and

MIAMI 1011381 (2K)

ACTIVE 25445072v1 04/18/2014

other participating creditors relating to the Debtors or their businesses, these Chapter 11 Cases, and other obligations and transactions set forth in the Lender Settlement Agreement.

9.    During the course of these Chapter 11 Cases, the Debtors, the Committee, and the Liquidity Parties have worked cooperatively to facilitate these cases and the furtherance of the Sale.  Although the Lender Settlement Agreement made substantial progress in resolving the disputes among the Parties, the Committee asserts, and the Liquidity Parties dispute, that the Debtors' estates may have certain claims or defenses against the Liquidity Parties related to the Liquidity Note Obligations, including, but not limited to the right to recharacterize the Liquidity Note Obligations as equity.  Accordingly, in order to avoid the expense and uncertainty of litigating any challenge or any objections by the Debtors or the Committee to the Liquidity Obligations, the Parties have reached agreement on the form and substance of the Settlement Agreement.

10.    The following summarizes[3] the pertinent terms of the Settlement Agreement:

- The Debtors, the Committee, and the Liquidity Parties have agreed that, in exchange for the releases, covenants, agreements, and promises set forth in the Settlement Agreement, that the Liquidity Parties shall not receive any distribution from or in connection with these Chapter 11 Cases, and shall waive any claim associated with the Liquidity Obligations.  Settlement Agreement ¶ 1.

- The Committee and the Committee Members, each on behalf of itself and its respective employees, officers, managers, directors, representatives, agents, successors, assigns, and attorneys, in each case solely in such capacity with respect to the Committee, have each agreed to release, acquit, and forever discharge (the "Committee Releases") the Liquidity Parties and certain related parties (collectively, the "Liquidity Released Parties") on the terms set forth in and subject to the limitations of the Settlement Agreement.  *Id.* ¶ 2.a.

---

[3] This summary is provided solely for convenience and is qualified in its entirety by the Settlement Agreement.  To the extent that any aspect of this summary conflicts with any of the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

MIAMI 1011381 (2K)

ACTIVE 25445072v1 04/18/2014

- The Liquidity Parties, each on behalf of itself and its respective employees, officers, managers, directors, representatives, agents, successors, assigns, and attorneys, have each agreed to release, acquit, and forever discharge the Committee, the Committee Members, the Debtors, and certain related parties on the terms set forth in and subject to the limitations of the Settlement Agreement. *Id.* at ¶ 2.b.

- The Debtors, each on behalf of itself and its respective employees, officers, managers, directors, representatives, agents, successors, assigns, and attorneys, have each agreed to release, acquit, and forever discharge the Liquidity Released Parties, the Committee, the Committee Members, and certain related parties on the terms set forth in and subject to the limitations of the Settlement Agreement. *Id.* at ¶ 2.c.

- The Parties have agreed to support the prosecution of this Motion and will take no action that could adversely affect the Movants' efforts to obtain Court approval of this Motion, and the effectiveness of the Settlement Agreement is conditioned on (i) the closing of the Sale, (ii) Court approval of the Motion, and (iii) the confirmation and effectiveness of an Acceptable Plan setting forth the Plan Releases. *Id.* ¶¶ 3.a.-b.

- The Parties have agreed to cooperate with each other in good faith and to coordinate their activities (to the extent practicable) in respect of the Sale and the transactions contemplated by the Settlement Agreement and the Sale documentation. *Id.* ¶ 4.

- The Parties have agreed that the Plan Releases will provide that each unsecured creditor voting in favor of the Plan shall be deemed to have released the Liquidity Released Parties to same extent as provided by the Committee Releases. *Id.* ¶ 5.

## II.  JURISDICTION

11.     The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. RELIEF REQUESTED

12.     By this Motion, the Movants request an order pursuant to Bankruptcy Rule 9019, substantially in the form attached hereto as Exhibit A, approving the Settlement Agreement in all respects.

MIAMI 1011381 (2K)

ACTIVE 25445072v1 04/18/2014

### IV. <u>BASIS FOR RELIEF</u>

13.     Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, a court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  Compromises are favored in bankruptcy because they minimize the costs of litigation and further the parties' interests in expediting administration of a bankruptcy estate. *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996); 10 Collier on Bankruptcy, ¶ 9019.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed., 2013).  In deciding whether to approve a compromise under Bankruptcy Rule 9019, a court must determine if the settlement is "fair, reasonable, and in the interest of the estate." *In re TSIC, Inc.*, 393 B.R. 71, 78 (Bankr. D. Del. 2008); *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (citing *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)).  This test is known as the "best interests" test.

14.     Under the "best interests" test, a debtor must show that a compromise or settlement is "fair and equitable" to the estate. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006) (discussing application of fair and equitable standard); *Martin*, 91 F.3d at 393 (same); *In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (proposed settlement held to be in best interest of the estate).  Under the "best interests" test and as further articulated by courts within the Third Circuit, the reasonableness of a proposed compromise and settlement is determined by reference to the following four factors:  (1) the probability of success in litigation concerning the subject matter of the settlement; (2) the projected difficulty in collecting after obtaining a judgment in such litigation; (3) the complexity of the issues involved, and the expense, inconvenience, and delay that would therefore attend such litigation; and (4) the paramount interest of holders of claims against and interests in the debtor, to which proper

deference to their reasonable views of the settlement should be afforded.  *Martin*, 91 F.3d at 393

(following *TMT* and clarifying four-factor test); *see also Nutraquest*, 434 F.3d at 644-45; *In re*

*RNI Wind Down Corp.*, 348 B.R. 286, 297-99 (Bankr. D. Del. 2006); *In re Kaiser Aluminum*

*Corp.*, 339 B.R. 91, 96-97 (D. Del. 2006).

15.    In applying the *Martin/TMT* four-factor test, the reasonableness of a

proposed compromise and settlement does not depend on a determination that the settlement

reached is the best that could possibly be obtained, but rather, whether the settlement "fall[s]

below the lowest point in the range of reasonableness."  *In re Pa. Truck Lines, Inc.*, 150 B.R.

595, 598 (E.D. Pa. 1992), *aff'd*, 8 F.3d 812 (3d Cir. 1993); *Key3Media*, 336 B.R. at 92-93 (court

is not required to determine that settlement is best possible compromise).

16.    The *Martin/TMT* factors weigh heavily in favor of approving the

Settlement Agreement.  Importantly, the Settlement Agreement averts potentially costly and

time-consuming litigation over the validity of the Liquidity Obligations and the terms of an

Acceptable Plan.  From the outset of these Chapter 11 Cases, the Debtors have made clear that

the best way to maximize the value of their assets is through a market-tested Sale process.  The

Parties agree that the Debtors' assets have been subjected to a robust marketing process prior to

and during these Chapter 11 Cases, and that the value of the Debtors' assets will be maximized

by transferring them to the Buyer or other Successful Bidder without further delay.  Absent the

Settlement Agreement, the Sale could be delayed by litigation, delaying the Sale process and

jeopardizing the value of the Debtors' estates.

17.    Although the Committee believes that the Debtors' estates may have

claims and defenses against the Liquidity Parties relating to the Liquidity Note Obligations, the

Committee has concluded, after due investigation and analysis, that the Settlement Agreement

8

provides fair and reasonable consideration to the Debtors' estates in exchange for a release and waiver of those claims and defenses.  Additionally, were the Settlement Agreement not approved, the Debtors' estates would bear the cost of litigating the issues in an effort to avoid the same claims against the estate the Settlement Agreement contemplates releasing.  The Movants' shared belief is that the Debtors' estates and all parties in interest benefit more from averting those costs of litigation than they would from either side obtaining its view of a favorable outcome.

18.     Finally, the Parties to the Settlement Agreement negotiated its terms in good faith and at arm's length.  Accordingly, the Movants believe that the terms of the Settlement Agreement are fair, equitable, and in the best interests of all parties in interest.  For all of the foregoing reasons, the Movants submit that entering into the Settlement Agreement is well within the "range of reasonableness" required by Bankruptcy Rule 9019, and respectfully request that the Court approve the Settlement Agreement.

## V. <u>NOTICE</u>

19.     Notice of this Motion has been provided to the Office of the United States Trustee for the District of Delaware, counsel to the Prepetition Secured Lenders, counsel to the Creditors' Committee, Counsel to the Debtors, and all parties requesting notice pursuant to Bankruptcy Rule 2002.  The Movants submit that no other or further notice need be provided.

20.     No previous motion for the relief sought herein has been made to this or any other court.

MIAMI 1011381 (2K)

ACTIVE 25445072v1 04/18/2014

WHEREFORE, the Movants respectfully request entry of an order (i) granting the

relief requested herein and (ii) granting the Movants such other and further relief as the Court

deems just and proper.

Dated: Wilmington, Delaware
        April 18, 2014

| **FOX ROTHSCHILD LLP** | **PACHULSKI STANG ZIEHL & JONES, LLP** |
|---|---|
| By: */s/ L. John Bird* | By: */s/ Bradford J. Sandler* |
| Jeffrey M. Schlerf (No. 3047) | Bradford J. Sandler (No. 4142) |
| John H. Strock (No. 4965) | 919 North Market Street, 17th Floor |
| L. John Bird (No. 5310) | Wilmington, Delaware 19899-8705 |
| 919 North Market Street | Telephone: (302) 652-4100 |
| Suite 300 | |
| Wilmington, Delaware 19801 | —and— |
| Telephone:        (302) 654-7444 | |
| | John D. Fiero |
| —and— | (admitted *pro hac vice*) |
| | 150 California Street, 15th Floor |
| John K. Cunningham | San Francisco, California 94111 |
| (admitted *pro hac vice*) | Telephone:    (415) 263-7000 |
| **WHITE & CASE LLP** | |
| Southeast Financial Center | *Attorneys for the Official Committee of* |
| 200 South Biscayne Boulevard | *Unsecured Creditors* |
| 49th Floor | |
| Miami, Florida 33131 | |
| Telephone:   (305) 371-2700 | |
| | |
| —and— | |
| | |
| Craig H. Averch | |
| (admitted *pro hac vice*) | |
| **WHITE & CASE LLP** | |
| 633 West Fifth Street | |
| Suite 1900 | |
| Los Angeles, California 90071 | |
| Telephone:   (213) 620-7700 | |
| | |
| *Attorneys for the Debtors* | |
| *and Debtors in Possession* | |

MIAMI 1011381 (2K)

ACTIVE 25445072v1 04/18/2014