**Exhibit A**

Proposed Order

MIAMI 1011381 (2K)

ACTIVE 25445072v1 04/18/2014

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Event Rentals, Inc., *et al.*,[1] | Case No. 14-10282 (PJW) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. \_\_\_** |

## ORDER APPROVING SETTLEMENT AGREEMENT AND MUTUAL RELEASES BY AND AMONG (I) THE DEBTORS; (II) THE COMMITTEE AND ITS MEMBERS; AND (III) THE LIQUIDITY PARTIES

Upon consideration of the joint motion (the "Motion")[2] of the official committee of unsecured creditors appointed in the above-captioned chapter 11 cases (the "Committee") and Event Rentals, Inc. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors") for an order pursuant to Bankruptcy Rule 9019 approving the Settlement Agreement by and among (i) the Debtors; (ii) the Committee; and (iii) the Liquidity Parties; and reasonable, adequate, and sufficient notice of the Motion and the hearing thereon having been given; and all affected parties having been afforded due process and an opportunity to be heard with respect to the Motion and all relief requested therein, and no other or further notice need be provided; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is hereby

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Classic Midwest, Inc. (9934); Classic Northeast, Inc. (9871); Classic Panache, Inc. (1237); Classic Party Rentals, Inc. (3911); Classic Party Rentals LP (0583); Classic/Prime, Inc. (7149); Classic Southeast, Inc. (0700); DBO Acquisition Corp. (1923); DUBO Acquisition Corp. (8795); Event Rentals, Inc. (9443); Grand Events & Party Rentals, Inc. (7940); Special Event Holding, Inc. (5659); and Unique Tabletop Rentals, Inc. (4327). The list of the Debtors' alternate names is located on the docket for Case No. 14-10282 [D.I. 3 as amended by D.I. 92] and is also available at http://www.kccllc.net/CPR.

[2] Where the context requires, each capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Motion.

ORDERED that the Motion is GRANTED as set forth herein; and it is further

ORDERED that all objections to the Motion (or any portion thereof) and/or the entry of this Order that have not been withdrawn, waived, or settled, and all reservations of rights in connection with the Motion, are hereby overruled; and it is further

ORDERED that the Settlement Agreement attached to this Order as Exhibit 1 and incorporated herein by reference is approved in its entirety as being fair, reasonable, and adequate, and is effective and binding on the Parties according to its terms as if set forth fully in this Order; and it is further

ORDERED that each of the Parties to the Settlement Agreement is directed to perform in accordance with the terms of the Settlement Agreement and are authorized to take such steps as may be necessary or appropriate in order to implement the terms of the Settlement Agreement and this Order without further notice, hearing, or order of the Court; and it is further

ORDERED that once this Order becomes final and unappealable, no entity can seek any relief from its provisions under sections 105 or 502(j) of the Bankruptcy Code or other applicable law; and it is further

ORDERED that this Order and the Settlement Agreement shall be binding upon the Parties, any trustees appointed in the Chapter 11 Cases, any trustees appointed in any subsequent chapter 7 cases relating to the Debtors, and all other parties in interest in accordance with and subject to the terms of the Settlement Agreement; and it is further

ORDERED that, notwithstanding Bankruptcy Rule 6004(h) to the extent applicable, the terms and conditions of this Order shall be effective and enforceable immediately upon its entry; and it is further

ORDERED that this Court shall, and hereby does, retain jurisdiction with respect to all matters arising from or in relation to the interpretation or implementation of this Order.

Dated: Wilmington, Delaware
       April ___, 2014

                                                _____
                                                UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

Form of Settlement Agreement

MIAMI 1011381 (2K)

ACTIVE 25445072v1 04/18/2014

**SETTLEMENT AGREEMENT AND MUTUAL RELEASES**

This Settlement Agreement and Mutual Releases (this "Agreement") is made and entered into as of April 18, 2014, by and among (i) Special Event Holding, Inc., and its subsidiaries Event Rentals, Inc., DUBO Acquisition Corporation, DBO Acquisition Corporation, Classic Party Rentals LP, Classic Party Rentals, Inc., Classic Midwest, Inc., Classic Northeast, Inc., Classic Panache, Inc., Classic/Prime, Inc., Classic Southeast, Inc., Unique Tabletop Rentals, Inc., and Grand Events and Party Rentals, Inc. (collectively, the "Debtors"); (ii) the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 bankruptcy cases (the "Committee"), on behalf of itself and its members (solely in their capacities as such and not in their individual capacities, the "Committee Members"); (iii) S.A.C. Offshore Capital Funding, Ltd., S.A.C. Domestic Capital Funding, Ltd., JPM Mezzanine Capital, LLC, Quad-C Partners VII, L.P., Quad-C Principals LLC, Quad-C Management, Inc., and Quad-C VII Management Corp. (collectively, the "Liquidity Parties"). The foregoing parties are sometimes referred to herein individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, on February 13, 2014, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

WHEREAS, the Debtors' chapter 11 bankruptcy cases are docketed and remain pending in the Bankruptcy Court as *In re Event Rentals, Inc.*, Jointly Administered Case No. 14-10282 (PJW) (the "Bankruptcy Cases"); and

WHEREAS, on or about February 25, 2014, the Office of the United States Trustee for the District of Delaware appointed the Committee in the Bankruptcy Cases pursuant to section 1102 of the Bankruptcy Code; and

WHEREAS, the Liquidity Parties have been working cooperatively with the Debtors and the Committee to facilitate the Bankruptcy Cases and the restructuring process contemplated therein; and

WHEREAS, the Liquidity Parties or their affiliates own all or substantially all of the equity interests in Special Event Holding, Inc.; and

WHEREAS, certain of the Liquidity Parties have purchased, *inter alia*, certain senior subordinated unsecured notes from the Debtors pursuant to (i) that certain Amended and Restated Liquidity Note Purchase Agreement, dated as of March 31, 2011 and (ii) that certain 2011 Liquidity Note Purchase Agreement, dated as of November 9, 2011 ((i) and (ii) together, as amended, restated or otherwise modified from time to time,

the "Liquidity Note Purchase Agreement" and collectively with any other agreements and documents executed or delivered in connection therewith, including, without limitation, the Liquidity Note Subordination Agreement dated as of March 17, 2010, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "Liquidity Note Loan Documents", including, without limitation, the "Obligations" as defined therein (the "Liquidity Note Obligations")); and

WHEREAS, Quad-C Management, Inc. or its affiliates are owed various (i) management fees and other expenses by the Debtors pursuant to that certain Management Agreement, dated as of December 15, 2006; and (ii) other reimbursable expenses by the Debtors, including, without limitation, in respect of advances made on behalf of the Debtors for executive placement fees and employee salaries (together with the Liquidity Note Obligations, the "Liquidity Obligations");

WHEREAS, the Committee asserts, and the Liquidity Parties dispute, that the Debtors' estates may have certain claims or defenses against the Liquidity Parties related to the Liquidity Note Obligations, including but not limited to the right to recharacterize the Liquidity Note Obligations as equity; and

WHEREAS, the Debtors are in the process of selling substantially all of their assets to CPR Acquisition Holdings, LLC ("Buyer") in the Bankruptcy Court (the "Sale"); and

WHEREAS, the Debtors and the Committee, together with other secured debt holders have agreed to negotiate in good faith the provisions of a chapter 11 plan in the Bankruptcy Cases (an "Acceptable Plan"), which Acceptable Plan shall contain customary broad and mutual release provisions (the "Plan Releases") among the Debtors (and their respective officers and directors), the Committee, the Liquidity Parties, the Lenders[1] and other participating creditors relating to the Debtors or their businesses, the Bankruptcy Cases, the Liquidity Obligations, the Liquidity Notes, and any transactions contemplated thereby or any action or omission in connection therewith (but without reducing or impairing the effectiveness of any releases set forth in this Agreement, or in the Sale documentation);

---

[1] "Lenders" means Ableco Finance LLC; Ableco Capital LLC; COLTS 2005-2 Ltd.; Credit Suisse Loan Funding LLC; 299 Credit Finance Holdings LLC; Fortress Credit Opportunities I LP; Emporia Preferred Funding II, Ltd.; Emporia Preferred Funding III, Ltd.; FM Leveraged Capital Fund I; FM Leveraged Capital Fund II; Fortress Credit Funding III LP; Fortress Credit Funding IV LP; General Electric Capital Corporation; GSC Partners CDO Fund VI, Limited; GSC Partners CDO Fund VII, Limited; Ivy Hill Investment Holdings LLC; Newstar Loan Funding, LLC; Sargas CLO I Ltd.; Twin Haven Special Opportunities IV, L.P.; and Wells Fargo Bank N.A.

WHEREAS, in order to avoid the expense and uncertainty of litigating any challenge or any objections by the Debtors or the Committee to the Liquidity Obligations, the Parties have reached a compromise and settlement as set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, agreements, and promises set forth herein, and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows.

1.  **Liquidity Party Deficiency Claims and Related Rights**.  In exchange for the releases, covenants, agreements, and promises set forth in this Agreement and other consideration to be received in an Acceptable Plan as described herein, the Liquidity Parties shall not receive any distribution from or in connection with the Bankruptcy Cases (including, without limitation, pursuant to subordination agreements applicable to any of the Debtors' other creditors), and shall waive any claim associated with the Liquidity Obligations.

2.  **Mutual Releases**.  The Committee and the Committee Members, the Debtors, and the Liquidity Parties agree upon the following releases.

    a.  The Committee and Committee Members, each on behalf of itself and its respective employees, officers, managers, directors, representatives, agents, successors, assigns, and attorneys, in each case solely in such capacity with respect to the Committee (collectively, the "**Committee Parties**"), each hereby releases, acquits, and forever discharges the Liquidity Parties, and each of their respective affiliates, employees, officers, directors, managers, members, representatives, agents, attorneys, direct or indirect equity holders, successors, predecessors, and assigns (other than the Buyer), in each case solely in such capacity as a Liquidity Party, lender, creditor, equity holder, fiduciary, director, officer or any other capacity otherwise regarding the Debtors, as the case may be (collectively, the "**Liquidity Released Parties**"), from any and all claims, rights, demands, causes of action, suits, debts, obligations, liabilities, damages, losses, fees, costs, and expenses (including, without limitation, attorneys' fees, costs, and expenses), whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, of any kind, nature, and/or description, matured or unmatured, liquidated or unliquidated, accrued or unaccrued, actual or potential, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not asserted, threatened, alleged, or litigated, at law, equity, or otherwise (collectively, "**Claims**"), that have arisen or could have arisen or that could arise in the future on account of, arising out of, relating to, or resulting from any circumstances, conduct, facts, events, transactions, acts, occurrences, statements, representations, misrepresentations or omissions, errors, negligence, breach of contract, tort, violation of law, matter, or cause occurring or arising prior to the date the Sale closes (the "**Closing Date**") or attributable to such period, in each case which any of the Committee Parties has had, now has, or may have in the future against any of the Liquidity Released Parties in connection with

3

or arising out of (i) the Liquidity Obligations, or any transactions contemplated thereby or any action or omission in connection therewith, (ii) the Debtors or their businesses, or (iii) the Bankruptcy Cases; *provided, however*, that this release shall not include Claims in connection with or arising out of this Agreement.

b.      The Liquidity Parties, each on behalf of itself and its respective employees, officers, managers, directors, representatives, agents, successors, assigns, and attorneys (collectively, the "Liquidity Releasing Parties"), each hereby releases, acquits, and forever discharges (1) the Committee, the Committee Members, and each of their respective affiliates, employees, officers, directors, managers, members, representatives, agents, attorneys, direct or indirect equityholders, successors, predecessors, and assigns, in each case solely in such capacity with respect to the Committee (collectively, the "Committee Released Parties") and (2) the Debtors, and each of their respective affiliates, employees, officers, directors, managers, members, representatives, agents, attorneys, direct or indirect equityholders, successors, predecessors, and assigns, in each case solely in such capacity with respect to the Debtors (collectively, the "Debtor Released Parties") from any and all Claims that have arisen or could have arisen or that could arise in the future on account of, arising out of, relating to, or resulting from any circumstances, conduct, facts, events, transactions, acts, occurrences, statements, representations, misrepresentations or omissions, errors, negligence, breach of contract, tort, violation of law, matter, or cause occurring or arising prior to the Closing Date or attributable to such period, in each case which any of the Liquidity Releasing Parties has had, now has, or may have in the future against any of the Committee Released Parties or the Debtor Released Parties in connection with or arising out of (i) the Liquidity Obligations, or any transactions contemplated thereby or any action or omission in connection therewith, (ii) the Debtors or their businesses, or (iii) the Bankruptcy Cases; *provided, however*, that this release shall not include Claims in connection with or arising out of this Agreement.

c.      The Debtors, each on behalf of itself and its respective employees, officers, managers, directors, representatives, agents, successors, assigns, and attorneys (collectively, the "Debtor Parties"), each hereby releases, acquits, and forever discharges the Liquidity Released Parties and the Committee Released Parties from any and all Claims that have arisen or could have arisen or that could arise in the future on account of, arising out of, relating to, or resulting from any circumstances, conduct, facts, events, transactions, acts, occurrences, statements, representations, misrepresentations or omissions, errors, negligence, breach of contract, tort, violation of law, matter, or cause occurring or arising prior to the Closing Date or attributable to such period, in each case which any of the Debtor Parties has had, now has, or may have in the future against any of the Committee Released Parties or the Liquidity Released Parties in connection with or arising out of the Liquidity Obligations, or any transactions contemplated thereby or any action or omission in connection therewith, (ii) the Debtors or their businesses, or (iii) the Bankruptcy Cases; *provided, however*, that this release shall not include Claims in connection with or arising out of this Agreement.

4

d.     To the extent that California law is deemed to apply to the release provisions of this Agreement, each Committee Party, the Debtors, and each Liquidity Party hereby warrants, represents, and agrees that it is fully aware of California Civil Code Section 1542, which provides as follows:

**SECTION 1542. GENERAL RELEASE**. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Each Committee Party, each of the Debtor Parties, and each of the Liquidity Parties hereby knowingly and voluntarily waives and relinquishes the provisions, rights, and benefits of Section 1542 and all similar federal, state, or local laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein, and any rights it may have to invoke the provisions of any such law now or in the future with respect to the Claims being released by it pursuant to this Agreement, and each of parties hereby agrees and acknowledges that this Paragraph 2(d) is an essential term of this Agreement. In connection with the releases set forth herein, each Committee Party, Debtor Party and Liquidity Party acknowledges that it is aware that it or its attorneys or others may hereafter discover claims or facts presently unknown or unsuspected in addition to or different from those which it now knows or believes to be true with respect to the subject matter of the Claims being released pursuant to this Agreement. Nevertheless, it is the intention of each Committee Party, Debtor Party and Liquidity Party in executing this Agreement to fully, finally, and forever settle and release all matters and all claims relating thereto, which exist, hereafter may exist or might have existed (whether or not previously or currently asserted in any action) constituting Claims released pursuant to this Agreement.

3.     <u>Bankruptcy Court Approval and Approval Process</u>. The Parties hereby agree to the following process regarding approval and consummation of this Agreement:

a.     This Agreement must be submitted to the Bankruptcy Court for final approval after notice and a hearing in accordance with Federal Rule of Bankruptcy Procedure 9019 and other applicable law. The Debtors and the Committee shall (1) file a joint motion to approve the settlement set forth herein, in form and substance reasonably acceptable to the Debtors, the Committee, and the Liquidity Parties (the "<u>Settlement Motion</u>") on or before ==April __, 2014==; (2) not withdraw the Settlement Motion after it has been filed; and (3) not file any other motion, application, pleading, or request that is in any respect inconsistent with the Settlement Motion, or that would threaten, hinder, or prevent the relief requested in the Settlement Motion. Similarly, the Liquidity Parties shall not file any motion, application, pleading, or request that is in any respect inconsistent with the Settlement Motion, or otherwise threaten, hinder, or prevent the relief requested in the Settlement Motion.

5

b.  None of the terms or provisions of this Agreement will be effective and binding on any of the Parties until such time as the later of (1) the date upon which the closing of the Sale occurs, (2) when the Bankruptcy Court has entered an order granting the Settlement Motion (the "Approval Order") in form and substance acceptable to the Debtors, the Committee, and the Liquidity Parties, and the Approval Order has become a final and nonappealable order; or (3) the date upon which an Acceptable Plan setting forth the Plan Releases becomes effective pursuant to a Bankruptcy Court order confirming such plan that has become final and nonappealable (the "Final Confirmation Order"). The Debtors and the Committee agree to use reasonable best efforts to seek timely entry of the Approval Order and to make the Approval Order final and nonappealable. With the exception of the Approval Order and the Final Confirmation Order, the Parties agree that no other order or ruling from the Bankruptcy Court will be required to implement this Agreement.

c.  If the Bankruptcy Court declines to approve this Agreement despite the reasonable best efforts of the Parties to obtain such approval, then (1) this Agreement shall be null and void and of no force or effect (other than with respect to the evidentiary stipulations in Paragraph 7(e) hereof) and (2) the Parties' respective rights with respect to all matters addressed by this Agreement shall be fully reserved and the Parties shall be restored to their respective positions, *status quo ante*, as of April 14, 2014; *provided, however*, that nothing in this Agreement will create, impair, or otherwise affect any right of any Party to attempt to challenge, void, or reverse the Bankruptcy Court's approval of any sale transaction, and all Parties' rights with respect to any such attempt are fully reserved; *provided, further, however*, that the Committee and the Committee Members agree that they shall have no right to invalidate, void, unwind, or otherwise reverse any sale transaction that has been approved by the Bankruptcy Court and has closed, and nothing in this Agreement will create, impair, or otherwise affect any right of any Party with respect to the closing of any sale transaction.

4.  Cooperation.  The Parties shall cooperate with each other in good faith and shall coordinate their activities (to the extent practicable) in respect of the Sale and the transactions contemplated by this Agreement and the Sale documentation (or any other asset purchase agreement between the Debtors and a prevailing bidder); *provided*, that the Parties' compliance with this Paragraph 4 shall not be deemed to be, require, or constitute a waiver of any applicable attorney-client, work product, or other privilege.

5.  Plan Terms.  In addition to the releases provided to the Liquidity Released Parties herein, the Committee Parties and the Debtor Parties covenant and agree that the Plan Releases will provide that each unsecured creditor voting in favor of the Plan shall be deemed to have released the Liquidity Released Parties to the same extent as provided in Paragraph 2.a, above.

6

6.  <u>Successors and Assigns</u>.  This Agreement and each of the provisions hereof will apply to, bind, and benefit the Parties' respective successors and assigns, including, without limitation, any chapter 11 or chapter 7 trustee that may be appointed with respect to one or more of the Debtors' estates and any transferee of any claims held by any of the Liquidity Parties.

7.  <u>Entire Agreement; Drafting and Interpretation; Settlement Protections</u>.

a.  This Agreement is the entire agreement among the Parties with respect to the compromise and settlement set forth herein and supersedes all prior agreements, oral or written, between or among the Parties with respect thereto.

b.  This Agreement is the product of negotiation by and among the Parties. There shall be no presumption concerning whether to interpret this Agreement for or against any Party by reason of that Party having drafted this Agreement, or any portion thereof, or caused it or any portion thereof to be drafted.  Each Party acknowledges that it has had the opportunity to be represented by counsel in connection with this Agreement and the transactions contemplated by this Agreement.  Accordingly, any rule of law or legal decision that would provide any Party with a defense to the enforcement of the terms of this Agreement against such Party based on lack of legal counsel shall have no application and is expressly waived.

c.  Each Party hereby confirms that its decision to execute this Agreement has been based upon its independent investigation of the operations, businesses, financial and other conditions and prospects of the Debtors.  Each Party acknowledges that any materials or information furnished to it by any other Party has been provided for informational purposes only, without any representation or warranty by such other Party.

d.  The headings of all sections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

e.  This Agreement is part of a proposed compromise and settlement among the Parties.  Except as expressly provided in this Agreement, nothing herein is intended to, or does, in any manner waive, limit, impair, or restrict the ability of each of the Parties hereto to protect and preserve their rights, remedies, claims, and interests, and all such rights are fully reserved.  Nothing herein shall be deemed an admission of any kind.  All pre-execution drafts of this Agreement and all communications among counsel for the Parties regarding this Agreement (collectively, the "<u>Negotiation Materials</u>") shall constitute settlement discussions pursuant to Federal Rule of Evidence 408 and any other applicable rules of

7

similar import. The Parties hereby stipulate and agree that unless and until the Bankruptcy Court approves this Agreement and this Agreement becomes effective, this Agreement will be inadmissible as evidence.

8. <u>Execution</u>. This Agreement may be executed and delivered (by facsimile, PDF, or otherwise) in any number of counterparts, each of which, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. Delivery of an executed signature page of this Agreement by telecopier or email shall be as effective as delivery of a manually executed signature page of this Agreement. Each Party represents that each individual executing this Agreement on behalf of such Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of such Party.

9. <u>Modification; Waivers</u>. No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing by all of the Parties. No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver.

10. <u>Governing Law; Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the substantive law of the State of Delaware, without regard to its conflict of laws or any other choice of law rules; *provided, however*, that with respect to any matters arising under the Bankruptcy Code, this Agreement shall be governed by and construed in accordance with federal bankruptcy law. By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees that any dispute with respect to this Agreement shall be resolved by the Bankruptcy Court, which shall have and retain jurisdiction and power to enforce the terms of this Agreement.

[remainder of page intentionally left blank; signature pages follow]

S.A.C. OFFSHORE CAPITAL FUNDING, LTD.         S.A.C. DOMESTIC CAPITAL FUNDING, LTD.

By: _____            By: _____

    Name: _____                Name: _____

    Title: _____                Title: _____


JPM MEZZANINE CAPITAL, LLC


By: _____

    Name: _____

    Title: _____

[Signature Page to Settlement Agreement and Mutual Releases]

| | |
|---|---|
| QUAD-C PARTNERS VII, L.P., a Delaware limited partnership | QUAD-C PRINCIPALS LLC, a Delaware limited liability company |
| By: QUAD-C ADVISORS VII, L.P., a Delaware limited partnership, its General Partner | By: QUAD-C MANAGEMENT, INC., a Virginia corporation , its Manager |
| By: QUAD-C VII GP, LLC, a Delaware limited liability company, its General Partner | |

By: _____

    Name:  Stephen M. Burns

    Title:  Managing Member

By: _____

    Name:  Stephen M. Burns

    Title:  Vice President

| | |
|---|---|
| QUAD-C MANAGEMENT, INC., a Virginia corporation | QUAD-C MANAGEMENT (Series I), a series of Quad-C Management, L.P., a Delaware limited partnership, as successor to Quad-C VII Management Corp. |
| | By: QUAD-C VII GP, LLC, a Delaware limited liability company, its General Partner |

By: _____

    Name:  Stephen M. Burns

    Title:  Vice President

By: _____

    Name:  Stephen M. Burns

    Title:  Managing Member

[Signature Page to Settlement Agreement and Mutual Releases]

| | |
|---|---|
| SPECIAL EVENT HOLDING, INC., a Delaware corporation | CLASSIC MIDWEST, INC., a Delaware corporation |
| By: _____ <br> Name: _____ <br> Title: _____ | By: _____ <br> Name: _____ <br> Title: _____ |
| UNIQUE TABLETOP RENTALS, INC., a California corporation | EVENT RENTALS, INC., a Delaware corporation |
| By: _____ <br> Name: _____ <br> Title: _____ | By: _____ <br> Name: _____ <br> Title: _____ |
| CLASSIC NORTHEAST, INC., a Delaware corporation | CLASSIC PANACHE, INC., a Delaware corporation |
| By: _____ <br> Name: _____ <br> Title: _____ | By: _____ <br> Name: _____ <br> Title: _____ |
| DBO ACQUISITION CORP., a Delaware corporation | CLASSIC PARTY RENTALS LP |
| By: _____ <br> Name: _____ <br> Title: _____ | By: _____ <br> Name: _____ <br> Title: _____ |

[Signature Page to Settlement Agreement and Mutual Releases]

| | |
|---|---|
| CLASSIC/PRIME, INC., a Delaware corporation | CLASSIC SOUTHEAST, INC., a Delaware corporation |
| By: _____<br>　　Name: _____<br>　　Title: _____ | By: _____<br>　　Name: _____<br>　　Title: _____ |
| DUBO ACQUISITION CORP.,<br>a Delaware corporation | GRAND EVENTS & PARTY RENTALS, INC.,<br>a Delaware corporation |
| By: _____<br>　　Name: _____<br>　　Title: _____ | By: _____<br>　　Name: _____<br>　　Title: _____ |

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (FOR THE COMMITTEE PARTIES)

By: _____
　　Name: _____
　　Title: _____

[Signature Page to Settlement Agreement and Mutual Releases]