**Exhibit C**

Revised Sale Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Event Rentals, Inc., *et al.*,[1] | Case No. 14-10282 (PJW) |
| Debtors. | Jointly Administered<br>Related Docket Nos. 29, 175 & [] |

## ORDER: (1) APPROVING ASSET PURCHASE AGREEMENT AMONG THE DEBTORS AND THE BUYER; (2) APPROVING SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(b), 363(f), AND 363(m); (3) APPROVING ASSUMPTION, ASSIGNMENT, TRANSFER, AND/OR SALE OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 363 AND 365; (4) DETERMINING THE AMOUNTS NECESSARY TO CURE SUCH EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (5) GRANTING RELATED RELIEF

Upon the motion dated February 14, 2014 (the "Sale Motion") of Event Rentals, Inc. and its affiliates (collectively, the "Debtors"), debtors and debtors in possession in the above-captioned cases ("Bankruptcy Cases") pursuant to sections 105, 363, and 365 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, 9014, and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") seeking, among other things, entry of an order: (a) approving the sale of substantially all of the Debtors' assets pursuant that certain Asset Purchase Agreement, dated as of February 14, 2014 (as amended, supplemented, or otherwise modified from time to time after

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: Classic Midwest, Inc. (9934); Classic Northeast, Inc. (9871); Classic Panache, Inc. (1237); Classic Party Rentals, Inc. (3911); Classic Party Rentals LP (0583); Classic/Prime, Inc. (7149); Classic Southeast, Inc. (0700); DBO Acquisition Corp. (1923); DUBO Acquisition Corp. (8795); Event Rentals, Inc. (9443); Grand Events & Party Rentals, Inc. (7940); Special Event Holding, Inc. (5659); and Unique Tabletop Rentals, Inc. (4327). The list of the Debtors' alternate names is located on the docket for Case No. 14-10282 [D.I. 3] and is also available at http://kccllc.net/CPR.

the filing of the Sale Motion, including all Exhibits, Schedules, and Appendices thereto, the "Stalking Horse APA") by and among the Debtors and CPR Acquisition Holdings, LLC, a Delaware limited liability company (the "Stalking Horse Bidder"), or such other asset purchase agreement (as may be amended, supplemented, or otherwise modified from time to time, the "Asset Purchase Agreement") with one or more third parties that is determined to represent the highest or otherwise best bid for the Purchased Assets at the Auction (such Winning Bidder, the "Buyer"), free and clear of all Liens, claims, interests, and encumbrances (other than Liens specifically assumed by the Buyer under the Asset Purchase Agreement and Permitted Exceptions), in accordance with the terms and conditions contained in the Asset Purchase Agreement, (b) providing for the sale by the Debtors to the Buyer of the Purchased Assets, including the assumption, assignment, transfer, and/or sale to the Buyer of the Purchased Contracts, free and clear of all Liens, claims, interests, and encumbrances (other than Liens specifically assumed by the Buyer under the Asset Purchase Agreement and Permitted Exceptions) in accordance with the terms and conditions contained in the Asset Purchase Agreement, and (c) authorizing the consummation of the transactions contemplated by the Asset Purchase Agreement (collectively, the "Sale Transaction"); and this Court having entered an order on March 14, 2014 [Docket No. 175] (as amended, supplemented, or otherwise modified, the "Bid Procedures Order") approving, among other things, the dates, deadlines, and bidding procedures (the "Bid Procedures") with respect to, and notice of, the Sale Transaction; and an Auction having been set for April 21, 2014, in accordance with the Bid Procedures Order; and the Debtors, after consultation with the Official Committee of Unsecured Creditors (the "Committee"), having determined that the Asset Purchase Agreement[2] submitted by [BUYER] in

---

[2]    A true and correct copy of the Asset Purchase Agreement (without Schedules or Exhibits) is attached

accordance with the Bid Procedures represents the highest or otherwise best bid for the Purchased Assets; and a hearing having been held on April 29, 2014 (the "Sale Hearing") to consider approval of the Asset Purchase Agreement; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and reasonable, adequate, and sufficient notice of the Sale Motion and the Sale Hearing having been given to all parties in interest in these cases; and all such parties having been afforded due process and an opportunity to be heard with respect to the Sale Motion and all relief requested therein; and the Court having reviewed and considered: (a) the Sale Motion; (b) the objections to the Sale Motion, if any; and (c) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation and sufficient cause appearing;

**IT HEREBY IS FOUND, DETERMINED AND CONCLUDED THAT**:

A.      Any of the findings of fact contained herein shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law contained herein shall constitute a conclusion of law even if it is stated as a finding of fact.  The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Sale Hearing.

B.      The Court has jurisdiction over this matter, over the property of the Debtors' estates, including the Purchased Assets to be sold, transferred, or conveyed pursuant to the Asset Purchase Agreement, and over the Debtors' respective estates pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of these

---

hereto as **Exhibit A**.  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Asset Purchase Agreement.

Bankruptcy Cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.    The statutory and other bases for the relief sought in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9014, and 9019, and Local Rule 6004-1.

D.    As evidenced by the affidavits of service on file with the Court, (i) due, proper, timely, adequate, and sufficient notice of the Bid Procedures, the Auction, the Sale Hearing, and the Sale Motion and the relief requested therein, has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Bid Procedures Order, and the Asset Purchase Agreement; (ii) such notice was good, sufficient, and appropriate under the circumstances; and (iii) no other or further notice of the Bid Procedures, the Auction, the Sale Hearing, the Asset Purchase Agreement, the Sale Transaction, or the Sale Motion is or shall be required.

E.    Actual written notice of, and a reasonable opportunity to object and to be heard with respect to, the Sale Motion has been given, in light of the circumstances, to all interested persons and entities, including, without limitation, to (i) the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the DIP Agent and the Prepetition Secured Agent, and to the lenders party to the DIP Facility (each as defined in the DIP Order); (iv) all entities known to have expressed an interest in acquiring any of the Purchased Assets; (v) all parties known to be asserting a Lien on any of the Debtors' assets; (vi) all known vendors, suppliers, lenders, contract, license and lease counterparties; (vii) the United States Attorney's office; (viii) various federal and state agencies and authorities asserting jurisdiction over the Purchased Assets, including the Internal Revenue Service; (ix) all federal, state, and local taxing authorities with

jurisdiction over the Business; (x) all regulatory authorities that have a reasonably known interest in the relief requested in the Sale Motion; (xi) the non-Debtor parties to the Purchased Contracts; and (xii) all other parties that have filed a notice of appearance and demand for service of papers in these Bankruptcy Cases as of the date of entry of the Bid Procedures Order.

F.      As demonstrated by (i) the evidence adduced at and prior to the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have conducted a fair and open sale process in a manner reasonably calculated to produce the highest and otherwise best offer for the Purchased Assets in compliance with the Bid Procedures Order. The Bid Procedures were substantively and procedurally fair to all parties, and were the result of arms' length negotiations.  The sale process, Bid Procedures, and Auction were non-collusive, duly noticed, and afforded a full, fair, and reasonable opportunity for any Person to make a higher and otherwise better offer to purchase all or any of the Purchased Assets.  The bidding and related procedures established by the Bid Procedures Order have been complied with in all material respects by the Debtors, the Buyer, and their respective counsel and other advisors.  The Bid Procedures obtained the highest value for the Purchased Assets for the Debtors and their estates, and any other transaction would not have yielded as favorable an economic result.

G.      The Debtors provided all interested parties with timely and proper notice of the Sale, Sale Hearing, and Auction. Notice of the Debtors' assumption, assignment, transfer, and/or sale to the Buyer of the Purchased Contracts has been provided to each non-debtor party thereto, together with a statement therein from the Debtors with respect to the amount, if any, to be paid to such non-debtor party under Bankruptcy Code section 365(b) as a condition to assumption and assignment.  As to each Purchased Contract, payment of the amounts set forth on **Exhibit B** hereto (each a "Cure Amount" and collectively, the "Cure Amounts") is sufficient for the

Debtors to comply fully with the requirements of section 365(b)(1)(A) and (B) of the Bankruptcy Code. Each of the non-Debtor parties to the Purchased Contract have had an opportunity to object to the Cure Amounts set forth in the notice. In addition, the Buyer has provided adequate assurance of its ability to perform its obligations under each of the Purchased Contracts within the meaning of section 365(f)(2)(B) of the Bankruptcy Code. Therefore, the Purchased Contracts may be assumed by the Debtors and assigned and sold to the Buyer.

H.      As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, and Sale Transaction has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, and 9014. The Debtors also have complied with all obligations to provide notice of the Sale Motion, Auction, Sale Hearing, and Sale Transaction required by the Bid Procedures Order. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale Hearing, Sale Transaction, or assumption, assignment, transfer, and/or sale of the Purchased Contracts is required.

I.      The disclosures made by the Debtors concerning the Asset Purchase Agreement, Auction, Sale Transaction, Sale Hearing, and the assumption, assignment, transfer, and/or sale of the Purchased Contracts were good, complete, and adequate.

J.      The Purchased Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. The Debtors have all right, title, and interest in the Purchased Assets required to transfer and convey the Purchased Assets to the Buyer. The Debtors have taken all corporate or other entity action necessary to authorize and approve the Asset Purchase Agreement and the consummation

of the Sale Transaction, and the Debtors' sale of the Purchased Assets to the Buyer has been duly and validly authorized by all necessary corporate or other entity action. Upon entry of this Sale Order, the Debtors shall have full authority to consummate the Asset Purchase Agreement and transactions contemplated by the Asset Purchase Agreement.

K.      Approval of the Asset Purchase Agreement and consummation of the Sale Transaction is in the best interests of the Debtors, their estates, creditors, and other parties in interest. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the sale to the Buyer pursuant to section 363(b) of the Bankruptcy Code. Such business purposes and justifications include, but are not limited to, the following: (i) the Sale Transaction is the only viable alternative to liquidation; and (ii) the Asset Purchase Agreement and the closing thereon will present the best opportunity to realize the value of the Purchased Assets on a going concern basis and avoid decline and devaluation of the Purchased Assets.

L.      The Asset Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arms' length bargaining positions. The Buyer is not an "insider" or an "affiliate" of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code.

M.      The sale price in respect of the Purchased Assets was not controlled by any agreement among potential bidders at such sale and neither the Debtors nor the Buyer engaged in collusion or any other conduct that would cause or permit the Asset Purchase Agreement or Sale Transaction to be avoidable under section 363(n) of the Bankruptcy Code. Accordingly, neither the Asset Purchase Agreement nor the Sale Transaction may be avoided and no party shall be entitled to any damages or other recovery pursuant to section 363(n).

N.     The release provisions contained in Section 12.12 of the Asset Purchase Agreement were negotiated, proposed, and entered into by the parties without collusion, in good faith, and from arms' length bargaining positions.  Such releases constitute good faith compromises and settlements of the matters covered thereby.  Such compromises and settlements are (i) made in exchange for adequate consideration; (ii) in the best interests of each of the Debtors' estates, creditors, and other parties in interest; (iii) fair, equitable, and reasonable; (iv) integral elements of the Sale Transaction; and (v) otherwise approved by the Court as appropriate pursuant to applicable law.

O.     The Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  The Buyer is acting in good faith within the meaning of section 363(m) in consummating the Sale Transaction.  The Buyer has proceeded in good faith in all respects in that, among other things, (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Buyer complied with the provisions of the Bid Procedures Order; (iii) the Buyer's bid was subjected to the competitive bid procedures set forth in the Bid Procedures Order; (iv) no common identity of directors or officers exists among the Buyer and the Debtors; and (v) all payments to be made by the Buyer and all other material agreements or arrangements entered into by the Buyer and the Debtors in connection with the Sale Transaction have been disclosed and are appropriate.

P.     The consideration to be provided by the Buyer pursuant to the Asset Purchase Agreement: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Purchased Assets; (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and

fair consideration.  In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Debtors' estates and the indirect benefits of the Sale Transaction for the Debtors' employees, landlords, vendors and suppliers, and the public served, directly and indirectly, by the functions performed by the Debtors' employees and the Business. The Debtors' determination that the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets is a result of due deliberation by the Debtors and constitutes a valid and sound exercise of the Debtors' business judgment consistent with their fiduciary duties.  Entry of an order approving the Sale Motion, the Asset Purchase Agreement, and the Sale Transaction is a necessary condition precedent to the Buyer consummating the Sale Transaction.

Q.    The transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets and will vest the Buyer with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Liens, claims, encumbrances, and other interests of any kind and every kind whatsoever, other than (i) Liens specifically assumed by Buyer under the Asset Purchase Agreement, (ii) Permits that are subject to review and approval by a Governmental Body, and (iii) Permitted Exceptions; provided, that all Liens, claims, encumbrances, and interests of which the Purchased Assets are sold free and clear shall attach to the proceeds of the sale in order of priority.

R.    The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtors, their estates, and their creditors, if the transfer of the Purchased Assets to the Buyer and the assumption, assignment, and sale of the Purchased Contracts to the Buyer were not free and clear of all Liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (other than as

expressly specified in the Asset Purchase Agreement), or if the Buyer would, or in the future could, be liable for any such Liens, claims, encumbrances, or other interests.  A sale of the Purchased Assets other than one free and clear of such Liens, claims, encumbrances, and other interests would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale Transaction.

S.      The Debtors may sell the Purchased Assets free and clear of all Liens, claims, encumbrances, and interests of any kind or nature whatsoever (other than Liens specifically assumed by Buyer under the Asset Purchase Agreement and Permitted Exceptions), because, in each case, one or more of the standards set forth in section 363(f)(1) through (5) of the Bankruptcy Code have been satisfied.  Each entity with a Lien, claim, encumbrance, or other interest in the Purchased Assets to be transferred on the Closing Date (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale Transaction or is deemed to have consented; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, claim, encumbrance, or interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of Liens, claims, encumbrances, and interests who did not object to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

T.      The transfer of the Purchased Assets to the Buyer, including the assumption by the Debtors and assignment, transfer, and/or sale to the Buyer of the Purchased Contracts, will not subject the Buyer to any liability whatsoever (including any successor liability) with respect to the operation of the Business prior to the Closing or by reason of such transfer, except that the Buyer shall remain liable for the Assumed Liabilities.  The Buyer (i) is not, and shall not be, considered a successor to the Debtors; (ii) has not, *de facto* or otherwise, merged with or into the

Debtors; (iii) is not a continuation or substantial continuation of the Debtors or any enterprise of the Debtors; (iv) does not have a common identity of incorporators, directors, or equity holders with the Debtors; and (v) is not holding itself out to the public as a continuation of the Debtors.

U.      The Asset Purchase Agreement is a valid and binding contract between the Debtors and the Buyer, which is and shall be enforceable according to its terms.  The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  No Debtor nor the Buyer is entering into the Sale Transaction fraudulently.

V.      The assumption, assignment, and/or transfer of the Purchased Contracts pursuant to the terms of this Sale Order is integral to the Asset Purchase Agreement and is in the best interests of the Debtors and their estates, creditors, and other parties in interest, and constitutes a valid and sound exercise of the Debtors' business judgment consistent with their fiduciary duties.

W.      Pursuant to section 365 of the Bankruptcy Code, upon payment of the Cure Amounts or reservation of the Claimed Cure Amount (as defined in the Bid Procedures Order), the Debtors or the Buyer, as applicable, shall have: (i) cured and/or provided adequate assurance of cure of any monetary default existing prior to the Petition Date under any of the Purchased Contracts; and (ii) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Petition Date under any of the Purchased Contracts.

X.      Other than claims arising under the Asset Purchase Agreement, the Debtors agree and acknowledge that they have no claims against the Buyer.

Y.    The Sale Transaction must be approved and consummated promptly in order to preserve the viability of the Business and maximize the value of the Debtors' estates.  Time is of the essence in consummating the Sale Transaction.  Cause has been shown as to why this Sale Order should not be subject to any stay provided by Bankruptcy Rules 6004(h) and 6006(d).

Z.    The Sale Transaction does not constitute a de facto plan of reorganization or liquidation or an element of such a plan for any of the Debtors, as it does not and does not propose to (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests or extend debt maturities.

AA.    The consummation of the Sale Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale Transactions.

BB.    There is other good and sufficient cause to grant the relief requested in the Sale Motion and approve the Asset Purchase Agreement and the Sale Transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Sale Motion is GRANTED and complies with all aspects of Local Rule 6004-1.

2.    Any objections to the Sale Motion or the entry of this Sale Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are DENIED and OVERRULED on the merits and with prejudice.

3.      The Asset Purchase Agreement, including all of its terms and conditions and all other ancillary documents, and the Sale Transaction are APPROVED in all respects.

4.      Pursuant to sections 363 and 365 of the Bankruptcy Code, the Debtors are authorized to (i) execute, deliver, and perform under, consummate, and implement the Asset Purchase Agreement and the Sale Transaction together with all additional instruments and documents that are requested by the Buyer and may be reasonably necessary or desirable to implement the Asset Purchase Agreement, (ii) take any and all actions as the Debtors deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to Buyer's possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement, including, without limitation, any and all actions reasonably requested by the Buyer which are consistent with the Asset Purchase Agreement; and (iii) take all other and further acts or actions as may be reasonably necessary to implement the Sale Transaction.

5.      Pursuant to sections 105(a), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing: (i) the transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement shall constitute a legal, valid, and effective transfer of the Purchased Assets and shall vest the Buyer with all right, title, and interest in and to the Purchased Assets; (ii) the Purchased Assets shall be transferred to the Buyer free and clear of all Liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including Liens, claims, encumbrances, and interests of any Governmental Body), other than Liens specifically assumed by Buyer under the Asset Purchase Agreement and Permitted Exceptions, in accordance with section 363(f) of the Bankruptcy Code, with any such Liens, claims, encumbrances, and interests of which the

Purchased Assets are sold free and clear to attach to the proceeds of the Sale Transaction, in the order of their priority, with the same validity, force, and effect which they had against the Purchased Assets prior to the entry of this Sale Order, subject to any rights, claims, and defenses the Debtors and all interested parties may possess with respect thereto; and (iii) each of the Contracts designated as Purchased Contracts at Closing shall be deemed assumed by the Debtors and assigned, transferred, and/or sold to the Buyer.

6.      Upon the occurrence of the Closing, this Sale Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets acquired under the Asset Purchase Agreement or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in all the Purchased Assets to the Buyer.

7.      This Sale Order is and shall be effective as a determination that all Liens, claims, encumbrances, and interests, other than Liens specifically assumed by Buyer under the Asset Purchase Agreement and Permitted Exceptions, shall be and are, without further action by any Person, released with respect to the Purchased Assets as of the Closing Date.  Following the Closing, no holder of any Liens, claims, encumbrances, and interests, other than Liens specifically assumed by Buyer under the Asset Purchase Agreement and Permitted Exceptions, or other party in interest may interfere with the Buyer's use and enjoyment of the Purchased Assets based on or related to such Lien, Claim, encumbrance, or other interest, or any actions that the Debtors may take in their Bankruptcy Cases, and no party may take any action to prevent, interfere with, impair, or otherwise enjoin consummation of the Sale Transaction.  All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the

Purchased Assets to the Buyer in accordance with the terms of the Asset Purchase Agreement and this Sale Order.

8.     The Buyer and its Affiliates, successors, and assigns shall not be deemed or considered a successor to the Debtors or the Debtors' estates by reason of any theory of law or equity and the Buyer has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except as otherwise expressly provided in the Asset Purchase Agreement.  Without limitation, the Buyer and its Affiliates, successors, and assigns shall have no successor, transferee, or vicarious liability of any kind or character, including, without limitation, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee or transferee liability, labor, product liability, employment, de facto merger, substantial continuity, or other law, rule, regulation, or doctrine, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors, the Business, or any obligations of the Debtors arising prior to the Closing Date, including, without limitation, liabilities on account of any taxes or other Governmental Body fees, contributions, or surcharges, in each case arising, accruing, or payable under, out of, in connection with, or in any way relating to, the operation of the Purchased Assets prior to the Closing Date or arising based on actions of the Debtors taken after the Closing Date.

9.     Except to the extent expressly included in the Assumed Liabilities or to enforce the Asset Purchase Agreement or Permitted Exceptions, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, without limitation, the Debtors, the Committee, all debt security holders, all equity security holders, the Debtors' employees or former employees, governmental, tax, and regulatory or investigatory authorities of any sort,

lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding any Liens, claims, encumbrances, and other interests of any kind and every kind whatsoever against, in or with respect to any of the Debtors, the Business, or all or any part of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, all or any part of the Purchased Assets, the operation of the Business prior to the Closing Date, or the transfer of the Purchased Assets to the Buyer shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Liens, claims, encumbrances, or other interests, whether by payment, setoff, or otherwise, directly or indirectly, against the Buyer or any affiliate, successor, or assign thereof, or against the Purchased Assets.  Nothing contained in this Sale Order shall limit, alter, or otherwise modify the provisions of the DIP Order or the rights of any parties thereunder.

10.    The Buyer has given substantial consideration under the Asset Purchase Agreement to the Debtors' estates.  The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of successor or transferee liability of the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of Liens, claims, encumbrances, and other interests against the Debtors or the Purchased Assets.

11.    On the Closing Date all rights, claims or causes of action of the Debtors and their estates (whether arising before or after the Bankruptcy Cases), including, without limitation, all rights, claims or causes of action arising under Chapter 5 of the Bankruptcy Code or any similar Law, relating to the assets, properties, Business or operations of the Debtors or the Purchased Assets including, without limitation, all defenses, offsets, setoffs, or recoupments with respect to

any Assumed Liabilities) (collectively, the "**Litigation Claims**") shall be assigned, sold, and transferred to Buyer, free and clear of all Liens, claims, encumbrances, and interests, and Buyer shall have standing and authority to assert such rights, claims, and causes of action; underlined provided that the Buyer agrees (i) not to prosecute, or assert, any Litigation Claims that arise under Chapter 5 of the Bankruptcy Code other than as a defense or offset to an affirmative claim or cause of action brought against the Buyer based on any conduct, claim, action, or inaction arising prior to the Closing Date, provided further that nothing contained herein shall expand or create any third party rights or claims against the Buyer, and (ii) not to sell, transfer, or convey any such Litigation Claims to any other person or entity unless such person or entity agrees to be bound by this covenant not to sue.

12.     Pursuant to section 365 of the Bankruptcy Code, the Debtors are authorized to assume the Purchased Contracts and assign, transfer, and/or sell the Purchased Contracts to the Buyer.  The Buyer shall pay the Cure Amounts set forth on **Exhibit B** hereto promptly after the Closing of the Sale Transaction; *provided, however*, that the Buyer may direct the removal of any such contract or lease from the list of Purchased Contracts set forth in Schedule 1.1(b) of the Asset Purchase Agreement in accordance with the Asset Purchase Agreement, in which case such contract or lease shall not constitute a Purchased Contract and Buyer shall have no obligation to pay any Cure Amount with respect thereto.  Buyer may direct the removal of any Contract from the list of Purchased Contracts set forth in Schedule 1.1(b) of the Asset Purchase Agreement (i) prior to the Closing Date, for any reason, and (ii) after the Closing Date, if the Cure Amount for such Contract is subject to dispute as of the Closing and is determined by the Bankruptcy Court after the Closing to be greater than the amount set forth in Schedule 2.4(g) to the Asset Purchase Agreement.

13.     The Purchased Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Purchased Contract (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.  Pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Purchased Contracts after such assignment and sale to the Buyer.

14.     All defaults or other obligations of the Debtors under each Purchased Contract arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured and any pecuniary loss arising therefrom deemed compensated, upon payment of the Cure Amount with respect thereto, if any, and the Buyer shall have no liability or obligation arising or accruing in respect of the Purchased Contracts on or prior to the Closing.  The non-debtor parties to the Purchased Contracts are barred from asserting against the Debtors, the Buyer, and their respective successors and assigns, any default or unpaid obligation allegedly arising or accruing before the Closing, any pecuniary loss resulting from such default, or any other obligation under the Purchased Contracts arising or incurred prior to the Closing, other than the Cure Amounts.  Any provisions in any Purchased Contract that prohibit or condition the assignment of such Purchased Contract or allow the non-debtor party to such Purchased Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Purchased Contract, shall constitute unenforceable anti-assignment provisions that are void and of no force and effect.  Any portion of any Purchased Contract that purports to permit a landlord thereunder to cancel the remaining term of

such Purchased Contract if the Debtors discontinue their use or operation of the leased premises is void and of no force and effect, and shall not be enforceable against the Buyer, its assignees, and any sublessees; and the landlords under any such Purchased Contract shall not have the right to cancel or otherwise modify such Purchased Contract or increase the rent, assert any claim, or impose any penalty by reason of such discontinuation, the Debtors' cessation of operations, the assignment of such Purchased Contract to the Buyer, or the interruption of business activities at any of the leased premises.

15.     To the extent a counterparty to a Purchased Contract failed to timely object to a Cure Amount, such Cure Amount shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Amount at any time, and such Cure Amount, when paid, shall completely revive any Purchased Contract to which it relates.

16.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions or of the right of the Debtors or the Buyer, as the case may be, to enforce every term and condition of the Purchased Contracts.  The validity of the assumption, assignment, and sale of the Purchased Contracts to the Buyer shall not be affected by any existing dispute between any of the Debtors and any non-debtor party to such Purchased Contract other than with respect to the allowance and payment of any Cure Amount as provided in this Sale Order and in the Asset Purchase Agreement.  Any party that may have had the right to consent to the assignment of any Purchased Contract is deemed to have consented for the purposes of section 365(e)(2)(A)(ii) of the Bankruptcy Code.

17.     There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Buyer or the Debtors as a result of the assumption, assignment, transfer, and/or sale of the Purchased Contracts.  The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Purchased Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Buyer's rights to enforce every term and condition of the Purchased Contracts.

18.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all non-Debtor parties to the Purchased Contracts are forever barred and permanently enjoined from raising or asserting against the Debtors or the Buyer any assignment fee, default, breach, or claim or pecuniary loss arising under or related to the Purchased Contracts existing as of the Petition Date or any assignment fee or condition to assignment arising by reason of the Closing other than with respect to the allowance and payment of any Cure Amount as provided in this Sale Order and in the Asset Purchase Agreement.

19.     The Buyer is hereby authorized in connection with the consummation of the Sale Transaction to allocate the Purchased Assets and the Purchased Contracts among its affiliates, designees, assignees, or successors in a manner as it, in its sole discretion, deems appropriate and to assign, sublease, sublicense, transfer, or otherwise dispose of any of the Purchased Assets or the rights under any Purchased Contract to its affiliates, designees, assignees, or successors with all of the rights and protections accorded under this Sale Order and the Asset Purchase Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by the Buyer to effectuate any of the foregoing.

20.     The consideration provided by the Buyer for the Purchased Assets under the Asset Purchase Agreement, including the portion of the consideration that consists of the assumption of

the Assumed Liabilities, is fair and reasonable and constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia.

21.    The Asset Purchase Agreement and Sale Transaction shall not be avoidable under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) in respect of the Asset Purchase Agreement or the Sale Transaction.

22.    The Asset Purchase Agreement and the Sale Transaction are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Asset Purchase Agreement and the Sale Transaction shall not affect the validity of the sale of the Purchased Assets to the Buyer, unless this Sale Order is duly stayed pending such appeal.  The Buyer is a good faith purchaser of the Purchased Assets and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code. The Debtors and the Buyer will be acting in good faith if they proceed to consummate the Sale Transaction at any time after the entry of this Sale Order.

23.    The releases set forth in Section 12.12 of the Asset Purchase Agreement are incorporated as if set forth in full herein and are hereby approved and shall be, and hereby are, effective and binding, subject to the respective terms thereof, on all persons and entities to the extent set forth therein, and no person or entity shall possess any right or standing to assert any matters described by Section 12.12 of the Asset Purchase Agreement after the Closing Date.

24.     Pursuant to the requirements set forth in Section 8.10 of the Asset Purchase Agreement and promptly after the Closing, the Debtors shall change their names and the caption of the Bankruptcy Cases to names reasonably satisfactory to the Buyer which do not include the words "Special Event Holding", "Event Rentals", "Events", "Classic", "Party Rentals", and any derivation thereof or any other trade name, trade mark, corporate name, service mark, or the domain names conveyed to the Buyer in the Asset Purchase Agreement, either alone or in combination with other words, graphics, or designs.  The Clerk of the Court is directed to make a docket entry in these Bankruptcy Cases as may be necessary and appropriate to implement the terms of this paragraph.

25.     All persons and entities that are in possession of some or all of the Purchased Assets as of or after the Closing are hereby ordered to surrender possession of such Purchased Assets to the Buyer as of the Closing or at such time thereafter as the Buyer may request.  The Debtors agree to exercise commercially reasonable efforts to assist the Buyer in assuring that all persons or entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets in which the Debtors hold an interest will surrender possession of the Purchased Assets to either (i) the Debtors before the Closing Date, or (ii) the Buyer on or after the Closing Date.

26.     This Sale Order is and shall be binding on and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments

that reflect that the Buyer is the assignee and owner of the Purchased Assets free and clear of all Liens, claims, encumbrances, and interests, other than Liens specifically assumed by Buyer under the Asset Purchase Agreement and Permitted Exceptions (all such entities being referred to as "Recording Officers").  All Recording Officers are authorized and specifically directed to strike recorded encumbrances, claims, Liens, and other interests against the Purchased Assets recorded prior to the date of this Sale Order, other than Liens specifically assumed by Buyer under the Asset Purchase Agreement and Permitted Exceptions.  A certified copy of this Sale Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, claims, Liens, and other interests against the Purchased Assets recorded prior to the date of this Sale Order, other than Liens specifically assumed by Buyer under the Asset Purchase Agreement and Permitted Exceptions.

27.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Asset Purchase Agreement and the Sale Transaction.

28.     To the greatest extent available under applicable law and to the extent provided for under the Asset Purchase Agreement, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and, to the greatest extent available under applicable law and to the extent provided for under the Asset Purchase Agreement, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing Date. To the extent any license or permit necessary for the operation of the Business at those locations assumed by the Debtors and assigned to the Buyer is not an assumable and assignable executory contract, Buyer shall make

reasonable efforts to apply for and obtain any such license or permit promptly after the Closing

Date, and Debtors shall cooperate reasonably with Buyer in those efforts.  All existing licenses

or permits applicable to the Business shall remain in place for Buyer's benefit until either new

licenses and permits are obtained or existing licenses and permits are transferred in accordance

with applicable administrative procedures.

29.     The acts or actions that the Debtors are required to take after the Closing Date

under the Asset Purchase Agreement as set forth therein or this Sale Order in respect of the

Purchased Assets, the Assumed Liabilities and the Designation Rights Contracts shall be taken at

the Buyer's expense, in each case solely to the extent set forth in the Asset Purchase Agreement

(and subject to all related terms and conditions of the Asset Purchase Agreement).

30.     The terms and provisions of the Asset Purchase Agreement, the ancillary

agreements, and this Sale Order shall be binding in all respects on, and shall inure to the benefit

of, the Debtors, the Buyer, and their respective affiliates, successors and assigns, and any other

affected third parties, notwithstanding the dismissal of any of the Debtors' cases or any

subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code or

conversion of the Debtors' cases to cases under chapter 7, as to which trustee(s) such terms and

provisions likewise shall be binding and not subject to rejection or avoidance.  The Asset

Purchase Agreement, the Sale Transaction, and this Sale Order shall be enforceable against and

binding on, and shall not be subject to rejection or avoidance by, any chapter 7 or chapter 11

trustee appointed in the Bankruptcy Cases.

31.     Nothing contained in any chapter 11 plan confirmed in the Debtors' cases, in any

order confirming any such plan, or in any other order of any type or kind entered in these

Bankruptcy Cases (including, without limitation, any order entered after any conversion of any

or all of these Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code) or in any related proceeding shall alter, conflict with, or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.

32.    The Asset Purchase Agreement and any related agreements, documents, or other instruments may be amended by the parties in a writing signed by such parties without further order of the Court, provided that (i) any such amendment does not have a material adverse effect on the Debtors or the Debtors' estates and (ii) notice of any such amendment shall be provided to the Committee.

33.    The failure to include specifically any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be and is authorized and approved in its entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order prior to Closing.

34.    To the extent of any inconsistency between the provisions of this Sale Order, the Asset Purchase Agreement, and any documents executed in connection therewith, the provisions contained in the Sale Order, the Asset Purchase Agreement, and any documents executed in connection therewith shall govern, in that order.

35.    The provisions of this Sale Order authorizing the sale and assignment of the Purchased Assets free and clear of all Liens, claims, encumbrances, and interests, other than Liens specifically assumed by the Buyer under the Asset Purchase Agreement and Permitted Exceptions, shall be self-executing, and notwithstanding the failure of the Debtors, the Buyer, or any other party to execute, file, or obtain releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, or implement the provisions hereof, all Liens,

claims, encumbrances, and other interests on or against such Purchased Assets (other than Liens specifically assumed by the Buyer under the Asset Purchase Agreement and Permitted Exceptions), if any, shall be deemed released, discharged, and terminated in all respects.  To the extent the Buyer deems it necessary or appropriate, if, upon consummation of the transactions set forth in the Asset Purchase Agreement, any Person or entity which has filed statements or other documents or agreements evidencing Liens, claims, encumbrances, or other interests on or in all or any portion of the Purchased Assets (other than Liens specifically assumed by the Buyer under the Asset Purchase Agreement and Permitted Exceptions) shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all such Liens, claims, encumbrances, or other interests, the Buyer is hereby authorized (but not required) to execute and file such statements, instruments, releases, and other documents on behalf of such Person or entity with respect to the Purchased Assets.

36.     From time to time, as and when requested by any Party, each Party to the Asset Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other acts or actions as such other party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such acts or actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Buyer its right, title, and interest in and to all the Purchased Assets.

37.     Subject to all of the applicable terms and conditions set forth in the Asset Purchase Agreement:

(a)     During the Designation Rights Period, the Debtors shall (i) not reject any Contract unless such Contract is expressly designated by Buyer in writing as an Excluded Contract or unless otherwise agreed to in writing by Buyer and (ii) hold all Designation Rights Contracts in abeyance pending designation for assignment or exclusion by Buyer in accordance with Section 2.7(e) of the Asset Purchase Agreement.   During the Designation Rights Period, Buyer shall have access to and use of the real property, personal property, and all other rights, benefits, and services subject of the Designation Rights Contracts from and after the Closing, and such use, other rights, and benefits will be subject to and consistent with the Sellers' obligations, if any, to third parties with respect to such Designation Rights Contracts; and Buyer (and, if necessary and at Buyer's expense, Sellers) will pay and perform such obligations as required under such Designation Rights Contracts arising from and after the Closing Date (provided that Sellers shall not be required to, and shall not, pay any Cure Amounts in respect of any such Designation Rights Contracts except as required by Section 2.7(e)(ii) of the Asset Purchase Agreement).

(b)     As to each Designation Rights Contract, within three (3) business days after receiving further written notice(s) (each, a "Designation Notice") from Buyer during the Designation Rights Period requesting assumption, assignment, transfer, and/or sale of any Designation Rights Contract to Buyer, the Debtors shall (at Buyer's expense) file with the Bankruptcy Court and serve on (i) each non-debtor party to such Contract, (ii) counsel to the Buyer and the Agent, and (iii) counsel to the Committee (collectively, the "Designation Notice Parties"), a notice (a "Counterparty Notice") substantially in the form attached hereto as **Exhibit C** of the assumption and assignment of such Designation

Rights Contract to Buyer pursuant to sections 363 and 365 of the Bankruptcy Code and the terms of this Sale Order.  Each Counterparty Notice shall (1) identify the relevant Designation Rights Contract(s) specified by Buyer; (2) inform the counterparty of the proposed assumption, assignment, transfer, and/or sale; and (3) specify the Cure Amounts applicable to such Contract(s).

(c)        Any objection to the assumption, assignment, transfer, and/or sale of Contract(s) specified in a Counterparty Notice and/or to the Cure Amount specified therein (a "Counterparty Objection") must be filed with the Bankruptcy Court and served on the Designation Notice Parties so as to be received no later than fourteen (14) calendar days after the date on which the Debtors served the Counterparty Notice.  All necessary authority for the assumption, assignment, transfer, and/or sale, including a finding that the Debtors and the Buyer have provided "adequate assurance of future performance" as and to the extent required by section 365 of the Bankruptcy Code, is provided by this Sale Order.  Failure to file and serve a Counterparty Objection in accordance with this Paragraph 39(c) (x) will forever bar the non-debtor counterparty from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to the subject Contract, and the Debtors shall be entitled to rely solely upon the Cure Amount specified in the Counterparty Notice, and (y) will mean that the non-debtor counterparty is deemed to have consented to the assumption, assignment, transfer, and/or sale of such Contract and will be forever barred and estopped from asserting or claiming against the Debtors or the Buyer (or any other assignee of the relevant Contract) that any additional amounts are due or defaults exist, or conditions to assumption, assignment, transfer, and/or sale must be satisfied, under such Contract.

(d)      If a Counterparty Objection challenges the Cure Amount specified in a Counterparty Notice, such objection must set forth the cure amount being claimed by the objecting party (the "Claimed Cure Amount") with appropriate documentation in support thereof.  Upon receipt of a Counterparty Objection, subject to the Buyer's rights under the Agreement, the Buyer (on behalf of the Debtors' estates) may hold an amount equal to the Claimed Cure Amount in reserve pending further order of the Court or agreement between the Buyer and the objecting party, and the Buyer shall have the right to litigate any dispute about the Claimed Cure Amount on behalf of the Debtors' estates.  So long as the Buyer holds the Claimed Cure Amount in reserve, subject to the Buyer's rights under the Agreement, the Debtors may assume, assign, transfer, and/or sell the Contract that is the subject of an objection without further delay.

(e)      In the event that a Counterparty Objection is filed, the Debtors will seek (at Buyer's expense) to schedule an expedited hearing before the Bankruptcy Court to resolve such objection.

38.      To the extent applicable, the automatic stay pursuant to section 362(a) of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Debtors any notice under the Asset Purchase Agreement, and (b) to allow the Buyer to take any and all acts or actions in accordance with the Asset Purchase Agreement.

39.      Any amounts that become payable by the Debtors to the Buyer pursuant to the Asset Purchase Agreement (or any related agreements executed in connection therewith) (a) shall constitute allowed administrative expenses of the Debtors' estates under sections 503(b) and 507(a)(2) of the Bankruptcy Code, and (b) shall be paid by the Debtors in the time and manner

provided for in the Asset Purchase Agreement (and such related agreements) without further Court order.

40.    For the avoidance of doubt, all cash and other proceeds of the Sale Transaction shall be paid on the Closing Date in strict accordance with (i) Paragraphs 7(c), 12, and 19(b) of the DIP Order; and (ii) if and only if the Court approves that certain *Compromise and Settlement Agreement* dated as of April 11, 2014 (the "Settlement Agreement") and the Settlement Agreement becomes effective in accordance with Paragraph 9(b) thereof, Paragraph 4 of the Settlement Agreement.

41.    Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), or 7062, this Sale Order shall be effective and enforceable immediately and shall not be stayed.  Time is of the essence in closing the Sale Transaction and the Debtors and the Buyer intend to close the Sale Transaction as soon as practicable.  This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being dismissed as moot.

42.    This Court shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or related to this Sale Order, the Asset Purchase Agreement, or any related agreements, including, without limitation: (a) any actual or alleged breach or violation of this Sale Order, the Asset Purchase Agreement, or any related agreements; (b) the enforcement of any relief granted in this Sale Order; or (c) as otherwise set forth in the Asset Purchase Agreement.

Dated: _____, 2014
          Wilmington, Delaware

                                        _____
                                        THE HONORABLE PETER J. WALSH
                                        UNITED STATES BANKRUPTCY JUDGE