## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 14-10282 (PJW) |
| After-Party2, Inc. (f/k/a Event Rentals, Inc.), *et al.*,[1,2] | Jointly Administered |
| Debtors. | |

---

**FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR AFTER-PARTY2, INC. (F/K/A EVENT RENTALS, INC.) AND ITS AFFILIATED DEBTORS PROPOSED BY THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

---

Dated: July 14, 2014

**WHITE & CASE LLP**
John K. Cunningham
Craig H. Averch
Southeast Financial Center
200 South Biscayne Boulevard, 49th Floor
Miami, Florida 33131
(305) 371-2700

**FOX ROTHSCHILD LLP**
Jeffrey M. Schlerf (No. 3047)
John H. Strock (No. 4965)
L. John Bird (No. 5310)
Citizens Bank Center
919 North Market Street, Suite 300
Wilmington, Delaware 19801
(302) 654-7444

*Attorneys for the Debtor and Debtors in Possession*

**PACHULSKI STANG ZIEHL & JONES LLP**
Bradford J. Sandler (No. 4142)
John D. Fiero
Michael R. Seidl (No. 3889)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899
(302) 652-4100

*Attorneys for the Creditors' Committee*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: After-Party, Inc. (f/k/a Special Event Holding, Inc.) (5659); After-Party2, Inc. (f/k/a Event Rentals, Inc.) (9443); After-Party3, Inc. (f/k/a DUBO Acquisition Corporation) (8795); After-Party4, Inc. (f/k/a DBO Acquisition Corporation) (1923); LRAP5, LP (f/k/a Classic Party Rentals LP) (0583); After-Party6, Inc. (f/k/a Classic Party Rentals, Inc.) (3911); After-Party7, Inc. (f/k/a Classic Midwest, Inc.) (9934); After-Party8, Inc. (f/k/a Classic Northeast, Inc.) (9871); After-Party9, Inc. (f/k/a Classic Panache, Inc.) (1237); After-Party10, Inc. (f/k/a Classic/Prime, Inc.) (7149); After-Party11, Inc. (f/k/a Classic Southeast, Inc.) (0700); After-Party12, Inc. (f/k/a Unique Tabletop Rentals, Inc.) (4327); and After-Party13, Inc. (f/k/a Grand Events & Party Rentals, Inc.) (7940). The list of the Debtors' alternate names is located on the docket for Case No. 14-10282 [D.I. 3 as amended by D.I. 92] and is also available at http://www.kccllc.net/CPR.

[2] On June 10, 2014, the Bankruptcy Court entered an order approving a modification to the caption of the Debtors' cases. Pursuant to the Asset Purchase Agreement and the Sale Order, the Debtors were required to cease using the "Event Rentals" name after the closing of the Sale.

# TABLE OF CONTENTS

**Page**

ARTICLE  I. DEFINITIONS AND INTERPRETATION................................................................1

    1.1    Definitions...........................................................................................1

    1.2    Interpretation......................................................................................11

    1.3    Application of Definitions and Rules of Construction Contained in the Bankruptcy Code..............................................................................11

    1.4    Appendices and Plan Documents.........................................................12

ARTICLE  II. CLASSIFICATION OF  CLAIMS AND EQUITY INTERESTS........................12

    2.1    Administrative Claims and Tax Claims.................................................12

    2.2    Claims and Equity Interests. ...............................................................12

ARTICLE  III. IDENTIFICATION OF IMPAIRED  CLASSES OF CLAIMS AND EQUITY INTERESTS.......................................................................................13

    3.1    Unimpaired Classes of Claims and Equity Interests...............................13

    3.2    Impaired Classes of Claims and Equity Interests. .................................13

    3.3    Impairment Controversies...................................................................13

ARTICLE  IV. PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN ...........................................................13

    4.1    Claims and Equity Interests. ...............................................................13

ARTICLE  V. PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN...........................................................................15

    5.1    Unclassified Claims. ..........................................................................15

    5.2    Treatment of Administrative Claims. ....................................................15

    5.3    Treatment of Tax Claims. ....................................................................17

    5.4    Treatment of DIP Claims. ...................................................................17

    5.5    Treatment of Designation Rights Contract Claims.................................17

ARTICLE  VI. ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS ........................................................................................17

    6.1    Class Entitled to Vote. ........................................................................17

    6.2    Class Acceptance Requirement............................................................18

    6.3    Cramdown..........................................................................................18

ARTICLE  VII. MEANS FOR IMPLEMENTATION OF THE PLAN ......................................18

    7.1    Corporate Action................................................................................18

i

**Page**

| | | |
|---|---|---|
| 7.2 | Sources of Cash for Plan Distributions. | 18 |
| 7.3 | Cancellation of Instruments. | 18 |
| 7.4 | Secured Facility Settlement Agreement Releases. | 19 |
| 7.5 | Liquidity Settlement Agreement Releases. | 19 |
| 7.6 | Supplemental Releases. | 19 |
| 7.7 | Opt-Out Election | 20 |

ARTICLE  VIII. THE LIQUIDATION TRUST ............................................................20

| | | |
|---|---|---|
| 8.1 | Execution of the Liquidation Trust Agreement. | 20 |
| 8.2 | Purpose of the Liquidation Trust. | 21 |
| 8.3 | Vesting of Assets in the Liquidation Trust; Dissolution of the Debtors. | 21 |
| 8.4 | Governance of Liquidation Trust. | 21 |
| 8.5 | Role of the Liquidation Trustee. | 21 |
| 8.6 | Cash. | 22 |
| 8.7 | Compensation of the Liquidation Trustee. | 22 |
| 8.8 | Retention of Professionals by the Liquidation Trustee. | 22 |
| 8.9 | Noncertificated Liquidation Trust Interests. | 22 |
| 8.10 | Dissolution of the Liquidation Trust. | 22 |
| 8.11 | Securities Exempt. | 23 |

ARTICLE  IX. PLAN DISTRIBUTION PROVISIONS ..............................................23

| | | |
|---|---|---|
| 9.1 | Plan Distributions. | 23 |
| 9.2 | Timing of Plan Distributions. | 23 |
| 9.3 | Address for Delivery of Plan Distributions/Unclaimed Plan Distributions. | 23 |
| 9.4 | Time Bar to Cash Payments. | 24 |
| 9.5 | Provision of Tax Information. | 24 |
| 9.6 | Manner of Payment Under the Plan. | 24 |
| 9.7 | Fractional Plan Distributions. | 24 |
| 9.8 | De Minimis Distributions. | 24 |
| 9.9 | Unclaimed Property. | 24 |

ARTICLE  X. PROCEDURES FOR RESOLVING AND TREATING CONTESTED
CLAIMS .............................................................................................................25

| | | |
|---|---|---|
| 10.1 | Objection Deadline. | 25 |
| 10.2 | Prosecution of Contested Claims. | 25 |
| 10.3 | Claims Settlement. | 25 |
| 10.4 | Entitlement to Plan Distributions upon Allowance. | 25 |
| 10.5 | Estimation of Claims. | 26 |
| 10.6 | Designation of Claims as Buyer Pay Claims. | 26 |

ARTICLE  XI. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
AND THE OCCURRENCE OF THE EFFECTIVE DATE ...............................26

| | | |
|---|---|---|
| 11.1 | Conditions Precedent to Confirmation. | 26 |
| 11.2 | Conditions Precedent to the Occurrence of the Effective Date. | 27 |
| 11.3 | Waiver of Conditions. | 27 |

**Page**

11.4 Effect of Non-Occurrence of the Effective Date. ...................................................27

ARTICLE XII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................................................................................................28

12.1 Rejection of Executory Contracts and Unexpired Leases.....................................28
12.2 Claims Arising from Rejection, Expiration, or Termination. ...............................28

ARTICLE XIII. RETENTION OF JURISDICTION ....................................................29

ARTICLE XIV. MISCELLANEOUS PROVISIONS.....................................................31

14.1 Payment of Statutory Fees. ....................................................................................31
14.2 Satisfaction of Claims. ...........................................................................................31
14.3 Special Provisions Regarding Insured Claims........................................................31
14.4 Third Party Agreements; Subordination. ...............................................................31
14.5 Exculpation. ...........................................................................................................32
14.6 Notices. ..................................................................................................................32
14.7 Headings. ...............................................................................................................34
14.8 Governing Law. .....................................................................................................34
14.9 Exemption from Transfer Taxes. ...........................................................................34
14.10 Notice of Entry of Confirmation Order and Relevant Dates. ...............................34
14.11 Interest and Attorneys' Fees. .................................................................................35
14.12 Modification of the Plan. .......................................................................................35
14.13 Revocation of Plan.................................................................................................35
14.14 Setoff Rights. .........................................................................................................35
14.15 Compliance with Tax Requirements.......................................................................36
14.16 Rates.......................................................................................................................36
14.17 Dissolution of the Committee. ...............................................................................36
14.18 Injunctions..............................................................................................................36
14.19 Binding Effect.........................................................................................................37
14.20 Non-Interference ....................................................................................................37
14.21 Severability. ...........................................................................................................37
14.22 No Admissions........................................................................................................38

**SCHEDULES AND EXHIBITS**
Rejected Contracts and Unexpired Leases............................................................Schedule 1
Secured Facilities Settlement Agreement ..................................................................Exhibit A
Liquidity Settlement Agreement ................................................................................. Exhibit B
Wind-Down Letter Agreement.................................................................................... Exhibit C

After-Party2, Inc. (f/k/a Event Rentals, Inc.) and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases and the Official Committee of Unsecured Creditors hereby jointly propose the following chapter 11 plan:

## ARTICLE I.

## DEFINITIONS AND INTERPRETATION

**1.1**    **Definitions.**

The capitalized terms used herein shall have the respective meanings set forth below:

(1)    "Acquired Assets" means all of the Debtors' right, title, and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code, including Causes of Action, acquired by the Buyer in accordance with the Asset Purchase Agreement and the Sale Order.

(2)    "Administrative Claim" means a Claim incurred by the Debtors (or their Estates) on or after the Petition Date and before the Effective Date for a cost or expense of administration in the Chapter 11 Cases entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including Fee Claims.

(3)    "Administrative Tax Claim" means any Administrative Claim for any tax incurred by the Estates.

(4)    "Allowed," when used

(a)    with respect to any Claim that is not an Administrative Claim, means such Claim to the extent it is not a Contested Claim or a Disallowed Claim;

(b)    with respect to an Administrative Claim, means such Administrative Claim to the extent it has become fixed in amount and priority pursuant to the procedures set forth in Section 5.2(c) of this Plan; and

(c)    with respect to Equity Interests in the Debtors, means the Equity Interests in the Debtors as reflected in the stock transfer ledger or similar register of the Debtors as of the Effective Date.

(5)    "Asset Purchase Agreement" means the "Asset Purchase Agreement" as defined in the Sale Order.

(6)    "Assets" means all of the Debtors' right, title, and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code, which, for the avoidance of doubt, excludes the Acquired Assets.

(7)    "Available Proceeds" means the Unencumbered Settlement Cash, as defined in the Secured Facilities Settlement Agreement (i.e., $606,250 plus 75% of the Post-Sale Professional Fee Savings, as defined in and subject to the cap set forth in  the Secured Facilities

1

Settlement Agreement, if any), less any (i) Administrative Claim other than a Fee Claim, (ii) Priority Claim, or (iii) Non-Lender Secured Claims, in each case that is not a Buyer Pay Claim and cannot be satisfied from the Debtors' other Assets, provided, however, that none of the Unencumbered Settlement Cash shall be used to pay any Disputed Sales Tax Claims or Unasserted Tax Audit Claims without the prior written consent of the Committee, in its sole discretion, or as otherwise ordered by the Bankruptcy Court.

(8)     "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Cases.

(9)     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

(10)     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to 28 U.S.C. § 2075 and as applicable to the Chapter 11 Cases.

(11)     "Bar Date Notice" means the *Notice of Deadlines and Bar Dates for Filing Proofs of Claim Against the Debtors*, as approved by the Bar Date Order.

(12)     "Bar Date Order" means the *Order Pursuant to Bankruptcy Rules 2002 and 3003 and Local Rules 3003-1 (i) Establishing Bar Dates for Filing Certain Proofs of Claim; (ii) Establishing Ramifications for Failure to Comply Therewith; (iii) Approving Proof of Claim Form and Bar Date Notice; (iv) Approving Publication Notice and Publication Procedures* entered by the Bankruptcy Court on April 15, 2014.

(13)     "Business Day" means any day other than a Saturday, a Sunday, or any other day on which commercial banks are required or authorized to close for business in New York, New York.

(14)     "Buyer" means CP OpCo, LLC.

(15)     "Buyer Pay Claims" means all Claims against the Debtors assumed by the Buyer pursuant to the Asset Purchase Agreement.

(16)     "Cash" means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America.

(17)     "Causes of Action" means claims, counterclaims, liability, damages, debts, dues, sums of money however and whenever received, deposits, accounts, bonds, bills, covenants, contracts, controversies, demands, causes of action, and rights of every kind, nature, or character; whether absolute, inchoate, or contingent; whether determined or undetermined, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshaling of assets, or otherwise; whether for compensation, relief, protection, punishment, or any other remedy or result of any kind, character, or nature; whether based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any

breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice, or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal, or other governmental authority, agency, or official; and whether arising at law, in equity, or otherwise arising or existing on or before the Effective Date.

(18)    "Chapter 11 Cases" means the cases commenced in the Bankruptcy Court on the Petition Date under chapter 11 of the Bankruptcy Code with respect to the Debtors, which cases are jointly administered as *In re After-Party2, Inc. (f/k/a Event Rentals, Inc.)*, et al., Case No. 14-10282 (PJW).

(19)    "Claim" means (a) any right to payment, whether or not such right is known or unknown, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.  For the avoidance of doubt, "Claim" includes a right to payment or equitable relief that gives rise to a right to payment, that has or has not accrued under non-bankruptcy law, and arises from one or more acts or omissions of one or more of the Debtors if: (a) the act(s) or omission(s) occurred before or at the time of the Effective Date; and (b) the act(s) or omission(s) may be sufficient to establish liability when injuries or damages are manifested.

(20)    "Claim Objection Deadline" means the deadline for filing objections to Claims as set forth in Section 10.1 of the Plan.

(21)    "Claims Agent" means Kurtzman Carson Consultants LLC.

(22)    "Committee" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

(23)    "Committee Members" means the members of the Committee, solely in their capacities as such and not in their individual capacities.

(24)    "Committee Parties" means the Committee and the Committee Members, collectively.

(25)    "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

(26)    "Confirmation Hearing" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of the Plan.

(27)    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

(28)    "Contested" (a) when used with respect to a Claim, means such Claim (i) to the extent it is listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, and as to which no proof of claim has been filed; (ii) if it is listed in the Schedules as undisputed, liquidated, and not contingent, and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent that an objection has been filed on or before the Claim Objection Deadline as to such proof of claim, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or the Plan; or (iii) if it is not listed in the Schedules or was listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent that an objection has been filed on or before the Claim Objection Deadline as to such proof of claim, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court or the Plan; *provided*, that a Claim that is fixed in amount and priority pursuant to the Plan or by Final Order on or before the Effective Date shall not be a Contested Claim and the Prepetition Lender Claims shall not be Contested Claims; and (b) when used with respect to an Equity Interest, means such Equity Interest to the extent it is not reflected on the Debtors' stock transfer register as of the Effective Date.

(29)    "Counterparty Notice" means a "Counterparty Notice" as defined in the Sale Order.

(30)    "Debtors in Possession" means the Debtors, in their capacity as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

(31)    "Debtors" means After-Party, Inc. (f/k/a Special Event Holding, Inc.); After-Party2, Inc. (f/k/a Event Rentals, Inc.); After-Party3, Inc. (f/k/a DUBO Acquisition Corporation); After-Party4, Inc. (f/k/a DBO Acquisition Corporation); LRAP5, LP (f/k/a Classic Party Rentals LP); After-Party6, Inc. (f/k/a Classic Party Rentals, Inc.); After-Party7, Inc. (f/k/a Classic Midwest, Inc.); After-Party8, Inc. (f/k/a Classic Northeast, Inc.); After-Party9, Inc. (f/k/a Classic Panache, Inc.); After-Party10, Inc. (f/k/a Classic/Prime, Inc.); After-Party11, Inc. (f/k/a Classic Southeast, Inc.); After-Party12, Inc. (f/k/a Unique Tabletop Rentals, Inc.); and After-Party13, Inc. (f/k/a Grand Events & Party Rentals, Inc.).

(32)    "Designation Rights Contracts" means "Designation Rights Contracts" as defined in the Sale Order.

(33)    "Designation Rights Contract Claim" means any Claim relating to a Designation Rights Contract arising on or after the Petition Date *other than* a claim of the kind specified in section 502(g) of the Bankruptcy Code.

(34)    "DIP Agent" means Ableco Finance LLC, in its capacity as administrative agent under the DIP Facility.

(35)    "DIP Claims" means any Claim against the Debtors arising from or related to the DIP Facility.

(36)    "DIP Facility" means that certain Senior Secured and Superpriority Financing Agreement dated as of February 18, 2014 by and among Event Rentals, Inc., as borrower,

Special Event Holding, Inc. and the other guarantors from time to time party thereto, as guarantors, Ableco Finance LLC, as administrative agent, and the DIP Lenders, as lenders.

(37)   "DIP Lenders" means the financial institutions from time to time party to the DIP Facility.

(38)   "DIP Order" means the *Final Order (i) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code; (ii) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code; (iii) Granting Adequate Protection to the Prepetition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code; (iv) Granting Liens and Superpriority Claims; and (v) Modifying the Automatic Stay* entered by the Bankruptcy Court on April 1, 2014.

(39)   "Disallowed," when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order.

(40)   "Disclosure Statement" means the disclosure statement filed with respect to the Plan, as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules thereto.

(41)   "Disclosure Statement Order" means the order entered by the Bankruptcy Court (a) approving the Disclosure Statement as containing adequate information required under section 1125 of the Bankruptcy Code; and (b) authorizing the use of the Disclosure Statement for soliciting votes on the Plan.

(42)   "Disputed Sales Tax Claims" means "Disputed Sales Tax Claims" as defined in the Wind-Down Letter Agreement.

(43)   "Effective Date" means a Business Day selected by the Debtors that is no later than three (3) days after all of the conditions specified in Section 11.2 have been satisfied or waived (to the extent waivable).

(44)   "Equity Interest" means (i) any outstanding ownership interest in the Debtors, including interests evidenced by common or preferred stock, membership interests, options, stock appreciation rights, restricted stock, restricted stock units or their equivalents, or other rights to purchase or otherwise receive any ownership interest in the Debtors and any right to payment or compensation based upon any such interest, whether or not such interest is owned by the holder of such right to payment or compensation; and (ii) any Claim against the Debtors that is subordinated and has the same priority as common or preferred stock by operation of the Bankruptcy Code or any order entered by the Bankruptcy Court.

(45)   "Estates" means the estates of the Debtors created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

(46)   "Fee Application" means an application for allowance and payment of a Fee Claim (including Claims relating to making a "substantial contribution" in the Chapter 11 Cases pursuant to section 503(b) of the Bankruptcy Code).

(47)    "Fee Claim" means a Claim of a Professional Person.

(48)    "Final Order" means (a) an order or judgment of the Bankruptcy Court or any other court or adjudicative body as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or (b) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; *provided*, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rules 59 or 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024 may be filed with respect to such order.

(49)    "Glossary of Defined Terms" means this Section 1.1 of the Plan.

(50)    "Insider" means a Person that, with respect to the Debtors, would fall within the definition ascribed to such term in section 101(31) of the Bankruptcy Code.

(51)    "Insured Claim" means any Claim against a Debtor for which such Debtor is entitled to indemnification, reimbursement, contribution, or other payment under a policy of insurance wherein such Debtor is an insured or beneficiary of the coverage.

(52)    "Internal Revenue Code" means the Internal Revenue Code of 1986, as amended, and any applicable rulings, regulations (including temporary and proposed regulations) promulgated thereunder, judicial decisions, and notices, announcements and other releases of the United States Treasury Department or the IRS.

(53)    "IRS" means the United States Internal Revenue Service.

(54)    "Liquidation Trust" means the trust established pursuant to Article VIII of the Plan.

(55)    "Liquidation Trust Agreement" means the agreement governing the Liquidation Trust, dated as of the Effective Date, which shall be substantially in the form filed with the Bankruptcy Court as a Plan Document not later than five (5) business days prior to the hearing on the adequacy of the Disclosure Statement.

(56)    "Liquidation Trust Beneficiaries" means all individuals and entities entitled to Plan Distributions from the Liquidation Trust.

(57)    "Liquidation Trust Expenses" means all reasonable costs and expenses incurred on or after the Effective Date by the Liquidation Trustee associated with the implementation and administration of the Liquidation Trust and the Plan.

(58)    "Liquidation Trustee" means the trustee appointed pursuant to Article VIII of the Plan to manage the Liquidation Trust and any successor thereto, with the identity of the initial such trustee filed with the Bankruptcy Court as a Plan Document.

(59)    "Liquidity Parties" means S.A.C. Offshore Capital Funding, Ltd., S.A.C. Domestic Capital Funding, Ltd., JPM Mezzanine Capital, LLC, Quad-C Partners VII, L.P., Quad-C Principals LLC, Quad-C Management, Inc., and Quad-C VII Management Corp.

(60)    "Liquidity Notes" means those certain senior subordinated unsecured notes issued by the Debtors pursuant to (i) that certain Amended and Restated Liquidity Note Purchase Agreement dated as of March 31, 2011; and (ii) that certain 2011 Liquidity Note Purchase Agreement dated as of November 9, 2011.

(61)    "Liquidity Note Obligations" means the obligations of the Debtors arising in connection with or otherwise relating to the Liquidity Notes.

(62)    "Liquidity Claims" means any Claim against the Debtors arising from or relating to the Liquidity Note Obligations or the Management Obligations.

(63)    "Liquidity Settlement Agreement" means the settlement agreement, attached to the Plan as <u>Exhibit B</u>, approved pursuant to the *Order Approving Settlement Agreement and Mutual Releases by and Among (i) the Debtors; (ii) the Committee and Its Members; and (iii) the Liquidity Parties* entered by the Bankruptcy Court on April 29, 2014.

(64)    "Management Obligations" means the Debtors' obligations to Quad-C Management, Inc. or its affiliates (a) pursuant to that certain Management Agreement dated as of December 15, 2006; and (b) for other reimbursable expenses by the Debtors, including in respect of advances made on behalf of the Debtors for executive placement fees and employee salaries.

(65)    "Non-Lender Secured Claims" means any Claim against the Debtors (a) secured by Prepetition Prior Liens on any Assets, but only to the extent of the value of the holder's interest in the collateral that secures payment of the Claim; (b) that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) deemed or treated under the Plan as a Non-Lender Secured Claim; *provided that*, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as an Unsecured Claim unless, in any such case the class of which such Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a Non-Lender Secured Claim to the extent Allowed.

(66)    "Notice of Confirmation" means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed by the Claims Agent to holders of Claims and Equity Interests.

(67)    "Opt-Out Carve Out" means the Available Proceeds to which the holders of Allowed Opt-Out Unsecured Claims would have been entitled, in the aggregate, if such holders were not Opt-Out Parties.

(68)    "Opt-Out Party" means any holder of a Claim or Equity Interest that has opted out of the releases provided in Section 7.6 of the Plan by written election actually received by the Debtors' Solicitation Agent on or before the Voting Deadline.

(69)    "Opt-Out Unsecured Claim" means any Claim against the Debtors other than an Administrative Claim, a Priority Claim, a Tax Claim, a Fee Claim, a DIP Claim, a Prepetition Lender Claim, or a Non-Lender Secured Claim held by an Opt-Out Party.

(70)    "Person" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

(71)    "Petition Date" means the date of commencement of the Chapter 11 Cases.

(72)    "Plan" means this chapter 11 plan, either in its present form or as it may be amended, supplemented or otherwise modified from time to time, and the exhibits and schedules hereto, as the same may be in effect at the time such reference becomes operative.

(73)    "Plan Distribution" means the payment or distribution under the Plan of Cash, Assets, securities, or instruments on account of an Allowed Claim.  For the avoidance of doubt, any payment by the Buyer (i) on account of a Buyer Pay Claim; or (ii) on account of a Designation Rights Contract Claim does not constitute a Plan Distribution.

(74)    "Plan Distribution Date" means (i) with respect to a Priority Claim or a Non-Lender Secured Claim, (a) if such Claim is Allowed on the Effective Date, a date that is as soon as reasonably practicable after the Effective Date, or (b) if such Claim is not Allowed on the Effective Date, a date that is as soon as reasonably practicable after the date such Claim becomes Allowed; and (ii) with respect to any other Claim, such date(s) that the Liquidation Trustee determines in its reasonable discretion to make a Plan Distribution, *provided*, *however*, that the Liquidation Trustee shall comply with the requirements of the Wind-Down Letter Agreement, the Secured Facilities Settlement Agreement, and paragraphs 4(d) and 7(c) of the DIP Order in making Plan Distributions on account of Prepetition Lender Claims.  For the avoidance of doubt, the Liquidation Trustee shall not be required make any distributions on account of Prepetition Lender Claims, other than in respect of amounts payable under the DIP Order as a result of the final amounts payable to A&G Realty Partners being less than $500,000, so long as there remain Contested Claims or unsatisfied Allowed Claims against the Debtors that could be satisfied from the Priority Sales Tax Reserve or Prepetition Prior Secured Creditor Reserve in accordance with paragraph 3 of the Wind-Down Letter Agreement.

(75)    "Plan Documents" means the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.4, including the Liquidation Trust Agreement.

(76)    "Prepetition Agent" means Ableco Finance LLC, in its capacity as administrative agent under the Prepetition Credit Facility.

(77)    "Prepetition Credit Facility" means that certain Financing Agreement, dated as of December 20, 2006, as amended, restated, or otherwise modified from time to time prior to the

Petition Date, by and among Special Event Holding, Inc. and Event Rentals, Inc. (as successor by merger to Special Event Acquisition, Inc.), as borrowers, the guarantors from time to time party thereto, as guarantors, Ableco Finance LLC (as successor in interest to Dymas Funding Company, LLC), as administrative agent, and the Prepetition Lenders, as lenders.

(78)    "Prepetition Lender Claims" means any Claim against the Debtors arising from or relating to the Prepetition Credit Facility.

(79)    "Prepetition Lenders" means the financial institutions from time to time party to the Prepetition Credit Facility.

(80)    "Prepetition Lenders' Counsel Fee Sources" means (i) the $100,000 retainer paid to Klee, Tuchin, Bogdanoff & Stern LLP prior to (or contemporaneously with) the Sale Closing Date; (ii) the $50,000 retainer paid to Young Conaway Stargatt & Taylor, LLP prior to (or contemporaneous with) the Sale Closing Date; and (iii) $31,976 reserved for estimated unpaid amounts incurred by Wilkie Farr & Gallagher LLP through the Effective Date of the Plan.  For the avoidance of doubt, the amounts specified in each of clauses (i), (ii), and (iii) of the foregoing sentence shall in all events be available to pay only the professional firm specified in each of clauses (i), (ii), and (iii), respectively, in each case unless otherwise agreed by the applicable professional firm in its sole discretion.

(81)    "Prepetition Prior Liens" means "Prepetition Prior Liens" as defined in the DIP Order.

(82)    "Prepetition Prior Secured Creditor Reserve" means "Prepetition Prior Secured Creditor Reserve" as defined in the Wind-Down Letter Agreement.

(83)    "Priority Claim" means any Claim against the Debtors to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than Non-Lender Secured Claims, Administrative Claims, and Tax Claims.

(84)    "Priority Sales Tax Reserve" means "Priority Sales Tax Reserve" as defined in the Wind-Down Letter Agreement.

(85)    "Professional Person" means a Person retained or to be compensated for services rendered or costs incurred on or after the Petition Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

(86)    "Pro Rata Share" means the proportion that an Allowed Claim bears to the aggregate amount of all Claims in a particular class, *including* Contested Claims, but *excluding* Disallowed Claims, (a) as calculated by the Liquidation Trustee; or (b) as determined or estimated by the Bankruptcy Court.

(87)    "Rejection Notice" means a notice sent in respect of a Designation Rights Contract notifying the non-Debtor counterparty thereto that such Designation Rights Contract is rejected.

(88)    "Release Parties" means each of the Debtors, the Committee Parties, the Settling Prepetition Lenders, the Prepetition Agent, the Settling DIP Lenders, the DIP Agent, the Liquidity Parties, the holders of Claims against one or more of the Debtors, and the holders of Equity Interests in one or more of the Debtors, *provided*, *however*, that no Opt-Out Party shall be a Release Party.

(89)    "Sale" means the sale of substantially all of the Debtor's assets to the Buyer, approved by the Bankruptcy Court as set forth in the Sale Order.

(90)    "Sale Closing Date" means May 23, 2014, which was the closing date of the Sale.

(91)    "Sale Order" means the *Order: (1) Approving Asset Purchase Agreement Among the Debtors and the Buyer; (2) Approving Sale of Substantially all Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), 363(f), and 363(m); (3) Approving Assumption, Assignment, Transfer and/or Sale of Certain Executory Contracts and Unexpired Leases Free and Clear of All Liens, Claims, Encumbrances, and Other Interests Pursuant to Bankruptcy Code Sections 363 and 365; (4) Determining the Amounts Necessary to Cure Such Executory Contracts and Unexpired Leases; and (5) Granting Related Relief* entered by the Bankruptcy Court on April 29, 2014.

(92)    "Schedules" means, unless otherwise stated, the schedules of assets and liabilities and list of Equity Interests and the statements of financial affairs filed by the Debtors with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtors in Possession from time to time in accordance with Bankruptcy Rule 1009.

(93)    "Secured Facilities Settlement Agreement" means the settlement agreement, attached to the Plan (exclusive of its exhibit) as <u>Exhibit A</u>, approved pursuant to the *Order Approving Compromise and Settlement Agreement by and Among (i) the Debtors; (ii) the Committee; (iii) the Prepetition Agent and the Prepetition Lenders Party Thereto; (iv) the DIP Agent and the DIP Lenders Party Thereto; and (v) the Buyer* entered by the Bankruptcy Court on April 29, 2014.

(94)    "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a, *et seq.*

(95)    "Settling DIP Lenders" means the DIP Lenders party to the Secured Facilities Settlement Agreement.

(96)    "Settling Prepetition Lenders" means the Prepetition Lenders party to the Secured Facilities Settlement Agreement.

(97)    "Solicitation Agent" means the Person designated by order of the Bankruptcy Court to act as the Debtors' agent in soliciting the Plan and tabulating votes in connection with the Plan.

(98)    "Statutory Fees" means all fees and costs payable by the Debtors pursuant to 28 U.S.C. § 1930.

(99)    "Tax Claim" means a Claim against any of the Debtors that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.  For the avoidance of doubt, Tax Claims include Disputed Sales Tax Claims and Unasserted Tax Audit Claims.

(100)    "Unasserted Tax Audit Claims" means "Unasserted Tax Audit Claims" as defined in the Wind-Down Letter Agreement.

(101)    "Unclaimed Property" means all property described as such in Sections 9.3, 9.4, and 9.7 of the Plan.

(102)    "Unencumbered Settlement Cash" means "Unencumbered Settlement Cash" as defined in the Secured Facilities Settlement Agreement.

(103)    "Unsecured Claim" means any Claim against the Debtors other than an Administrative Claim, a Priority Claim, a Tax Claim, a Fee Claim, a DIP Claim, a Prepetition Lender Claim, an Opt-Out Unsecured Claim, a Liquidity Claim, a Buyer Pay Claim, or a Non-Lender Secured Claim.

(104)    "Voting Deadline" means the deadline established by an order of the Bankruptcy Court for voting to accept or reject the Plan.

(105)    "Wind-Down Letter Agreement" means the letter agreement, attached to the Plan as <u>Exhibit C</u>, approved pursuant to the *Agreed Order Approving Letter Agreement re Wind-Down Budget Amendments by and Among (i) the Debtors; (ii) The Prepetition Secured Agent; and (iii) the Consenting Prepetition Lenders* entered by the Bankruptcy Court on June 2, 2014.

## 1.2    Interpretation.

Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  Words denoting one gender shall include the other gender.  The Disclosure Statement may be referred to for purposes of interpretation to the extent any term or provision of the Plan is determined by the Bankruptcy Court to be ambiguous.

## 1.3    Application of Definitions and Rules of Construction Contained in the Bankruptcy Code.

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan, unless a different definition is given in the Glossary of Defined Terms.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan, including, without limitation, that the terms "includes" and "including" are not limiting.

**1.4**     **Appendices and Plan Documents.**

All appendices and exhibits to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein.  Except as otherwise provided herein, all Plan Documents shall be filed with the Bankruptcy Court not less than five (5) days prior to the Voting Deadline.  Holders of Claims and Equity Interests may obtain a copy of the Plan Documents, once filed, at www.deb.uscourts.gov and www.kccllc.net/cpr, or by a written request sent to:

> White & Case LLP
> Southeast Financial Center
> 200 South Biscayne Boulevard, 49th Floor
> Miami, FL 33131
> Attention:      Mark B. Fuhr
> Facsimile:      (305) 358-5744

### ARTICLE  II.

### CLASSIFICATION OF
### CLAIMS AND EQUITY INTERESTS

For the purposes of organization, voting, and all confirmation matters, except as otherwise provided herein, all Claims against and all Equity Interests in the Debtors shall be classified as set forth in this Article II.

**2.1**     **Administrative Claims and Tax Claims.**

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Claims shall not be classified under the Plan, and shall instead be treated separately as unclassified Claims on the terms set forth in Article V.

**2.2**     **Claims and Equity Interests.**

The classes of Claims against and the Equity Interests in the Debtors shall be classified under the Plan as follows:

Class 1 – Priority Claims.  Class 1 shall consist of all Priority Claims.

Class 2 – Non-Lender Secured Claims.  Class 2 shall consist of all Non-Lender Secured Claims.

Class 3 – Prepetition Lender Claims.  Class 3 shall consist of all Prepetition Lender Claims.

Class 4 – Unsecured Claims.  Class 4 shall consist of all Unsecured Claims.

Class 5 – Liquidity Claims & Opt-Out Unsecured Claims.  Class 5 shall consist of all Liquidity Claims and Opt-Out Unsecured Claims.

Class 6 – Equity Interests.  Class 6 shall consist of all Equity Interests.

## ARTICLE  III.

## IDENTIFICATION OF IMPAIRED
## CLASSES OF CLAIMS AND EQUITY INTERESTS

**3.1**     **Unimpaired Classes of Claims and Equity Interests.**

Class 1 – Priority Claims and Class 2 – Non-Lender Secured Claims are not impaired under the Plan.

**3.2**     **Impaired Classes of Claims and Equity Interests.**

Class 3 – Prepetition Lender Claims, Class 4 – Unsecured Claims, Class 5 – Liquidity Claims & Opt-Out Unsecured Claims, and Class 6 – Equity Interests are impaired under the Plan.

**3.3**     **Impairment Controversies.**

If a controversy arises as to whether any Claim or Equity Interest, or any class of Claims or Equity Interests, is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE  IV.

## PROVISIONS FOR TREATMENT OF CLAIMS
## AND EQUITY INTERESTS UNDER THE PLAN

**4.1**     **Claims and Equity Interests.**

The Claims against the Debtors and Equity Interests in the Debtors, *other than* Buyer Pay Claims, shall be treated under the Plan as follows:

(a)      Class 1 – Priority Claims.

Each holder of an Allowed Priority Claim shall be unimpaired under the Plan and, pursuant to section 1124 of the Bankruptcy Code, all legal, equitable, and contractual rights of each holder of an Allowed Priority Claim in respect of such Claim shall be fully reinstated and retained, except to the extent that a holder of an Allowed Priority Claim agrees to different treatment or as otherwise provided in section 1124(2)(A)-(D) of the Bankruptcy Code, and such holder of an Allowed Priority Claim shall be paid on the Plan Distribution Date in full and in Cash.

(b)      Class 2 – Non-Lender Secured Claims.

Each holder of an Allowed Non-Lender Secured Claim shall be unimpaired under the Plan and, pursuant to section 1124 of the Bankruptcy Code, all legal, equitable, and

contractual rights of each holder of an Allowed Non-Lender Secured Claim in respect of such Claim shall be fully reinstated and retained, except to the extent that a holder of an Allowed Non-Lender Secured Claim agrees to different treatment or as otherwise provided in section 1124(2)(A)-(D) of the Bankruptcy Code, and such holder of an Allowed Non-Lender Secured Claim shall be paid on the Plan Distribution Date in full and in Cash.

       (c)      Class 3 – Prepetition Lender Claims.

       (i)      Each holder of an Allowed Prepetition Lender Claim shall receive, on the Plan Distribution Date, its share (as determined by the Prepetition Agent in accordance with the terms of the Prepetition Credit Facility) of (a) any amount remaining in the Prepetition Prior Secured Creditor Reserve after application in accordance with paragraph 1 and paragraph 3 of the Wind-Down Letter Agreement; (b) any amount remaining in the Priority Sales Tax Reserve after application in accordance with paragraph 2 and paragraph 3 of the Wind-Down Letter Agreement; and (c) any amounts due to be remitted to the Prepetition Agent or the Prepetition Lenders pursuant to paragraph 4.c. of the Secured Facilities Settlement Agreement or paragraph 7(c) of the DIP Order (as has been amended from time to time).

       (ii)      Each holder of an Allowed Prepetition Lender Claim shall also receive, on the Plan Distribution Date, (to the extent not previously paid) its share (as determined by the Prepetition Agent in accordance with the terms of the Prepetition Credit Facility) of any amounts due to be remitted to the Prepetition Agent or the Prepetition Lenders pursuant to paragraph 4(d) of the DIP Order.  In the case of the fees and expenses of the Prepetition Agent and Prepetition Lenders (including, without limitation, the fees, costs and expenses of counsel and financial advisors for the Prepetition Agent and the Prepetition Lenders) such claims will be paid in Cash on the Effective Date for all fees and expenses incurred up to the Effective Date (to the extent not previously paid), subject to the Debtors' prior receipt of summary invoices and without the requirement to file a fee application with the Bankruptcy Court.  Notwithstanding anything to the contrary, the Debtors shall not have to pay any amounts pursuant to this subparagraph (c)(ii) in excess of the amounts that may be funded from the Prepetition Lenders' Counsel Fee Sources.

       (iii)      Notwithstanding anything else set forth in this Plan, Plan Distributions to which holders of Allowed Prepetition Lender Claims are entitled shall be paid by the Liquidation Trustee to the Prepetition Agent for distribution to holders of Allowed Prepetition Lender Claims in accordance with the Prepetition Credit Facility.  Pursuant to the DIP Order and the Secured Facilities Settlement Agreement, the Prepetition Lender Claims were finally Allowed and shall not be subject to any avoidance, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, disallowance, impairment, objection, or any challenges under any applicable law or regulation by any Person, and thus no Prepetition Lender Claims will be classified as Contested Claims or Disallowed Claims, or otherwise be subject to any objection, subordination, or estimation proceeding under or in connection with the Plan.

(d)      Class 4 – Unsecured Claims.

Each holder of an Allowed Unsecured Claim shall receive, on the Plan Distribution Date, its Pro Rata Share of the difference between (y) the Available Proceeds; and (z) the Opt-Out Carve Out.

(e)      Class 5 – Liquidity Claims & Opt-Out Unsecured Claims.

Each holder of an Allowed Liquidity Claim or Allowed Opt-Out Unsecured Claim shall receive, on the Plan Distribution Date, its Pro Rata Share of the Opt-Out Carve Out.

(f)      Class 6 – Equity Interests.

On the Effective Date, all Equity Interests in the Debtors shall be cancelled, and each holder of an Equity Interest in the Debtors shall neither receive nor retain any property under the Plan on account such interests.

Buyer Pay Claims are not subject to treatment under the Plan and shall be paid by the Buyer in accordance with the terms of the Asset Purchase Agreement and the Sale Order, and nothing in this Plan shall serve to expand, limit, or otherwise modify the Buyer's obligations in respect thereof.  **As of the Effective Date, the Debtors shall have no liability for any Buyer Pay Claims and all Buyer Pay Claims shall be channeled to the Buyer without further act or deed and satisfied as set forth in the Asset Purchase Agreement and Sale Order.  The sole recourse of the holder of a Buyer Pay Claim shall be against the Buyer, and such holder shall have no rights whatsoever at any time to assert such holder's Claim against any Debtor or the Liquidation Trust.  Without limiting the foregoing, on the Effective Date, all holders of Buyer Pay Claims shall be permanently and forever stayed, restrained, and enjoined from taking any actions against any Debtor or the Liquidation Trust for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Buyer Pay Claim.**

## ARTICLE  V.

## PROVISIONS FOR TREATMENT OF
## UNCLASSIFIED CLAIMS UNDER THE PLAN

**5.1      Unclassified Claims.**

Administrative Claims and Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively.  Such Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126, or 1129 of the Bankruptcy Code.

**5.2      Treatment of Administrative Claims.**

All Administrative Claims shall be treated as follows:

(a)    Time for Filing Administrative Claims.

The holder of an Administrative Claim, other than (i) a Fee Claim; (ii) a Claim for Statutory Fees; (iii) a Buyer Pay Claim incurred and payable in the ordinary course of business by the Debtors (and not past due); (iv) a Claim of the type referred to in section 503(b)(1)(D) of the Bankruptcy Code (which Claims described in this clause (iv) shall be paid, notwithstanding anything else set forth in the Plan, by the Buyer or the Debtors, as applicable, in the ordinary course pursuant to applicable non-bankruptcy law without the necessity of filing a request for payment thereof); or (v) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtors, the Committee, and the Office of the United States Trustee, notice of such Administrative Claim within forty-five (45) days after service of the Notice of Confirmation.  Such notice must include at a minimum (i) the name of the holder of the Claim; (ii) the amount of the Claim; and (iii) the basis of the Claim.  **Failure to timely and properly file and serve a request for payment of an Administrative Claim shall result in such Administrative Claim not being entitled to any distribution under the Plan.**

(b)    Time for Filing Fee Claims.

Each Professional Person who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date.  **Failure of a Professional Person to timely and properly file and serve a Fee Application shall result in such Professional Person's Fee Claim not being entitled to any distribution under the Plan.**

(c)    Allowance of Administrative Claims.

An Administrative Claim with respect to which notice has been properly filed and served pursuant to Section 5.2(a) shall become an Allowed Administrative Claim if no objection is filed on or before the later of (i) the date that is ninety (90) days after the Effective Date; and (ii) such date as may be (A) agreed to by the holder of such Administrative Claim, or (B) approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing.  If an objection is filed by the applicable objection deadline (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order.

A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 5.2(b) shall become an Allowed Administrative Claim only to the extent allowed by order of the Bankruptcy Court.

(d)    Payment of Allowed Administrative Claims.

On the Plan Distribution Date, each holder of an Allowed Administrative Claim that is not a Buyer Pay Claim shall receive (i) the amount of such holder's Allowed Administrative Claim in one Cash payment; or (ii) such other treatment as may be agreed upon in writing by the Liquidation Trustee and such holder; *provided*, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Claim.  Buyer Pay Claims shall be paid by the Buyer as, and to

the extent, set forth in the Asset Purchase Agreement and the Sale Order. Notwithstanding anything else set forth herein, an Administrative Claim representing a liability incurred in the ordinary course of business of the Debtors may be paid at the Buyer's election in the ordinary course of business at any time.

**5.3    Treatment of Tax Claims.**

Each holder of an Allowed Tax Claim that is not a Buyer Pay Claim will receive in full satisfaction of such Allowed Tax Claim (a) payments in Cash, in regular installments over a period ending not later than five (5) years after the Petition Date, of a total value, as of the Effective Date, equal to the Allowed amount of such Claim; (b) a lesser amount in one Cash payment as may be agreed upon in writing by the Liquidation Trustee and such holder; or (c) such other treatment as may be agreed upon in writing by such holder; *provided*, that such agreed upon treatment may not provide such holder with a return having a present value as of the Effective Date that is greater than the amount of such holder's Allowed Tax Claim or that is less favorable than the treatment provided to the most favored nonpriority Unsecured Claims under the Plan. In the event of a dispute regarding the foregoing election, such dispute will be resolved by the Bankruptcy Court. Allowed Tax Claims that are Buyer Pay Claims shall be paid by the Buyer as, and to the extent, set forth in the Asset Purchase Agreement and the Sale Order.

**5.4    Treatment of DIP Claims.**

In accordance with the DIP Order and the Sale Order, all DIP Claims against the Debtors were satisfied in full by the Buyer on the Sale Closing Date. Accordingly, holders of such DIP Claims shall not receive any Plan Distributions.

**5.5    Treatment of Designation Rights Contract Claims.**

All Designation Rights Contract Claims shall be the sole responsibility of and paid by the Buyer in the ordinary course of business and the Debtors shall have no liability therefor.

**ARTICLE  VI.**

**ACCEPTANCE OR REJECTION OF THE PLAN;
EFFECT OF REJECTION BY ONE OR MORE
CLASSES OF CLAIMS OR EQUITY INTERESTS**

**6.1    Class Entitled to Vote.**

Class 3 – Prepetition Lender Claims, Class 4 – Unsecured Claims, and Class 5 – Liquidity Claims & Opt-Out Claims shall be entitled to vote on the Plan. Class 1 – Priority Claims and Class 2 – Non-Lender Secured Claims shall be paid in full. Accordingly, Class 1 – Priority Claims and Class 2 – Non-Lender Secured Claims are deemed to accept the Plan. Class 6 – Equity Interests shall receive no recovery. Accordingly, Class 6 – Equity Interests is deemed to reject the Plan.

**6.2**     **Class Acceptance Requirement.**

A class of Claims shall have accepted the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the holders of Allowed Claims in such class that have voted on the Plan vote to accept the Plan.

**6.3**     **Cramdown.**

If all applicable requirements for confirmation of the Plan are met as set forth in section 1129(a)(1) through (16) of the Bankruptcy Code, *except* subsection (8) thereof, then the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any Class that has rejected or is deemed to reject the Plan.

**ARTICLE  VII.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**7.1**     **Corporate Action.**

The entry of the Confirmation Order shall constitute authorization for the Debtors and the Liquidation Trustee, as applicable, to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation, including (a) the incurrence of all obligations contemplated by the Plan and the making of Plan Distributions; and (b) the implementation of all settlements and compromises as set forth in or contemplated by the Plan.  On the Effective Date, the officers of the Debtors are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices, and certificates as are contemplated by the Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtors.

**7.2**     **Sources of Cash for Plan Distributions.**

All Cash necessary to make payments and Plan Distributions shall be obtained from the Debtors' existing Cash balances, which Cash balances are and shall remain subject to interests of the DIP Agent and the obligations of the Debtors to the extent set forth in the DIP Order, as modified by the Secured Facilities Settlement Agreement and the Wind-Down Letter Agreement.

**7.3**     **Cancellation of Instruments.**

All Equity Interests in the Debtors and any other note, bond, indenture, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date.  Notwithstanding the foregoing, nothing in the Plan shall cancel or otherwise operate to impair or diminish any rights under the DIP Facility, the

DIP Order, the Asset Purchase Agreement, the Sale Order, the Secured Facilities Settlement Agreement, the Liquidity Settlement Agreement, or the Wind-Down Letter Agreement.

**7.4    Secured Facility Settlement Agreement Releases.**

**(a)    On the Sale Closing Date, by operation of the Secured Facilities Settlement Agreement, the Committee Parties granted a release in favor of the Prepetition Agent, the Settling Prepetition Lenders, the DIP Agent, and the Settling DIP Lenders, and certain of each of their respective related Persons to the extent set forth in paragraph 8.a. of the Secured Facilities Settlement Agreement. The "Lender Release," as defined in the Secured Facilities Settlement Agreement, is fully binding and effective and is incorporated into this Plan by this reference as if fully set forth herein.**

**7.5    Liquidity Settlement Agreement Releases.**

**(a)    On the Sale Closing Date, by operation of the Liquidity Settlement Agreement, the Committee Parties and certain of their related Persons granted a release in favor of the Liquidity Parties and certain of their related Persons to the extent set forth in paragraph 2.a. of the Liquidity Settlement Agreement. Such release is fully binding and effective and is incorporated into this Plan by this reference as if fully set forth herein.**

**(b)    On the Sale Closing Date, by operation of the Liquidity Settlement Agreement, the Liquidity Parties and certain of their related Persons granted a release in favor of the Committee Parties, the Debtors, and certain of each of their respective related Persons to the extent set forth in paragraph 2.b. of the Liquidity Settlement Agreement. Such release is fully binding and effective and is incorporated into this Plan by this reference as if fully set forth herein.**

**(c)    On the Sale Closing Date, by operation of the Liquidity Settlement Agreement, the Debtors and certain of their related Persons granted a release in favor of the Committee Parties, the Liquidity Parties, and certain of each of their respective related Persons to the extent set forth in paragraph 2.c. of the Liquidity Settlement Agreement. Such release is fully binding and effective and is incorporated into this Plan by this reference as if fully set forth herein.**

**7.6    Supplemental Releases.**

**On the Effective Date, for good and valuable consideration, each of the Release Parties shall be deemed to have released (i) each of the other Release Parties; and (ii) each of the Release Parties' respective affiliates, employees, officers, directors, managers, members, representatives, agents, attorneys, accountants, investment bankers, bankruptcy and restructuring advisors, financial advisors, direct or indirect equity holders, successors, predecessors, and assigns, each in their capacities as such, from any and all Causes of Action relating to the Debtors or their businesses, including the Chapter 11 Cases, the Plan, the Sale, the operation of the Debtors, the Prepetition Financing Agreement, the DIP Financing Agreement, the Liquidity Notes, the Liquidity Claims, and any transactions contemplated thereby or any action or omission in connection therewith, *provided*, *however*, that nothing in this Section shall modify, affect, or impair (a) the rights of any Release**

Party to recover on account of a Claim against the Debtors in accordance with the terms of the Plan; (b) the releases and other provisions contained in the Secured Facilities Settlement Agreement, the Liquidity Settlement Agreement, the Asset Purchase Agreement, or the DIP Order; or (c) the rights of any Opt-Out Party; *provided, further*, that nothing in this Section shall be construed to release any party from willful misconduct, gross negligence, or fraud as determined by a Final Order.  With respect to the releases set forth herein, by not electing to become an Opt-Out Party, each Release Party is deemed to understand and have voluntarily waived any and all protections of section 1542 of the California Civil Code (and any other similar provision of law) to which such Release Party might otherwise have been entitled, which section reads as follows:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."**

**7.7**    <u>Opt-Out Election</u>

All holders of Unsecured Claims, other than the Committee Parties, are entitled to opt-out of the Supplemental Releases set forth in Section 7.6 of the Plan by (a) indicating on their properly-completed Class 4 ballot their intention to opt-out of the Supplemental Releases and (b) delivering that ballot to the Debtors' Solicitation Agent, as set forth on the ballot, so that it is actually received on or before the Voting Deadline.  For the avoidance of doubt, the election to opt-out shall result in (i) the Opt-Out Party's claim being placed in Class 5 where it will then receive the less favorable treatment prescribed for that class and (ii) the Opt-Out Party being removed from the Release Parties, and thus not benefiting from the Supplemental Releases set forth in Section 7.6 above.

## ARTICLE VIII.

## <u>THE LIQUIDATION TRUST</u>

**8.1**    <u>Execution of the Liquidation Trust Agreement.</u>

The Liquidation Trust Agreement, in a form reasonably acceptable to the Debtors and the Committee, shall be executed on or before the Effective Date, and all other necessary steps shall be taken to establish the Liquidation Trust and the beneficial interests therein, which shall be for the benefit of holders of all Allowed Claims.  A copy of the Liquidation Trust Agreement shall be filed with the Bankruptcy Court as a Plan Document and the terms of the Liquidation Trust Agreement are hereby incorporated by reference and made a part of the Plan.  This Article VIII sets forth certain of the rights, duties, and obligations of the Liquidation Trustee.  The Liquidation Trust Agreement will not be in any respect inconsistent with, or threaten, hinder, or prevent the implementation of, any terms of the DIP Facility, the DIP Order, the Asset Purchase Agreement, the Sale Order, the Secured Facilities Settlement Agreement, the Liquidity Settlement Agreement, or the Wind-Down Letter Agreement.

**8.2    Purpose of the Liquidation Trust.**

The Liquidation Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d) and as a "grantor trust" for federal income tax purposes, pursuant to sections 671 through 679 of the Internal Revenue Code, with no objective to continue or engage in the conduct of a trade or business.

**8.3    Vesting of Assets in the Liquidation Trust; Dissolution of the Debtors.**

On the Effective Date, the authority, power, and incumbency of the Debtors shall terminate, and vest in the Liquidation Trustee, and all Assets shall be deemed to have automatically been distributed to the Liquidation Trust Beneficiaries, who will immediately thereafter be deemed to have automatically transferred all such Assets to the Liquidation Trust, where the Liquidation Trustee shall be deemed the successor to the Debtors and the Committee with respect to the rights and duties contemplated by the Wind-Down Letter Agreement.  For the avoidance of doubt, such Assets are and shall remain subject to any and all interests of the Prepetition Agent and the Prepetition Lenders as provided by the DIP Order, as modified by the Secured Facilities Settlement Agreement and the Wind-Down Letter Agreement.

**8.4    Governance of Liquidation Trust.**

The Liquidation Trust shall be governed and administered by the Liquidation Trustee.

**8.5    Role of the Liquidation Trustee.**

(a)    In furtherance of and consistent with the purpose of the Liquidation Trust and the Plan, the Liquidation Trustee shall (i) be authorized to take all steps necessary to wind down the affairs of the Debtors; (ii) have the power and authority to hold, manage, sell, and distribute the assets of the Liquidation Trust to the holders of Allowed Claims; (iii) hold the assets of the Liquidation Trust for the benefit of the holders of Allowed Claims; (iv) have the power and authority to hold, manage, sell, and distribute Cash or non-Cash assets of the Liquidation Trust obtained through the exercise of its power and authority; (v) have the power and authority to object to Claims and otherwise reconcile all Claims against the Debtors; (vi) have the power and authority to perform such other functions as are provided in the Plan; and (vii) have the power and authority to administer the closure of the Chapter 11 Cases.  The Liquidation Trustee shall be responsible for all decisions and duties with respect to the Liquidation Trust and its assets.  In all circumstances, the Liquidation Trustee shall act in the best interests of all beneficiaries of the Liquidation Trust and in furtherance of the purpose of the Liquidation Trust.

(b)    Except as otherwise provided in this Section, the Liquidation Trustee, together with any and all of its officers, directors, employees, agents, and representatives, are exculpated by all Persons, including holders of Claims against and Equity Interests in the Debtors and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Liquidation Trustee by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Liquidation Trustee's willful

misconduct or gross negligence.  No Person shall have or pursue any Cause of Action (i) against the Liquidation Trustee or its officers, directors, employees, agents, and representatives for making Plan Distributions in accordance with the Plan; or (ii) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan.  Nothing contained in this Section shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court against the Liquidation Trustee to compel the making of Plan Distributions contemplated by the Plan on account of such holder's Allowed Claim.

**8.6**    **Cash.**

The Liquidation Trustee may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code; *provided*, *however*, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

**8.7**    **Compensation of the Liquidation Trustee.**

The Liquidation Trustee shall be entitled to reasonable compensation as provided in the Liquidation Trust Agreement.

**8.8**    **Retention of Professionals by the Liquidation Trustee.**

The Liquidation Trustee may retain and reasonably compensate counsel and other professionals to assist in its duties as Liquidation Trustee on such terms as the Liquidation Trustee deems appropriate, without Bankruptcy Court approval.  The Liquidation Trustee may retain any professional who represented parties in interest in the Chapter 11 Cases.

**8.9**    **Noncertificated Liquidation Trust Interests.**

The beneficial interests in the Liquidation Trust shall not be certificated, except as otherwise provided in the Liquidation Trust Agreement.

**8.10**    **Dissolution of the Liquidation Trust.**

The Liquidation Trustee and the Liquidation Trust shall be discharged and dissolved, respectively, at such time as (i) all assets of the Liquidation Trust have been liquidated; and (ii) all distributions required to be made by the Liquidation Trustee under the Plan have been made, but in no event shall the Liquidation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (and, in the case of any extension, within six (6) months prior to the end of such extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the assets of the Liquidation Trust.

**8.11    Securities Exempt.**

The issuance of any beneficial interests of the Liquidation Trust satisfies the requirements of section 1145 of the Bankruptcy Code and, therefore, such issuance is exempt from registration under the Securities Act of 1933, as amended, and any state or local law requiring registration.

## ARTICLE IX.

## PLAN DISTRIBUTION PROVISIONS

**9.1    Plan Distributions.**

The Liquidation Trustee shall make all Plan Distributions.   In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due.  For federal income tax purposes, *except* to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.  Except as otherwise provided herein, Plan Distributions shall be made to the holders of Allowed Claims as reflected in the registry of claims maintained by the Claims Agent on the Effective Date.  The Liquidation Trustee and its agents shall have no obligation to recognize any transfer of a Claim after the Effective Date.

**9.2    Timing of Plan Distributions.**

Each Plan Distribution shall be made on the relevant Plan Distribution Date therefor and shall be deemed to have been timely made if made on such date or within twenty (20) days thereafter; *provided, however,* that any Plan Distributions with respect to any Prepetition Lender Claim shall be made within the time periods required under the DIP Order, the Secured Facilities Settlement Agreement, or the Wind-Down Letter Agreement, as applicable.

**9.3    Address for Delivery of Plan Distributions/Unclaimed Plan Distributions.**

Subject to Bankruptcy Rule 9010 and except with respect to payments to be made to the Prepetition Agent for distribution to holders of Allowed Prepetition Lender Claims in accordance with the Prepetition Credit Facility, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth in the latest dated of the following documents: (a) the Schedules; (b) the proof of Claim filed by such holder; (c) any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e); and (d) any notice served by such holder giving details of a change of address.  If any Plan Distribution is returned to the Liquidation Trustee as undeliverable, no Plan Distributions shall be made to such holder unless the Liquidation Trustee is notified of such holder's then current address within ninety (90) days after such Plan Distribution was made.  After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution and any and all future Plan Distributions, which Plan Distributions shall constitute Unclaimed Property.

**9.4**    **Time Bar to Cash Payments.**

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for reissuance of any voided check shall be made directly to the Liquidation Trustee by the holder of the Allowed Claim to whom such check was originally issued.  Any claim in respect of such a voided check shall be made within ninety (90) days after the date of issuance of such check.  If no request is made as provided in the preceding sentence, any claims in respect of such voided check shall be discharged and forever barred, the holder of the Allowed Claim to whom such voided check was sent shall have forfeited its right to any further Plan Distributions, and all such Plan Distributions shall constitute Unclaimed Property.

**9.5**    **Provision of Tax Information**

If any holder is requested to provide a taxpayer identification number or to otherwise satisfy any tax withholding requirements with respect to a distribution and such holder fails to do so within three (3) months of the date of such request, such holder's distribution shall be deemed undeliverable.

**9.6**    **Manner of Payment Under the Plan.**

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.  Cash payments to foreign creditors may, in addition to the foregoing, be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**9.7**    **Fractional Plan Distributions.**

Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractions of dollars will be made.  Fractions of dollars shall be rounded to the nearest whole unit (with any amount equal to or less than one-half dollar to be rounded down).

**9.8**    **De Minimis Distributions.**

Notwithstanding anything contrary contained herein, no Plan Distribution of less than twenty-five dollars ($25.00) shall be made to the holder of any Claim unless a request therefor is made in writing to the Liquidation Trustee.  If no request is made as provided in the preceding sentence within ninety (90) days of the Effective Date, all such Plan Distributions shall constitute Unclaimed Property.

**9.9**    **Unclaimed Property.**

Unclaimed Property held by the Liquidation Trustee shall constitute Available Proceeds, free of any restrictions thereon, pending final Plan Distribution pursuant to the terms of the Plan.

**ARTICLE X.**

## PROCEDURES FOR RESOLVING
## AND TREATING CONTESTED CLAIMS

**10.1    Objection Deadline.**

As soon as practicable, but in no event later than one hundred and eighty (180) days after the Effective Date (subject to being extended by the order of the Bankruptcy Court upon motion of the Liquidation Trustee without notice or a hearing), objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made.  Without limiting the rights afforded parties in interest pursuant to section 502(a) of the Bankruptcy Code, the Liquidation Trustee shall be entitled to object to all Claims, the Buyer shall be entitled to object to all Claims that are Buyer Pay Claims, and the Prepetition Agent shall be entitled to object to all Claims that are not Buyer Pay Claims.

**10.2    Prosecution of Contested Claims.**

The Liquidation Trustee, the Buyer, and the Prepetition Agent may (i) prosecute any objection to a Claim filed prior to the Effective Date; and (ii) object to the allowance of Claims filed with the Bankruptcy Court on or after the Effective Date.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 10.3.  The Liquidation Trustee shall use reasonable best efforts to dispute all Tax Claims (including Disputed Sales Tax Claims and Unasserted Tax Audit Claims) and Non-Lender Secured Claims as to which a good faith basis for dispute exists.

**10.3    Claims Settlement.**

Except as otherwise provided in the Sale Order, and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, (i) only the Liquidation Trustee, with respect to Claims *other than* Buyer Pay Claims and Claims to be satisfied from the Priority Sales Tax Reserve or the Prepetition Prior Secured Creditor Reserve; and (ii) only the Buyer, with respect to Claims that are Buyer Pay Claims; shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court.

**10.4    Entitlement to Plan Distributions upon Allowance.**

Notwithstanding any other provision of the Plan, no payment shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim.  When a Claim, *other than* a Buyer Pay Claim, that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when), the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim, the same as though such Claim had been an Allowed Claim on the Effective Date.  When a Claim that is a Buyer Pay Claim but is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when), the holder of such Allowed Claim shall thereupon become entitled to receive payment on account of such claim in accordance with the terms of the Asset Purchase Agreement and the Sale Order.

**10.5    Estimation of Claims.**

      (i) The Liquidation Trustee, with respect to Claims *other than* Buyer Pay Claims; and (ii) the Buyer, with respect to Claims that are Buyer Pay Claims; may, at any time, request that the Bankruptcy Court estimate any Contested Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether such Contested Claim has previously been the subject of an objection or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, *including* during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Contested Claim, that estimated amount will constitute the Allowed amount of such Claim for all purposes under the Plan.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**10.6    Designation of Claims as Buyer Pay Claims.**

      The Liquidation Trustee may file a notice with the Bankruptcy Court designating a Claim as a Buyer Pay Claim and stating the basis for such designation.  Such notice shall be served on (i) the Buyer; and (ii) the holder of the Claim and no further service shall be required in respect of such notice.  If either the Buyer or the holder of the Claim does not object to such notice within twenty-one (21) days, such Claim shall be deemed a Buyer Pay Claim for all purposes.  If either the Buyer or the holder of the Claim objects to such notice, by filing an objection and statement of the basis for such objection within twenty-one (21) days and serving such objection on the Liquidation Trustee and the Buyer or the holder of the Claim, as applicable, such objection shall constitute an objection to the Claim and a hearing on the characterization of such Claim as a Buyer Pay Claim shall be scheduled for the next omnibus hearing date in the Chapter 11 Cases that is not less than fourteen (14) days from the date of service of the objection or such later date as agreed to by the Buyer, the Liquidation Trustee, and the holder of the Claim.  To the extent the Court, in the resolution of a Buyer Pay Claim dispute, determines the priority, amount or secured nature of the Claim subject to such dispute, such determination shall be final and binding on all parties for all purposes.  Following the determination of a Buyer Pay Claim dispute, either the Buyer or the Liquidation Trustee may file a further objection to the Claim on other grounds within the later of (y) thirty (30) days following such determination, and (z) the applicable Claim Objection Deadline.

**ARTICLE  XI.**

**CONDITIONS PRECEDENT TO
CONFIRMATION OF THE PLAN AND
THE OCCURRENCE OF THE EFFECTIVE DATE**

**11.1    Conditions Precedent to Confirmation.**

      The following are conditions precedent to confirmation of the Plan:

(a)      the Clerk of the Bankruptcy Court shall have entered an order or orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) authorizing the solicitation of votes with respect to the Plan; (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan; (iv) confirming and giving effect to the terms and provisions of the Plan; (vi) determining that all applicable tests, standards, and burdens in connection with the Plan have been duly satisfied and met by the Debtors and the Plan; (vii) approving the Plan Documents; and (viii) authorizing the Debtors to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfer of Assets contemplated by the Plan and the Plan Documents; and

(b)      the Confirmation Order, the Plan Documents, and the Plan are each in a form satisfactory to the Debtors, the Committee, and the Prepetition Agent.

## 11.2    Conditions Precedent to the Occurrence of the Effective Date.

The following are conditions precedent to the occurrence of the Effective Date:

(a)      the Confirmation Order shall have been entered by the Bankruptcy Court, be in full force and effect, and not be subject to any stay or injunction;

(b)      all necessary consents, authorizations, and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan, *including* satisfaction or waiver of all conditions to the obligations of the Debtors under the Plan and the Plan Documents.

## 11.3    Waiver of Conditions.

The Debtors and the Committee, together, may waive any one or more of the conditions set forth in Section 11.1 or Section 11.2 in writing without notice or order of the Bankruptcy Court and without notice to any other parties in interest; *provided*, *however*, that the condition set forth in Section 11.1(b) may not be waived by the Debtors or the Committee.

## 11.4    Effect of Non-Occurrence of the Effective Date.

If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) prejudice in any manner the rights of the Debtors, including any right to seek a further extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code; (b) constitute an admission, acknowledgement, offer, or undertaking by the Debtors; or (c) affect any rights of the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders under the DIP Facility, the DIP Order, the Asset Purchase Agreement, the Sale Order, the Secured Facilities Settlement Agreement, or the Wind-Down Letter Agreement.

# ARTICLE XII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**12.1    Rejection of Executory Contracts and Unexpired Leases.**

(a)    On the Effective Date, all executory contracts and unexpired leases of the Debtors identified on Schedule 1 shall be rejected pursuant to the provisions of section 365 of the Bankruptcy Code.

(b)    Each executory contract and unexpired lease that is not or was not (i) the subject of a separate motion to reject, assume, or assume and assign filed pursuant to section 365 of the Bankruptcy Code by the Debtors before the entry of the Confirmation Order; (ii) assumed or assumed and assigned by order of the Bankruptcy Court entered before the Effective Date and not subsequently rejected pursuant to an order of the Bankruptcy Court; (iii) a guaranty or similar agreement executed by a third party which guarantees repayment or performance of an obligation owed to the Debtors or to indemnify the Debtors; (vi) with third parties regarding preservation of the confidentiality of documents produced by the Debtors; or (vii) the subject of a Counterparty Notice filed on or before September 26, 2014, shall be deemed rejected on the earlier of (a) September 26, 2014; and (b) the date that the Debtors or the Buyer file a Rejection Notice with respect to such executory contract or unexpired lease.   The rejection of any executory contract or unexpired lease rejected postconfirmation shall constitute a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code as if such rejection was effected preconfirmation.

(c)    The Plan shall constitute a motion to reject such executory contracts and unexpired leases rejected or to be rejected pursuant to this Section 12.1, and the Debtors shall have no liability thereunder *except* as is specifically provided in the Plan.   Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interests of the Debtors and the Estates.

(d)    Notwithstanding the rejection of any of the Debtors' executory contracts under this Plan or by separate motion or notice, the Buyers or the Liquidation Trustee, as applicable, shall retain and be entitled to enforce any warranties provided to, or for the benefit of, the Debtors under applicable federal or state law.

**12.2    Claims Arising from Rejection, Expiration, or Termination.**

Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtors (a) in the case of an executory contract or unexpired lease rejected by the Debtors prior to the Confirmation Date, in accordance with the Bar Date Notice; (b) in the case of an executory contract or unexpired lease that (i)(A) was terminated or expired by its terms prior to the Confirmation Date, or (B) is rejected pursuant to Section 12.1(a), no later than thirty (30) days after the Confirmation Date;

and (c) in the case of an executory contract or unexpired lease that is rejected pursuant to Section 12.1(b), no later than thirty (30) days after the date that the rejection was effected.  Any such Claims for which a proof of claim is not filed and served by the deadlines set forth in the Bar Date Notice or this Section 12.2, as applicable, will be forever barred from assertion and shall not be enforceable against the Debtors, the Estates, or the Assets.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Unsecured Claims under the Plan subject to objection by the Liquidation Trustee.

## ARTICLE  XIII.

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code; (b) arising in or related to the Chapter 11 Cases or the Plan; or (c) that relates to the following:

(i)        to hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XII hereof for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases to which a Debtor is a party or with respect to which such Debtor may be liable, and to hear and determine any and all Claims and any related disputes (*including* the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination, or liquidation of any executory contract or unexpired lease);

(ii)        to determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, the Asset Purchase Agreement, or the Sale Order, may be instituted by the Liquidation Trustee or the Buyer after the Effective Date;

(iii)        to hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, including to hear and determine any objections to the classification of any Claim and to allow, disallow, or estimate any Contested Claim in whole or in part;

(iv)        to issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(v)        to consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(vi)        to hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(vii)    to hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan, the Plan Documents, or their interpretation, implementation, enforcement or consummation;

(viii)    to hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan, including the Liquidation Trust Agreement) or its interpretation, implementation, enforcement, or consummation;

(ix)    to the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of or against the Estate;

(x)    to determine such other matters that may be set forth in the Plan or the Confirmation Order, or that may arise in connection with the Plan or the Confirmation Order;

(xi)    to hear and determine matters concerning state, local, and federal taxes, fines, penalties or additions to taxes for which the Debtors may be liable in accordance with sections 346, 505, and 1146 of the Bankruptcy Code and the Sale Order;

(xii)    to hear and determine all controversies, suits, and disputes that may relate to, impact upon or arise in connection with any setoff and/or recoupment rights of the Debtors or any Person under the Plan;

(xiii)    to enter an order or final decree closing the Chapter 11 Cases;

(xiv)    to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation, or enforcement of the Plan or the Confirmation Order;

(xv)    to hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code;

(xvi)    to hear and determine any disputes regarding the DIP Order, the Secured Facilities Settlement Agreement, or the Wind-Down Letter Agreement; and

(xvii)    to hear and determine any dispute concerning whether a Claim is a Buyer Pay Claim.

# ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

**14.1    Payment of Statutory Fees.**

All Statutory Fees, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.

**14.2    Satisfaction of Claims.**

(a)    Subject to the occurrence of the Effective Date, as of the Effective Date, except as provided in the Plan, all Persons shall be precluded from asserting against the Estates, the Liquidation Trust, the Liquidation Trustee, or their respective successors or property, any other or further Claims, debts, setoffs, rights, Causes of Action, liabilities, or Equity Interests based upon any act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

(b)    No holder of a Claim against the Debtors may receive any payment from, or seek recourse or recovery against, any Assets that are to be distributed under the Plan, other than Assets required to be distributed to such holder under the Plan.

**14.3    Special Provisions Regarding Insured Claims.**

Plan Distributions to each holder of an allowed Insured Claim against the Debtors shall be made in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified; *except*, that there shall be deducted from any Plan Distribution on account of an Insured Claim, for purposes of calculating the Allowed amount of such Claim, the amount of any insurance proceeds actually received by such holder in respect of such Allowed Insured Claim.   Nothing in this Section 14.3 shall constitute a waiver of any Claim, right, or Cause of Action the Debtors or the Estates may hold against any Person, including any insurer.   Pursuant to section 524(e) of the Bankruptcy Code, nothing in the Plan shall release or discharge any insurer from any obligations to any Person under applicable law or any policy of insurance under which the Debtors are an insured or beneficiary or for purposes of any Insurance Recovery.

**14.4    Third Party Agreements; Subordination.**

The Plan Distributions to the various classes of Claims hereunder shall not affect the right of any Person to levy, garnish, attach, or employ any other legal process with respect to such Plan Distributions by reason of any claimed subordination rights or otherwise.   All such rights and any agreements relating thereto shall remain in full force and effect, *except* as otherwise compromised and settled pursuant to the Plan.

Plan Distributions shall be subject to and modified by any Final Order directing distributions other than as provided in the Plan.   The right of the Debtors or the Liquidation Trustee to seek subordination of any Claim (other than the Prepetition Lender Claims) or Equity Interest pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment

afforded any Claim or Equity Interest that becomes a subordinated Claim or subordinated Equity Interest at any time shall be modified to reflect such subordination. Unless the Confirmation Order provides otherwise, no Plan Distributions shall be made on account of a subordinated Claim or subordinated Equity Interest.

**14.5    Exculpation.**

**None of the Debtors, the Committee Parties, or any of their respective officers, directors, members, employees, agents, or successors and assigns will have or incur any liability to any Person for any act or omission in connection with, arising out of, or relating to the Chapter 11 Cases or the pursuit and consummation of the Sale, the pursuit of confirmation of the Plan, the consummation of the Plan, or the implementation or administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as finally determined by the Bankruptcy Court, and, in all respects shall be entitled to rely upon the advice of counsel and all information provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under the Plan.**

**14.6    Notices.**

Any notices, requests and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (which requirement may be satisfied by facsimile transmission of a writing), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> If to the Debtors:
>
>> Andrew Hinkelman, CRO
>> One Front Street
>> c/o FTI Consulting, Suite 1600
>> San Francisco, CA 94111
>
> with copies (which shall not constitute notice) to:
>
> White & Case LLP
> Attention: Craig H. Averch
> 633 West Fifth Street, Suite 1900
> Los Angeles, CA 90071
> Telephone:    (213) 620-7700
> Facsimile:    (213) 452-2329
>
> —and—
>
> Fox Rothschild LLP
> Attention: Jeffrey M. Schlerf, Esq.
> Citizens Bank Center

919 North Market Street, Suite 300
Wilmington, DE 19801
Telephone:     (302) 622-4212
Facsimile:     (302) 656-8920

If to the Committee:

Pachulski Stang Ziehl & Jones LLP
Attention: Bradford J. Sandler
919 North Market Street
Wilmington, DE 19801
Telephone:     (302) 778-6424
Facsimile:     (302) 652-4400

If to the Buyer:

CP OpCo, LLC
c/o Apollo Capital Management, L.P.
Attention: Jason Scheir
9 West 57th Street
New York, NY 10019
Telephone:     (212)
Facsimile:     (212) 882-0447

with a copy (which shall not constitute notice) to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
Attention: Jeffrey D. Saferstein, Esq. & Lauren Shumejda, Esq.
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone:     (212)
Facsimile:     (212) 497 -0347

If to the Prepetition Agent:

Ableco Finance LLC
Attention: Eric Miller
875 Third Avenue
New York, NY 10022
Facsimile:     (212) 284-7906

with a copy (which shall not constitute notice) to:

> Klee, Tuchin, Bogdanoff & Stern LLP
> Attention: Lee R. Bogdanoff & Maria Sountas-Argiropoulos
> 1999 Avenue of the Stars, 39th Floor
> Los Angeles, CA 90067
> Telephone:    (310)
> Facsimile:    (310) 407-9090

If to the Liquidation Trustee:

> Meta Advisors LLC
> c/o Kelly Drye & Warren LLP
> 101 Park Avenue
> New York, New York 10178

**14.7    Headings.**

The headings used in the Plan are inserted for convenience only, and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**14.8    Governing Law.**

Unless a rule of law or procedure is supplied by federal law (*including* the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents and instruments executed in connection with the Plan, *except* as otherwise expressly provided in such instruments, agreements, or documents.

**14.9    Exemption from Transfer Taxes.**

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.  Transfers made under the Plan include any transfer, sale or exchange of the Assets that is the subject of a motion or notice pursuant to section 363 of the Bankruptcy Code filed by the Debtors before the Effective Date regardless of the date the transaction is approved by the Court or the date such transfer, sale, or exchange closes.  To effectuate the terms of this Section 14.9, the Bankruptcy Court may enter any order necessary or appropriate to implement this provision of the Plan.

**14.10    Notice of Entry of Confirmation Order and Relevant Dates.**

Promptly upon entry of the Confirmation Order, the Debtors shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims and Equity Interests, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, including the deadline for filing notice of Administrative Claims, and the deadline for filing rejection damage Claims.

**14.11    Interest and Attorneys' Fees.**

Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order, or as otherwise required by the Bankruptcy Court or by applicable law.  No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, *except* as set forth in the Plan or the DIP Order or as ordered by the Bankruptcy Court.

**14.12    Modification of the Plan.**

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Debtors at any time before confirmation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  The Debtors and the Committee may modify the Plan at any time after confirmation and before substantial consummation, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Code, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.  Notwithstanding anything set forth in this Section 14.12, the Plan shall not be amended or modified in a manner that is adverse to the (i) Prepetition Lenders without the consent of the Prepetition Lenders or (ii) Liquidity Parties without the consent of the Liquidity Parties.

**14.13    Revocation of Plan.**

The Debtors and the Committee each reserve the right to revoke and withdraw the Plan and/or to adjourn the Confirmation Hearing prior to the occurrence of the Effective Date.  If the Debtors or the Committee revoke or withdraw the Plan, or if the Effective Date does not occur, then the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims against or Equity Interests in the Debtors or to prejudice in any manner the rights of the Debtors or any other Person in any other further proceedings involving the Debtors.

**14.14    Setoff Rights.**

In the event that the Debtors or the Liquidation Trustee, as applicable, have a Claim of any nature whatsoever against the holder of a Claim against the Debtors, then the Debtors or the Liquidation Trustee, as applicable, may, but is not required to, setoff against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) the Debtors' Claim against such holder, subject to the provisions of sections 553, 556, and 560 of the Bankruptcy Code.  Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that the Debtors or the Liquidation Trustee, as applicable, may have against the holder of any Claim.

**14.15    Compliance with Tax Requirements.**

In connection with the Plan, the Debtors and the Liquidation Trustee, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding, and other tax obligations, on account of such Plan Distribution. The Liquidation Trustee has the right, but not the obligation, to not make a Plan Distribution until such holder has made arrangements satisfactory to the Liquidation Trustee for payment of any such tax obligations.

**14.16    Rates.**

The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date. Where a Claim has been denominated in foreign currency on a proof of Claim, the Allowed amount of such Claim shall be calculated in legal tender of the United States based upon the conversion rate in place as of the Petition Date and in accordance with section 502(b) of the Bankruptcy Code.

**14.17    Dissolution of the Committee.**

Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to (a) applications for Fee Claims or reimbursement of expenses incurred as a member of the Committee and (b) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order or pending appeals of orders entered in the Chapter 11 Cases.

**14.18    Injunctions.**

**On the Effective Date and *except* as otherwise provided herein, all Persons who have been, are, or may be holders of Claims against or Equity Interests in the Debtors shall be permanently enjoined from taking any of the following actions: (i) against or affecting the Estates, the Liquidation Trustee, the Liquidation Trust, or any of their current or former respective members, directors, managers, officers, employees, agents, professionals, successors, and assigns or their respective assets and property with respect to such Claims or Equity Interests (except for actions brought to enforce any rights or obligations under the Plan, the Asset Purchase Agreement, the Sale Order, the DIP Order, the Secured Facilities Settlement Agreement, the Liquidity Settlement Agreement, and/or the Wind-Down Letter Agreement); or (ii) in respect of any of the Causes of Action released pursuant to the Plan:**

(a)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (*including* all suits, actions and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);

(b)    enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order;

(c)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and

(d)    asserting any setoff or right of subrogation of any kind; *provided*, that any defenses, offsets or counterclaims which the Debtors and the Liquidation Trustee may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 14.14.

## 14.19   Binding Effect.

The Plan shall be binding upon the Debtors, the Buyer, all holders of Claims against, and Equity Interests in the Debtors, and all other parties in interest and Persons and each of their respective successors and assigns.  To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

## 14.20   Non-Interference

The Plan is intended not to be in any respect inconsistent with, or to threaten, hinder, or prevent the implementation of, any terms of the DIP Facility, the DIP Order, the Asset Purchase Agreement, the Sale Order, the Secured Facilities Settlement Agreement, the Liquidity Settlement Agreement, or the Wind-Down Letter Agreement.  Accordingly, to the extent of any inconsistency or conflict between the terms of the Plan or the Liquidation Trust Agreement, on the one hand, and the terms of any of the DIP Facility, the DIP Order, the Asset Purchase Agreement, the Sale Order, the Secured Facilities Settlement Agreement, the Liquidity Settlement Agreement, or the Wind-Down Letter Agreement, on the other hand, the terms of the DIP Facility, the DIP Order, the Asset Purchase Agreement, the Sale Order, the Secured Facilities Agreement, the Liquidity Settlement Agreement, or the Wind-Down Letter Agreement, as applicable, shall govern and control.  Without limiting the generality of the foregoing, nothing in the Plan or the Liquidation Trust Agreement shall alter or diminish the residual rights, liens, and reporting requirements arising under paragraph 7(c) of the DIP Order.

## 14.21   Severability.

**IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR EQUITY INTEREST OR TRANSACTION, THE DEBTOR MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 14.12 SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR EQUITY INTEREST OR TRANSACTION.   SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.**

**14.22** <u>No Admissions.</u>

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.  UNTIL CONFIRMED, THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTORS AND DEBTORS IN POSSESSION IN THE CHAPTER 11 CASES.

Dated: July 14, 2014

Respectfully submitted,

**AFTER-PARTY, INC.**

By:  */s/ Andrew Hinkelman*
      Name: <u>Andrew Hinkelman</u>
      Title:  <u>Chief Restructuring Officer</u>

**AFTER-PARTY2, INC.**

By:  */s/ Andrew Hinkelman*
      Name: <u>Andrew Hinkelman</u>
      Title:  <u>Chief Restructuring Officer</u>

**AFTER-PARTY3, INC.**

By:  */s/ Andrew Hinkelman*
      Name: <u>Andrew Hinkelman</u>
      Title:  <u>Chief Restructuring Officer</u>

**AFTER-PARTY4, INC.**

By:  */s/ Andrew Hinkelman*
      Name: <u>Andrew Hinkelman</u>
      Title:  <u>Chief Restructuring Officer</u>

**LRAP5, LP.**

By:  */s/ Andrew Hinkelman*
      Name: <u>Andrew Hinkelman</u>
      Title:  <u>Chief Restructuring Officer</u>

**AFTER-PARTY6, INC.**

By:    */s/ Andrew Hinkelman*
         Name:  Andrew Hinkelman
         Title:   Chief Restructuring Officer

**AFTER-PARTY7, INC.**

By:    */s/ Andrew Hinkelman*
         Name:  Andrew Hinkelman
         Title:   Chief Restructuring Officer

**AFTER-PARTY8, INC.**

By:    */s/ Andrew Hinkelman*
         Name:  Andrew Hinkelman
         Title:   Chief Restructuring Officer

**AFTER-PARTY9, INC.**

By:    */s/ Andrew Hinkelman*
         Name:  Andrew Hinkelman
         Title:   Chief Restructuring Officer

**AFTER-PARTY10, INC.**

By:    */s/ Andrew Hinkelman*
         Name:  Andrew Hinkelman
         Title:   Chief Restructuring Officer

**AFTER-PARTY11, INC.**

By:     */s/ Andrew Hinkelman*
       Name: Andrew Hinkelman
       Title:   Chief Restructuring Officer

**AFTER-PARTY12, INC.**

By:     */s/ Andrew Hinkelman*
       Name: Andrew Hinkelman
       Title:   Chief Restructuring Officer

**AFTER-PARTY13, INC.**

By:     */s/ Andrew Hinkelman*
       Name: Andrew Hinkelman
       Title:   Chief Restructuring Officer

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AFTER-PARTY2, INC. (F/K/A EVENT RENTALS, INC.) AND ITS AFFILIATED DEBTORS**

By:     */s/ Kevin P. Sauntry*
       Name: Kevin P. Sauntry
       Title:   Co-Chair of the Committee

**SCHEDULE 1**

**REJECTED CONTRACTS AND UNEXPIRED LEASES**

LOSANGELES 1064983 (2K)

**Rejected Contracts and Unexpired Leases**[3]

**Vendor Contracts**

1.  Commercial Universal Savings Agreement, dated April 2, 2013, between Classic Party Rentals, Inc. and Best in the West Air Conditioning & Heating.

2.  Fast Solutions Agreement, dated August 17, 2012, between Fastenal Company or Fastenal Mexico S. de R.L. de C.V. and Classic Party Rentals, Inc.

3.  Cost-Plus Agreement, dated December 12, 2012, between Ferrellgas and Classic Party Rentals, Inc.

4.  Service Agreement, dated February 18, 2010, between Frazier Pest Control, Inc. and Classic Party Rentals, Inc.

5.  Service Agreement, dated April 1, 2013, between Ontario Refrigeration Service, Inc. and Classic Party Rentals, Inc.

6.  Shredding Service Agreement, dated April 27, 2011, between Cintas Corporation No. 2 dba Cintas Document Management and Classic Panache, Inc.

7.  Letter, dated April 15, 2005, between Classic Panache, Inc. and Smart Air Systems, Inc.

8.  Truly Commercial Service Agreement, dated January 11, 2012, between Truly Nolen Pest Control Termites and Classic Panache, Inc. dba Panache Events Specialists.

9.  Red Energy Savings Agreement, dated November 7, 2013, between CGM Services Inc. and Classic Panache, Inc.

10. Service Agreement, between Onyda Digital Solutions and Classic Panache, Inc. dba Panache Events Specialists.

11. Staples Center Suite License Agreement, dated July 24, 2012, between Classic/Prime, Inc. dba Classic Tents and Event Specialists and L.A. Arena Funding, LLC; as modified by Addendum to Suite License Agreement, dated September 20, 2012, between Classic/Prime, Inc. dba Classic Tents and Event Specialists and L.A. Arena Funding, LLC.

12. Global Logistics Network Services Agreement (Routing Option), dated July 29, 2011, between Event Rentals, Inc. and Descartes Systems (USA) LLC.

13. Global Logistics Network Services Agreement (Telematics Service), dated July 29, 2011, between Event Rentals, Inc. and Descartes Systems (USA) LLC.

---

[3] The inclusion of a contract, lease or other agreement on this Schedule 1 shall not constitute an admission by the Debtors as to the characterization of whether any such included contract, lease, or other agreement is, or is not, an executory contract or unexpired lease or whether any claimants under any such contract, lease or other agreement are time-barred from asserting Claims against the Debtors. The Debtors reserve all rights with respect to the characterization of any such agreements.

1

14. Professional Services Agreement, between Event Rentals, Inc. and Descartes Systems (USA) LLC; as modified by Statement of Work, dated July 29, 2011, between Event Rentals, Inc. and Descartes Systems (USA) LLC.

15. KMIR Billboard Advertising Campaign Proposal, dated October 18, 2013, between Classic Party Rentals, Inc. and KMIR-TV.

16. Temporary Staffing Service Agreement, dated March 21, 2011, between Classic Party Rentals, Inc. and Advantage Human Resourcing, Inc. dba Advantage Staffing.

17. Agreement, dated September 3, 2008, between Classic Party Rentals, Inc. and Terminix Commercial.

18. Acrux Staffing Contract for Staffing Services, dated April 24, 2013, between Classic Party Rentals, Inc. and Acrux Staffing.

19. Pest Elimination Services Agreement, dated January 1, 2007, between Ecolab Inc. and Classic Party Rentals, Inc.

20. Fast Solutions Agreement, dated May 9, 2013, between Fastenal Company and Classic Party Rentals LP dba Ducky Bob's Event Specialists.

21. Partnership Agreement, dated December 1, 2012, between CORT Event Furnishings and Classic Party Rentals LP dba Ducky Bob's Event Specialists.

22. Contract, dated November 22, 2013, between Siemens Water Technologies LLC and Classic Party Rentals LP dba Ducky Bob's Cannonball.

23. Pest Elimination Services Agreement, dated October 28, 2013, between Ecolab Pest Elimination and Classic Party Rentals LP dba Ducky Bob's.

24. Propane Supply Agreement & Equipment Lease, dated May 31, 2011, between AmeriGas Propane, L.P and/or AmeriGas Eagle Propane, L.P. dba AmeriGas and Classic Southeast, Inc. dba Capital Party Rentals, Inc.

25. Periodic Maintenance Agreement, dated October 1, 2013, between Winchester Equipment Co. and Classic Party Rentals, Inc.

26. Propane Price Quote, dated July 26, 2013, between Pacific States Petroleum, Inc. and Classic Party Rentals, Inc.

27. Pest Elimination Services Agreement, dated June 9, 2011, between Ecolab and Classic Party Rentals, Inc.

28. LP Gas Service and Equipment Rental Agreement, dated October 1, 2008, between Napa Valley Petroleum, Inc. and Classic Party Rentals, Inc.

29. Propane Price Quote, dated May 1, 2013, between Pacific States Petroleum, Inc. and Classic Party Rentals, Inc.

30. Scheduled Routine Maintenance Agreement, dated March 15, 2013, between Classic Party Rentals, Inc. and Western State Design Inc.

31. Service Agreement, dated July 28, 2011, between Classic Party Rentals, Inc. and Cintas Document Management.

32. Rental Agreement, dated August 2, 2011, between Classic Party Rentals, Inc. and Domestic Linen Supply Co. Inc. dba Domestic Uniform Rental.

33. Full Maintenance Agreement, dated May 1, 2011, between Classic Party Rentals, Inc. and Liberty Elevator Corporation.

34. Comprehensive Fixed Price Maintenance Contract, dated May 23, 2011, between Classic Party Rentals, Inc. and Raymond of New Jersey, LLC.

35. Collection Retailer Agreement, dated March 11, 2013, between Classic Party Rentals, Inc. and Zak Events, LLC.

36. Pest Control Service Agreement, dated August 20, 2012, between Classic Party Rentals, Inc. and Terminix Commercial.

37. Client Automatic Service Agreement, dated April 11, 2012, between Shred-it and Classic Party Rentals, Inc.

38. Agreement to Provide Staffing Services, dated October 3, 2013, between Classic Party Rentals LP dba Ducky Bob's Event Specialists and PDQ Temporaries, Inc.

39. Commercial Service Agreement for Non-Hazardous Wastes, dated June 3, 2008, between Classic/Prime, Inc. dba Classic Tents and Waste Management.

**Employment Agreements**

1. Letter regarding Retention Agreement, dated September 22, 2011, between Classic Party Rentals, Inc. and Matt Wiltshire.

2. iPad Subsidy Agreement, dated October 18, 2012, between Classic Party Rentals, Inc. and Jaime Perez.

3. Request for Personal Mobile Phone Stipend, dated September 16, 2013, between Jay Cooper and Classic Party Rentals, Inc.

4. Request for Personal Mobile Phone Stipend, dated September 17, 2013, between Justin Tredway and Classic Party Rentals, Inc.

5. Management Bonus Plan Agreement, dated July 1, 2013, between Event Rentals, Inc. dba Classic Party Rentals, Inc. and Brian Leeman.

6. Management Bonus Plan Agreement, dated July 1, 2013, between Event Rentals, Inc. dba Classic Party Rentals, Inc. and Fernando Ramirez.

7. Management Bonus Plan Agreement, dated July 1, 2013, between Event Rentals, Inc. dba Classic Party Rentals, Inc. and Jorge Martin.

8. Management Bonus Plan Agreement, dated July 1, 2013, between Event Rentals, Inc. dba Classic Party Rentals, Inc. and Kimberly Cool.

9.  Management Bonus Plan Agreement, dated July 1, 2013, between Event Rentals, Inc. dba Classic Party Rentals, Inc. and Robert Young.

10. Management Bonus Plan, dated August 27, 2012, between Classic Party Rentals, Inc. and Pamela Miller.

11. Management Bonus Plan Agreement, dated January 13, 2014, between Ramon Garcia and Classic Party Rentals, Inc.

12. Management Bonus Plan Agreement, dated January 10, 2014, between Richard Good and Classic Party Rentals, Inc.

13. Management Bonus Plan Agreement, between Leni Montero and Classic Party Rentals, Inc.

14. Management Bonus Plan Agreement, dated July 2, 2012, between Benjamin Lopez and Classic Party Rentals, Inc.

15. Management Bonus Plan Agreement, between Lon Marsolek and Classic Party Rentals, Inc.

16. Letter, dated March 26, 2012, from Special Event Holding, Inc., to Jeffrey M. Black.

17. Letter, dated May 21, 2013, from Classic Party Rentals, Inc., to Frank Campa.

18. Letter, dated January 30, 2013, from Classic Party Rentals, Inc., to Shanna Jenson.

19. Letter, dated July 1, 2013, from Classic Party Rentals, Inc., to Brett DeAvila.

20. Letter, dated May 30, 2013, from Classic Party Rentals, Inc., to Nia Briscoe.

21. Letter, dated July 25, 2013, from Classic Party Rentals, Inc., to Eliza Cadovona.

22. Letter, dated April 9, 2010, from Classic Party Rentals, Inc., to Tricia Werner.

23. Letter, dated November 11, 2013, from Classic Party Rentals, Inc., to Barbie Rissel.

24. Letter, dated October 25, 2013, from Classic Party Rentals, Inc., to Adrienne Pham.

25. Letter, dated January 6, 2014, from Classic Party Rentals, Inc., to Lisa Bucek.

26. Letter, dated January 6, 2014, from Classic Party Rentals, Inc., to Sandy Stubbs.

27. Letter, dated January 6, 2014, from Classic Party Rentals, Inc., to Miguel Duenas.

28. Letter, dated January 6, 2014, from Classic Party Rentals, Inc., to Joaquin Lopez.

29. Letter, dated January 6, 2014, from Classic Party Rentals, Inc., to Jose Moreno.

30. Letter, dated January 6, 2014, from Classic Party Rentals, Inc., to Joaquin Lopez Moreno Jr.

31. Letter, dated January 6, 2014, from Classic Party Rentals, Inc., to Taryn Lawrence.

32. Letter, dated January 6, 2014, from Classic Party Rentals, Inc., to Naeshia Reid.

33.  Letter, dated January 6, 2014, from Classic Party Rentals, Inc., to Amanda J. Ramirez.

34.  Letter, dated September 5, 2012, from Classic Party Rentals, Inc., to Bill Steigerwald.

35.  Letter, dated September 5, 2012, from Classic Party Rentals, Inc., to Donna Murray.

36.  Letter, dated September 14, 2012, from Classic Party Rentals, Inc., to Joey Cathey.

37.  Letter, dated September 9, 2013, from Classic Party Rentals, Inc., to Cara Morgan.

38.  Letter, dated September 16, 2013, from Classic Party Rentals, Inc., to Jorge Melendez.

39.  Letter, dated January 26, 2009, from Classic Party Rentals, Inc., to Nancy Erickson.

40.  Letter, dated April 7, 2008, between Classic Party Rentals, Inc. and Sarah Hollingsworth.

41.  Letter, dated July 30, 2012, between Classic Party Rentals, Inc. and Ron Newton.

42.  Letter, dated December 9, 2013, between Classic Party Rentals, Inc. and Shannon Pike.

43.  Letter, dated October 22, 2013, between Classic Party Rentals, Inc. and Patricia Pressley.

44.  Letter, dated June 25, 2013, from Classic Midwest, Inc., to Sara Sotelo.

45.  Letter, dated January 9, 2014, from Classic Party Rentals, Inc., to Aaron S. Binder.

46.  Letter, dated December 26, 2013, from Classic Party Rentals, Inc., to Alextoria Shankweiler.

47.  Letter, dated March 25, 2013, from Classic Party Rentals, Inc., to Anna Cano.

48.  Letter, dated July 1, 2013, from Classic Party Rentals, Inc., to Catharine Lepic.

49.  Letter, dated June 11, 2013, from Classic Party Rentals, Inc., to Cheryl Hall.

50.  Letter, dated November 11, 2013, from Classic Party Rentals, Inc., to Cyrail Smith.

51.  Letter, dated May 10, 2013, from Classic Party Rentals, Inc., to Evan Mobley.

52.  Letter, dated October 30, 2013, from Classic Party Rentals, Inc., to Evelyn Rivas.

53.  Letter, dated April 4, 2013, from Classic Party Rentals, Inc., to Glo Calderon.

54.  Letter, dated April 8, 2013, from Classic Party Rentals, Inc., to Gus Galanis.

55.  Letter, dated November 22, 2013, from Classic Party Rentals, Inc., to Gus Lopez.

56.  Letter, dated April 23, 2013, from Classic Party Rentals, Inc., to Jessica Gomez.

57.  Letter, dated September 10, 2012, from Classic Party Rentals, Inc., to Johanna Marin.

58.  Letter, dated May 29, 2013, from Classic Party Rentals, Inc., to Julie Foster.

59. Letter, dated September 16, 2013, from Classic Party Rentals, Inc., to Justin Smith.

60. Letter, dated December 20, 2013, from Classic Party Rentals, Inc., to Kaiako Kaluna.

61. Letter, dated June 4, 2013, from Classic Party Rentals, Inc., to Mark Sedman.

62. Letter, dated June 17, 2013, from Classic Party Rentals, Inc., to Jose Martin Nunez.

63. Letter, dated November 15, 2013, from Classic Party Rentals, Inc., to Michael Persson.

64. Letter, dated April 22, 2013, from Classic Party Rentals, Inc., to Cesar Omar Sanchez.

65. Letter, dated March 25, 2013, from Classic Party Rentals, Inc., to Patricia Stevens.

66. Letter, dated October 24, 2011, from Classic Party Rentals, Inc., to Phllip Gomez.

67. Letter, dated July 1, 2013, from Classic Party Rentals, Inc., to Rosemary Kanuha.

68. Letter, dated July 22, 2013, from Classic Party Rentals, Inc., to Rosie Rosales.

69. Letter, dated March 25, 2013, from Classic Party Rentals, Inc., to Susan Nega.

70. Letter, dated February 13, 2012, from Classic Party Rentals, Inc., to Todd Krumpe.

71. Letter, dated December 26, 2013, from Classic Party Rentals, Inc., to Trayvon Carter.

72. Letter, dated November 18, 2013, from Classic Party Rentals, Inc., to Vanessa Rodriguez.

73. Letter, dated September 27, 1999, from Classic Party Rentals, Inc., to Kenny Antonioli.

74. Letter, dated April 26, 2013, from Classic Party Rentals, Inc., to Chris Bender.

75. Letter, dated November 30, 2012, from Classic Party Rentals, Inc., to Michelle Watson.

76. Letter, dated October 8, 2013, from Classic Panache, Inc., to Alicia Villalobos.

77. Letter, dated October 8, 2013, from Classic Panache, Inc., to Allison Gilchrist.

78. Letter, dated October 8, 2013, from Classic Panache, Inc., to Jeannette West.

79. Letter, dated October 15, 2013, from Classic Panache, Inc., to Liz Kirtley.

80. Letter, dated October 8, 2013, from Classic Panache, Inc., to Suzie Halpern.

81. Letter, dated January 20, 2014, between Daniel Zebrowski and Cheryl Evanoff.

82. Letter, dated January 20, 2014, between Classic Party Rentals, Inc. and Mark A. Anfangar.

## Credit Agreements

1. Financing Agreement, dated December 20, 2006, among Event Rentals, Inc., the guarantors party thereto, Dymas Funding Company, LLC and each of the existing senior secured lenders party

thereto; as amended by First Amendment to Financing Agreement, dated October 29, 2007, among Special Event Holding, Inc., Event Rentals, Inc., the guarantors party thereto, the financial institutions from time to time party thereto and Dymas Funding Company, LLC; as further amended by the Waiver, Consent and Second Amendment to Financing Agreement and Reaffirmation of Loan Documents, dated May 11, 2009, among Special Event Holding, Inc., Event Rentals, Inc., the guarantors party thereto, the financial institutions from time to time party thereto and Dymas Funding Company, LLC; as further amended by the Third Amendment to Financing Agreement and Reaffirmation of Loan Documents, dated March 17, 2010, among Special Event Holding, Inc., Event Rentals, Inc., the guarantors party thereto, the financial institutions from time to time party thereto and Dymas Funding Company, LLC; as further amended by the Consent and Fourth Amendment to Financing Agreement and Reaffirmation of Loan Documents, dated March 31, 2011, among Special Event Holding, Inc., Event Rentals, Inc., the guarantors party thereto, the financial institutions from time to time party thereto and Dymas Funding Company, LLC; as further amended by the Waiver and Fifth Amendment to Financing Agreement and Reaffirmation of Loan Documents, dated November 9, 2011, among Special Event Holding, Inc., Event Rentals, Inc., the guarantors party thereto, the financial institutions from time to time party thereto and Dymas Funding Company, LLC; as further amended by the Sixth Amendment to Financing Agreement, Administrative Agent Advances Agreement and Reaffirmation of Loan Documents, dated January 8, 2014, among Special Event Holding, Inc., Event Rentals, Inc., the guarantors party thereto, the financial institutions from time to time party thereto and Dymas Funding Company, LLC; as further amended by the Seventh Amendment to Financing Agreement, Amendment to Forbearance, Amendment to Administrative Agent Advances Agreement and Reaffirmation of Loan Documents, dated February 4, 2014, among Special Event Holding, Inc., Event Rentals, Inc., the guarantors party thereto, the financial institutions from time to time party thereto and Dymas Funding Company, LLC; as further amended by the Eighth Amendment to Financing Agreement, Second Amendment to Forbearance, Second Amendment to Administrative Agent Advances Agreement and Reaffirmation of Loan Documents, dated February 11, 2014, among Special Event Holding, Inc., Event Rentals, Inc., the guarantors party thereto, the financial institutions from time to time party thereto and Dymas Funding Company, LLC.

2. 2011 Liquidity Note Purchase Agreement, dated November 9, 2011, among Event Rentals, Inc., each of the guarantors party thereto, Quad-C Principals LLC and Quad-C Partners VII, L.P.

3. Amended and Restated Liquidity Note Purchase Agreement, dated March 31, 2011, among Event Rentals, Inc., each of the guarantors party thereto, Quad-C Principals LLC, Quad-C Partners VII, L.P., S.A.C. Domestic Capital Funding, Ltd, S.A.C. Offshore Capital Funding, Ltd. and JPM Mezzanine Capital, LLC; as amended by First Amendment to Amended and Restated Liquidity Note Purchase Agreement, dated November 9, 2011, among Event Rentals, Inc., each of the guarantors party thereto, Quad-C Principals LLC, Quad-C Partner VII, L.P., S.A.C. Domestic Capital Funding, Ltd, S.A.C. Offshore Capital Funding Ltd. and JPM Mezzanine Capital, LLC.

4. Seller Note, dated August 5, 2003, payable by Classic Party Rentals, Inc. dba Ascot Party Rentals, Inc. in favor of Betsy L. Stone and Herbert D. Stone.

5. Seller Note, dated July 11, 2007, payable by Event Rentals, Inc. in favor of The Turlington Group.

6. Seller Note, dated July 19, 2007, payable by Event Rentals, Inc. in favor of Stan White (aka John Stanley White).

7. Seller Note, dated July 19, 2007, payable by Event Rentals, Inc. in favor of Party Place, LLC.

8. Seller Note, dated December 19, 2007, payable by Event Rentals, Inc.in favor of Phoenix Event Services, LLC.

9. Seller Note, dated February 28, 2008, payable by Event Rentals, Inc. in favor of Dave Painter.

10. Seller Note, dated March 13, 2008, payable by Event Rentals, Inc. in favor of D R, LLC.

11. Seller Note, dated November 1, 2012, payable by Classic Southeast, Inc. in favor of LCER, Inc.; as amended by the Assignment of Promissory Note, dated February 28, 2013, among Low Country Event Rentals, LLC, John Moran and Event Rentals, Inc.

12. Control Agreement, dated October 18, 2011, among Event Rentals, Inc., U.S. Bank National Association, U.S Bank National Association ND; as modified by Pledge Agreement, dated October 18, 2011, between Event Rentals, Inc. and U.S Bank National Association ND.

**Benefit Plans**

1. Classic Party Rentals, Inc. Traditional Health Plan

2. Classic Party Rentals, Inc. Dental Care Insurance DHMO

3. Classic Party Rentals, Inc. Group Contract of Pre-Paid Dental Plan Services

4. Classic Party Rentals, Inc. Custom Blue Cross Exclusive PPO Plan 2

5. Classic Party Rentals, Inc. Affordable Health Choices Insurance

**Other**

1. Management Agreement, dated December 20, 2006, among Event Rentals, Inc., Quad-C Management, Inc. and Quad-C VII Management Corp.