# **EXHIBIT A**

# REAL ESTATE LEASE AGREEMENT

This Real Estate Lease Agreement ("Lease"), dated January 31, 2013, by and between WTF Investments, Inc., a North Carolina corporation, formerly known as Special Events Rentals, Inc. ("Landlord"), and Event Rentals, Inc., a Delaware corporation ("Tenant"). For and in consideration of the mutual promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**PREMISES.** Landlord leases unto Tenant, and Tenant hereby leases and takes upon the terms and conditions which hereinafter appear, the property located at 5450 Old Wake Forest Road, Raleigh, NC (the "Premises"). See Exhibit A regarding the apartment and office areas that are not included in this Lease.

**TERM.** The term of this Lease shall commence on February 1, 2013 (the "Lease Commencement Date") and shall end at midnight on January 31, 2015, unless sooner terminated as herein provided. Tenant shall have the option of renewing this Lease, upon written notice to Landlord at least 180 days prior to the end of the term of the Lease, for one (1) additional term of two (2) years.

**RENT.** Beginning on February 1, 2013, Tenant shall pay to Landlord monthly installments of rent in the amount $8,500.00, in advance on the first day of each calendar month. The monthly rent for the first year of the Option Period shall be the rent charged for the month immediately preceding the Option Period plus an amount equal to the increase in the **Bureau of Labor Statistics Consumer Price Index – All Urban Consumers (CPI – U) 1982-84** since the Lease Commencement Date. Annually during the Option Period on each anniversary of the Lease Commencement Date, the rent shall increase by an amount equal to the increase in said CPI since the last CPI adjustment under this Lease. Lease payments shall be made to the Landlord at P.O. Box 3758, North Myrtle Beach, SC 29582, which address may be changed from time to time by the Landlord.

**SECURITY DEPOSIT.** Tenant agrees that the existing Security Deposit of $2,000 will remain. **No further Security Deposit will be required.**

**POSSESSION.** Tenant shall be entitled to possession on the first day of the term of this Lease, and shall yield possession to Landlord on the last day of the term of this Lease, unless otherwise agreed by both parties in writing. **At the expiration of the term, Tenant shall remove its personal property and peaceably yield up the Premises to Landlord in as good a condition as when delivered to Tenant upon execution of this Lease, as documented by Landlord and Tenant with photographs on January 24, 2013**, ordinary wear and tear excepted.

**USE OF PREMISES.** Tenant may use the Premises only for the operation of a party rental business with sales of related items, other uses incidental thereto, and general office. The Premises may be used for any other purpose only with the prior written consent of Landlord, which consent shall not be unreasonably withheld. Tenant shall notify Landlord of any anticipated extended absence from the Premises no later than the first day of the extended absence.

**PROPERTY INSURANCE.** Landlord shall maintain casualty insurance on the Premises in an amount not less than 100% of the full replacement value and Tenant shall pay the cost thereof. Tenant shall also maintain any other insurance which Landlord may reasonably require for the protection of Landlord's interest in the Premises and which is customarily carried by owners of similar real property. Tenant is responsible for maintaining casualty insurance on its own property.

---

**LIABILITY INSURANCE.** Tenant shall maintain liability insurance on the Premises in a total aggregate sum of at least $1,000,000.00. Tenant shall deliver appropriate evidence to Landlord as proof that adequate insurance is in force issued by companies reasonably satisfactory to Landlord. Landlord shall receive advance written notice from the insurer prior to any termination of such insurance policies.

**MAINTENANCE.** Except as provided below and in Exhibit A, Tenant shall have the responsibility to maintain the Premises in good repair during the term of this Lease, ordinary wear and tear excepted. Landlord will from time to time, but no more than 4 times per year, inspect the Premises and provide a written notice to Tenant of repairs needed, if any, and Tenant agrees to complete said repairs within 60 days of the date of Landlord's notice to Tenant. Landlord represents and warrants that the loading doors and the electrical, plumbing, HVAC and other mechanical systems serving the Premises are in good operating condition as of the Lease Commencement Date. **Landlord will have said items inspected within 30 days of the Lease Commencement Date and will provide written notice to Tenant of the inspections and repairs, if any.** Landlord at its expense shall maintain in good condition and repair the roof, load-bearing walls and the foundation of the building on the Premises.

**UTILITIES AND SERVICES.** Tenant shall be responsible for all utilities and services incurred in connection with the Premises.

**TAXES.** Taxes attributable to the Premises or the use of the Premises shall be allocated as follows:

**REAL ESTATE TAXES.** Tenant shall pay up to $11,532.77 (amount paid in 2012) per year for real estate taxes and assessments which are assessed against the Premises during the time of this Lease. Tenant agrees to pay the annual real estate taxes by September 30 of each year.

**PERSONAL TAXES.** Tenant shall pay all personal taxes and any other charges which may be levied against the Premises and which are attributable to Tenant's use of the Premises, along with all sales and/or use taxes (if any) that may be due in connection with lease payments.

**DEFAULTS.** Tenant shall be in default of this Lease if Tenant fails to fulfill any lease obligation or term by which Tenant is bound beyond any applicable cure period. If Tenant fails to cure any financial obligation within 10 days after receipt of written notice from Landlord (or any other obligation within 30 days) unless such default cannot be cured with reasonable efforts in 30 days then Tenant must have begun cure efforts within 30 days of notice of such default. In the alternative, Landlord may elect to cure any non-monetary default and the reasonable cost of such action shall be added to Tenant's financial obligations under this Lease. Tenant shall pay all costs, damages, and expenses (including reasonable attorney fees and expenses) suffered by Landlord by reason of Tenant's defaults. All sums of money or charges required to be paid by Tenant under this Lease shall be additional rent, whether or not such sums or charges are designated as "additional rent". The rights provided by this paragraph are cumulative in nature and are in addition to any other rights afforded by law.

**LATE PAYMENTS.** For each payment that is not paid within 10 days after its due date, Tenant shall pay Landlord, as additional rental, a late charge equal to 5% of the overdue amount. The parties agree that such a late charge represents a fair and reasonable estimate of the cost Landlord will incur by reason of such late payment.

**HOLDOVER.** If Tenant maintains possession of the Premises for any period after the termination of this Lease ("Holdover Period"), Tenant shall pay to Landlord lease payment(s) during the Holdover Period at a rate equal to 1.5 times the most recent rate preceding the Holdover Period. Such holdover shall constitute a month-to-month extension of this Lease.

**CUMULATIVE RIGHTS.** The rights of the parties under this Lease are cumulative, and shall not be construed as exclusive unless otherwise required by law.

**NON-SUFFICIENT FUNDS.** Tenant shall be charged $25.00 for each check that is returned to Landlord for lack of sufficient funds.

**REMODELING OR STRUCTURAL IMPROVEMENTS.** At Tenant's expense, Tenant may construct improvements to the Premises. Such construction shall be undertaken only with the prior written consent of the Landlord, which consent shall not be unreasonably withheld. Tenant shall not install awnings or advertisements on any part of the Premises without Landlord's prior written consent, which consent shall not be unreasonably withheld. At the end of the lease term, Tenant shall be entitled to remove (or at the request of Landlord shall remove) any fixtures added by Tenant, and shall restore the Premises to substantially the same condition of the Premises at the commencement of this Lease, wear and tear excepted.

**ACCESS BY LANDLORD TO PREMISES.** Subject to Tenant's consent (which shall not be unreasonably withheld), Landlord shall have the right to enter the Premises to make inspections, provide necessary services, or show the unit to prospective buyers, mortgagees, or tenants. However, Landlord does not assume any liability for the care or supervision of the Premises except as otherwise expressly provided in this Lease. As provided by law, in the case of an emergency, Landlord may enter the Premises without Tenant's consent but with prior notice (if possible). During the last three months of this Lease, or any extension of this Lease, Landlord shall be allowed to display the usual "For Rent" signs and show the Premises to prospective tenants.

**INDEMNITY REGARDING USE OF PREMISES.** To the extent permitted by law, Tenant agrees to indemnify, hold harmless, and defend Landlord from and against any and all losses, claims, damages, liabilities, and expenses, including reasonable attorney fees, if any, which Landlord may suffer or incur in connection with Tenant's possession, use or misuse of the Premises.

**COMPLIANCE WITH REGULATIONS.** Tenant shall promptly comply with all laws, ordinances, requirements and regulations of the federal, state, county, municipal and other authorities, and the fire insurance underwriters (collectively, "Applicable Laws"). Landlord represents and warrants that as of the Commencement Date: (i) the Premises comply with all Applicable Laws; and (ii) there are no hazardous substances except as allowed by law) on the Premises.

**MECHANICS LIENS.** Neither Tenant nor anyone claiming through Tenant shall file mechanics liens or any other kind of lien on the Premises. Tenant agrees to take whatever steps are necessary in order to keep the Premises free of all liens resulting from construction done by or for Tenant.

**ASSIGNABILITY/SUBLETTING.** Tenant may not assign or sublease any interest in the Premises, nor assign, mortgage or pledge this Lease, without the prior written consent of Landlord, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, Landlord's prior written consent shall not be required in connection with any assignment, subletting, or other transfer to any entity which controls, is controlled by, or is under common control with Tenant, to any entity

resulting from the merger or consolidation of Tenant, or to any entity which acquires all of substantially all of the assets of Tenant. Tenant shall remain liable for all obligations and liabilities of Tenant under this Lease unless Tenant is not continuing as a separate entity and substantially all of its assets are being transferred to the assignee, in which case the consent of Landlord shall be required unless the net worth of the assignee is at least as great as the net worth of Tenant immediately prior to such transfer. For the purposes of this paragraph, the words "control," "controls," and "controlled" shall mean the right and power (direct or indirect) to direct or cause the direction of the management policies of a person or entity (corporation or otherwise) through ownership or voting securities, by contract, or otherwise. The public offering of securities by Tenant shall not constitute an assignment under this Section.

**NOTICE.** Notices under this Lease shall not be deemed valid unless given or served in writing by email or facsimile, with proof of delivery, or by certified mail, return receipt requested, or overnight mail, with proof of delivery, addressed as follows:

**LANDLORD:**

WTF Investments, Inc.
P.O. Box 3758
North Myrtle Beach, SC 29582
919-427-4000
rawkpw@aol.com

with a copy to:

M. Bradley Harrold
Harrold Law Firm, PLLC
3323 Alamance Drive
Raleigh, NC 27609
919-788-2050
Fax: 919-788-2060
bradharrold@nc.rr.com

**TENANT:**

Event Rentals, Inc.
901 West Hillcrest Blvd.
Los Angeles, CA 90301
301-966-4900
LMarple@classicpartyrentals.com

Such addresses may be changed from time to time by either party by providing notice as set forth above. Notices mailed in accordance with the above provisions shall be deemed received on the third day after posting.

**GOVERNING LAW.** This Lease shall be construed in accordance with the laws of the State of North Carolina.

# EXHIBIT A

1. **BACK RENT.** On the date of the execution of this Lease, Tenant will pay to Landlord $11,000 for back rent owed.

2. **PARKING LOT PAVING.** On or before February 15, 2013, Landlord will provide to Tenant the final quote for the Tenant's share of the asphalt repair. On or before April 1, 2013, Tenant will pay $12,000 to Landlord for said asphalt repairs, said repairs to be done by Landlord after receipt of said funds as soon as possible as weather permits.

3. **LINER PANELS.** On or before February 15, 2013, Landlord will provide to Tenant the final quote for the liner panels to be purchased from O'Steel Inc. by Landlord. On or before March 1, 2013, Tenant will pay $12,450 to Landlord for said liner panels. Landlord will store the liner panels and install them after the termination of this Lease. Tenant is thus not responsible for repairing any damages to the inside wall areas that are to be covered by the liner panels during the term of this Lease or at the termination of this Lease.

4. **FUNDS FOR IDENTIFIED DEFERRED MAINTENANCE ITEMS.** Beginning on February 1, 2013, in addition to the rent, Tenant shall pay to Landlord monthly installments in the amount $1,500.00, in advance on the first day of each calendar month, said funds to be used by Landlord for deferred maintenance items described on Exhibit B after the termination of this Lease. Tenant is thus not responsible for repairing any of said deferred maintenance items listed on Exhibit A during the term of this Lease or at the termination of this Lease.

5. **APARTMENT AND OFFICE AREAS UPSTAIRS.** Tenant hereby acknowledges that the apartment and office areas located upstairs at each end of the building shall not be included in the leased premises. Landlord and Landlord's agents, guests, tenants or invitees shall be entitled to use these spaces.

6. **REPAIRS TO SHED.** Landlord agrees to make repairs currently needed to the shed located in the parking lot. Once the repairs are completed, Tenant will assume responsibility for all future repairs. Once this or any repair is completed by Landlord, Landlord will document the completion of the repair and will take photographs. If the repaired item is damaged again thereafter, Tenant will be responsible for any and all repair expenses for the item (except as noted in paragraphs 3 and 4 above).

7. **REPAIRS BY TENANT.** Tenant specifically agrees to repair the following items by April 1, 2013: (a) Tenant will add a "closing arm" to the metal door located inside the building in the office area, (b) Tenant will repair the glass doors located inside the building near the office area, and (c) Tenant will replace the timer on the outside light.

8. **PAST DUE RENT AND DAMAGES.** If Tenant does not default under the terms of this Lease prior to making the payments described in Sections 1, 2 and 3 above, then Landlord agrees to waive any claim of Landlord against Tenant for past due rent and damages incurred prior to the date of this Lease. In the event Tenant defaults on making said payments described in Sections 1, 2 and 3 above, then Tenant consents to a judgment against Tenant for past due rent and damages incurred prior to the date of this Lease. Tenant hereby acknowledges that, after the payments described in this Exhibit A are made, Tenant owes $49,000 for past due rent and $51,000 for damages to the Premises. *in the event of* *should owe*
   *said default*
   CRB

---

**ENTIRE AGREEMENT/AMENDMENT.** This Lease contains the entire agreement of the parties and there are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Lease. This Lease may be modified or amended in writing, if the writing is signed by the party obligated under the amendment.

**SEVERABILITY.** If any portion of this Lease shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Lease is invalid or unenforceable, but that by limiting such provision, it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**WAIVER.** The failure of either party to enforce any provisions of this Lease shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Lease.

**BINDING EFFECT.** The provisions of this Lease shall be binding upon and inure to the benefit of both parties and their respective legal representatives, successors and assigns.

**DAMAGE.** Tenant shall have the right to terminate this Lease in the event that a material portion of the Premises is damaged or destroyed and renders the entire Premises unsuitable for Tenant's use. In the event of a damage or destruction and Tenant does not terminate this Lease, Landlord shall restore the Premises (to the extent of insurance proceeds only), and Tenant shall receive a rental abatement based upon the percentage of the building that is unusable.

**ESTOPPEL CERTIFICATES.** Each party shall execute such estoppel certificates as may be reasonably requested by the other party.

**LENDER.** Landlord represents and warrants that there are no outstanding loans secured by the Premises or, if there are, that the holders of such loans have agreed not to disturb Tenant under this Lease in the event of a foreclosure.

**ATTORNEYS FEES.** In the event any legal action is instituted to construe or enforce this Lease or any provision hereof or the rights or obligations of any party hereto, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs.

**ADDITIONAL TERMS.** See Exhibit A for additional terms.

**LANDLORD:**

WTF Investments, Inc.

By: _____  Date: _____

**TENANT:**

Event/Rentals, Inc.

By: _____  Date: 1/31/13