## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| After-Party2, Inc. (f/k/a Event Rentals, Inc.), *et al.*,[1] | Case Nos. 14-10282 (PJW) |
| | Jointly Administered |
| Debtors. | **Hearing Date:** January 29, 2015, 1:30 p.m.<br>**Objections Due:** January 7, 2015, 4:00 p.m. |

## CP OPCO, LLC'S SECOND OMNIBUS (SUBSTANTIVE) OBJECTION PURSUANT TO 11 U.S.C. §§ 502(b) AND 503(b)(9), FED R. BANKR. P. 3007 AND DEL. BANKR. L.R. 3007-1 TO MISCLASSIFIED CLAIMS

> **Claimants receiving this objection should locate their name(s) on Exhibit A or B, which contain the grounds for this objection to their claim(s) and the relief being sought by CP OpCo.**

CP OpCo, LLC ("CP OpCo"), the purchaser of substantially all of the assets of

the above-captioned Debtors, hereby objects (the "Omnibus Objection") to each of the

Misclassified Claims (as defined below) pursuant to sections 502 and 503 of title 11 of the

United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Local Rule 3007-1 of the Local Rules of the United

States Bankruptcy Court for the District of Delaware (the "Local Rules"), and requests entry of

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are: After-Party, Inc. (f/k/a Special Event Holding, Inc.) (5659); After-Party2, Inc. (f/k/a Event Rentals, Inc.) (9443); After-Party3, Inc. (f/k/a DUBO Acquisition Corporation) (8795); After-Party4, Inc. (f/k/a DBO Acquisition Corporation) (1923); LRAP5, LP (f/k/a Classic Party Rentals LP) (0583); After-Party6, Inc. (f/k/a Classic Party Rentals, Inc.) (3911); After-Party7, Inc. (f/k/a Classic Midwest, Inc.) (9934); After-Party8, Inc. (f/k/a Classic Northeast, Inc.) (9871); After-Party9, Inc. (f/k/a Classic Panache, Inc.) (1237); After-Party10, Inc. (f/k/a Classic/Prime, Inc.) (7149); After-Party11, Inc. (f/k/a Classic Southeast, Inc.) (0700); After-Party12, Inc. (f/k/a Unique Tabletop Rentals, Inc.) (4327); and After-Party13, Inc. (f/k/a Grand Events & Party Rentals, Inc.) (7940). The list of the Debtors' alternate names is located on the docket for Case No. 14-10282 [D.I. 3 as amended by D.I. 92] and is also available at http://www.kccllc.net/CPR.

an order reclassifying each of the claims listed under the column "Proof of Claim Number to be Modified" on Exhibits A and B hereto.[2]  Attached hereto as Exhibit C is a list of each claim that is the subject of this Omnibus Objection and/or *CP OpCo, LLC's First Omnibus (Non-Substantive) Objection Pursuant to 11 U.S.C. §§ 502(b) and 503, Fed. R. Bankr. P. 3007 and Del. Bankr. L.R. 3007-1 to (I) Late-Filed Claims, (II) Duplicate Claims, (III) Amended and Superseded Claims, (IV) Wrong-Debtor Claims, and (V) Unsubstantiated Claims*, filed concurrently herewith, which identifies all bases for objection for each claimant and the total 503(b)(9) Claim (defined below) to which CP OpCo contends each claimant is entitled.  In support of this Omnibus Objection, CP OpCo relies on the Declaration of Jeffrey R. Truitt (the "Truitt Declaration"), attached hereto as Exhibit D.  In further support of this Omnibus Objection, CP OpCo respectfully represents as follows:

## BACKGROUND

**A.    The Chapter 11 Cases.**

1.    The Chapter 11 Cases.  On February 13, 2014 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").  On February 18, 2014, this Court entered orders approving the joint administration of the Debtors' chapter 11 cases.  [D.I. 40] (collectively, the "Chapter 11 Cases").

2.    The Sale.  On April 29, 2014, the Court entered an order [D.I. 444] approving the sale of substantially all of the Debtors' assets to CP OpCo (the "Sale") pursuant to the Asset Purchase Agreement by and Among Special Event Holding, Inc., et. al and CP OpCo,

---

[2]  All claims reclassified as general unsecured claims pursuant to this Omnibus Objection shall be subject to the rights of the Liquidation Trust and any other parties-in-interest who may be entitled to object to such claims pursuant to Article X of the Plan (defined below) or Section 502 of the Bankruptcy Code and Rule 3007 of the Bankruptcy Rules.

LLC (the "CP OpCo APA").  The Sale closed on May 23, 2014, and substantially all of the

Debtors' assets were transferred to CP OpCo pursuant to the CP OpCo APA.  CP OpCo also

assumed certain specified liabilities of the Debtors as set forth in the CP OpCo APA, including

the Buyer Pay Claims (defined below), which are subject to CP OpCo's right to object as

discussed below.

        3.      The Plan of Reorganization and Disclosure Statement.  On July 14, 2014,

the Debtors filed the First Amended Chapter 11 Plan of Liquidation for After-Party2, Inc. (f/k/a

Event Rentals, Inc.) and Its Affiliated Debtors Proposed by the Debtors and the Official

Committee of Unsecured Creditors [D.I. 616] (the "Plan") and the disclosure statement in

support thereof [D.I. 618] (as amended by D.I. 635, the "Disclosure Statement").  On August 27,

2014, the Court entered the order confirming the Plan [D.I. 707] (the "Confirmation Order").

**B.**      **The Applicable Bar Dates and Proofs of Claim.**

        4.      On March 14, 2014, the Court entered the *Order Establishing and*

*Implementing Exclusive and Global Procedures for Submitting and Resolving Claims Relating to*

*Goods Received Within Twenty Days Prior to the Petition Date for Treatment Pursuant to*

*Section 503(b)(9) of the Bankruptcy Code* [D.I. 172] (the "503(b)(9) Order").  Pursuant to the

503(b)(9) Order, the deadline to file a 503(b)(9) Proof of Claim (as defined therein) was April

25, 2014 (the "503(b)(9) Bar Date").  The 503(b)(9) Order further provided that "nothing in this

Order shall impair the ability of the Debtors or appropriate parties in interest to contest any claim

of any creditor pursuant to applicable law or otherwise dispute, contest, setoff, or recoup any

claim, or assert any rights, claims or defenses related thereto; . . ."

3

5.       On March 14, 2014, the Claims Agent[3] served the 503(b)(9) Order in accordance with LR 2002-1. See D.I. 254.

6.       The deadline to file other Administrative Claims[4] (the "Administrative Claim Bar Date") is governed by the Plan. Specifically, section 5.2(a) of the Plan provides, in relevant part:

> The holder of an Administrative Claim, other than (i) a Fee Claim; (ii) a Claim for Statutory Fees; (iii) a Buyer Pay Claim incurred and payable in the ordinary course of business by the Debtors (and not past due); (iv) a Claim of the type referred to in section 503(b)(1)(D) of the Bankruptcy Code. . . ; or (v) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtors, the Committee, and the Office of the United States Trustee, notice of such Administrative Claim within forty-five (45) days after service of the Notice of Confirmation. . . . **Failure to timely and properly file and serve a request for payment of an Administrative Claim shall result in such Administrative Claim not being entitled to any distribution under the Plan.**

Plan, § 5.2(a). (Emphasis in original).

7.       The deadline to object to Administrative Claims is set forth in the section 5.2(c) of the Plan, which provides that an Administrative Claim for which notice was properly filed and served pursuant to section 5.2(a) of the Plan shall be allowed if no objection is filed "on or before the later of (i) the date that is ninety (90) days after the Effective Date; and (ii) such date as may be (A) agreed to by the holder of such Administrative Claim, or (B) approved by the

---

[3] On February 14, 2014, the Debtors filed the *Application of Event Rentals, Inc. and Its Affiliated Debtors for Entry of an Order Authorizing and Approving the Retention of Kurtzman Carson Consultants LLC as Claims and Noticing Agents Nunc Pro Tunc to the Petition Date* [D.I. 12] (the "Claims Agent Application"), which sought authority to employ KCC as the Debtors' claims and noticing agent (the "Claims Agent"). Thereafter, the Court entered an order approving the Claims Agent Application [D.I. 49].

[4] "Administrative Claim" is defined in the Plan as "a Claim incurred by the Debtors (or their Estates) on or after the Petition Date and before the Effective Date for a cost or expense of administration in the Chapter 11 Cases entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including Fee Claims." Plan, § 1.1(2).

104996-001/2486535

Bankruptcy Court on motion of a party in interest, without notice or a hearing." Plan § 5.2(c) [D.I. 616].

      8.    On September 5, 2014, the Debtors filed the *Notice of (I) Confirmation of First Amended Chapter 11 Plan of Liquidation of After-Party2, Inc. (f/k/a Event Rentals, Inc.) and its Affiliated Debtors Proposed by the Debtors and the Official Committee of Unsecured Creditors; (II) The Occurrence of The Effective Date; and (III) Bar Dates for Asserting Administrative Claims, Fee Claims, and Rejection Damages Claims* (the "Notice of Confirmation") [D.I. 721], which gave notice of the Administrative Claim Bar Date consistent with the Plan.[5]

      9.    The Claims Agent served the Notice of Confirmation on September 5, 2014 to all parties on the creditor matrix. See D.I. 731.

      10.    The Effective Date. On September 5, 2014 (the "Effective Date"), the Plan became effective in accordance with its terms. See D.I. 721. Accordingly, the deadline to object to Administrative Claims, including claims pursuant to Bankruptcy Code Section 503(b)(9), was originally December 4, 2014.

---

[5] Specifically, the Notice of Confirmation provided:

. . . the holder of an Administrative Claim, other than (i) a Fee Claim; (ii) [a claim for] Statutory Fees; (iii) Buyer Pay Claims incurred and payable in the ordinary course of business by the Debtors (and not past due); (iv) a Claim of the type referred to in section 503(b)(1)(D) of the Bankruptcy Code; or (v) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Debtors, the Committee, and the Office of the United States Trustee, notice of such Administrative Claim before October 20, 2014 at 4:00 p.m. EDT. Such notice must include at a minimum (i) the name of the holder of the Claim; (ii) the amount of the Claim; and (iii) the basis for the Claim. **Failure to timely and properly file and serve a notice of Administrative Claim shall result in such Administrative Claim not being entitled to any distribution under the Plan.**

D.I. 721, pp. 1-2. (Emphasis in original).

104996-001/2486535

C.    **CP OpCo's Standing to Object to the 503(b)(9) Claims.**

        11.    CP OpCo is responsible for the "Buyer Pay Claims" as set forth in Section 5.2(d) of the Plan, the CP OpCo APA, and the Sale Order. These "Buyer Pay Claims" are defined in the Plan as "all Claims against the Debtors assumed by the Buyer pursuant to the Asset Purchase Agreement." Plan § 1.1(15). Pursuant to the terms of the CP OpCo APA, such Buyer Pay Claims include:

> all Liabilities of [Debtors] set forth on Schedule 2.4(a), which shall be comprised of Liabilities that arise and are due and payable after the Petition Date and unpaid as of the Closing and that arise in the Ordinary Course of Business and in accordance with the Approved Budget;
>
>    . . .
>
> all Liabilities, in the amounts listed on Schedule 2.4(d), (i) to the vendors listed on Schedule 2.4(d) on account of prepetition general unsecured non-priority claims . . ., and (ii) . . . allowed and unpaid administrative expenses under Bankruptcy Code Section 503(b)(9) arising in the Bankruptcy Cases. . .;
>
>    . . .
>
> all Liabilities (i) for sales and use taxes and FICA, FUTA, Social Security and other payroll "trust fund" taxes that are due and payable after the Petition Date and are unpaid as of the Closing Date and that are attributable to transactions or payments occurring in the Ordinary Course of Business and in accordance with the Approved Budget, (ii) all Transfer Taxes to the extent set forth in Section 11.1; (iii) for Taxes relating to the Purchased Assets or the Business arising and incurred for any Tax period (or portion thereof) beginning after the Closing; and (iv) ad valorem and personal property taxes incurred by Sellers in the Ordinary Course of Business that are due and payable after the Closing Date, that give rise to allowed claims entitled to priority under Sections 503(b)(1)(B) or 507(a)(8) of the Bankruptcy Code, and that are set forth in Schedule 2.4(g); . . .

CP OpCo APA, § 2.4(a), (d), and (g) [D.I. 444-1].

12. Therefore, the Buyer Pay Claims include claims asserting administrative priority status under Section 503(b)(9) (the "503(b)(9) Claims")[6] and certain other Administrative Claims. See Plan § 1.1(2).

13. On November 20, 2014, CP OpCo filed its motion to extend the deadline to object to the 503(b)(9) Claims and Administrative Claims which are Buyer Pay Claims for a 90-day period. On December 2, 2014, the Court granted the motion and extended the objection deadline to March 4, 2015. D.I. 825.

**D.    CP OpCo's Evaluation of the Buyer Pay Claims.**

14. The register of Claims maintained by the Claims Agent (the "Claims Register") reflects that over 130 503(b)(9) Claims were filed. A total of approximately 20 other Administrative Claims were filed which may constitute Buyer Pay Claims under sections 2.4(a), 2.4(b), 2.4(c), or 2.4(g) of the CP OpCo APA.

15. Prior to the commencement of these cases, the Debtors maintained, in the ordinary course of their businesses, books and records that reflected, among other things, the Debtors' liabilities and amounts owed to creditors. As part of the Sale, the Debtors' books and records were transferred to CP OpCo. As set forth in the Truitt Declaration, CP OpCo has conducted a review of the Buyer Pay Claims (along with any supporting documentation filed therewith), the Debtors' books and records, and CP OpCo's books and records to evaluate the validity of the Buyer Pay Claims.

16. For the reasons set forth below, CP OpCo has determined that certain Buyer Pay Claims asserted against the estate were improperly classified as allowable under

---

[6] Includes claims designated by the claimant as reclamation claims where the claimant did not specifically assert 503(b)(9) administrative priority.

Section 503(b)(9) and/or other provisions of Section 503(b), either in whole or in part, and, therefore, requests reclassification of such claims as general unsecured claims.

## JURISDICTION

17.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

18.    The statutory predicates for relief requested herein are Section 503 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## RELIEF REQUESTED

19.    CP OpCo has determined that the 503(b)(9) Claims identified under the column "Proof of Claim Number to be Modified" on Exhibit A hereto (the "Misclassified 503(b)(9) Claims") (a) improperly assert administrative expense priority status under Section 503(b)(9), or (b) assert administrative expense priority status under Section 503(b)(9) in an amount exceeding the amount to which such claim is entitled to administrative expense priority under the Bankruptcy Code.[7]  Moreover, CP OpCo has determined that the Administrative Claim identified under the column "Proof of Claim Number to be Modified" on Exhibit B hereto (the "Misclassified Administrative Claim" and together with the Misclassified 503(b)(9) Claims, the "Misclassified Claims") improperly asserts administrative expense priority status under Section 503(b) in an amount exceeding the amount to which such claim is entitled to administrative expense priority under the Bankruptcy Code.[8]  Accordingly, CP OpCo requests that the Misclassified 503(b)(9) Claims identified on Exhibit A hereto and the Misclassified

---

[7]    The specific bases for objection to each Misclassified 503(b)(9) Claim are set forth under the column "Reason for Reclassification" on Exhibit A hereto.

[8]    The specific bases for objection to the Misclassified Administrative Claim are set forth under the column "Reason for Reclassification" on Exhibit B hereto.

Administrative Claim on <u>Exhibit B</u> hereto be reclassified as general unsecured claims.[9]

20.    A number of proofs of claim filed by vendors included both 503(b)(9)

Claims and general unsecured claims.  In some cases, the 503(b)(9) Claim was transferred or

assigned to a third party, while the vendor retained the general unsecured claim.  The Claims

Register maintained by the Claims Agent, however, uses the original proof of claim number for

both the vendor's general unsecured claim and the assignee's 503(b)(9) Claim, though the names

of the claimants are different.  As a result, some proofs of claim are identified *twice* on the

Claims Register maintained by the Claims Agent.  Where a single proof of claim is held by two

different parties, CP OpCo has treated such claim as two separate proofs of claim in this

Omnibus Objection and the exhibits hereto.

## BASIS FOR RELIEF

**A.  The Misclassified 503(b)(9) Claims.**

  **i.  Section 503(b)(9).**

21.    Bankruptcy Code section 503(b)(9) provides that:

> After notice and a hearing, there shall be allowed administrative
> expenses, other than claims allowed under section 502 (f) of this
> title, including—
>
> . . .
>
> the value of any goods received by the debtor within 20 days
> before the date of commencement of a case under this title in
> which the goods have been sold to the debtor in the ordinary
> course of such debtor's business.

11 U.S.C. § 503(b)(9).

---

[9]   General unsecured claims may be subject to additional objection(s) asserted by the Liquidation Trust or other parties-in-interest as set forth in Article X of the Plan.  <u>See</u> Plan §§ 10.1-10.6.

104996-001/2486535

22.     Thus, to be allowed an administrative claim under Section 503(b)(9), a claimant must establish:

> (1) the vendor sold "goods" to the debtor; (2) the goods were received by the debtor within twenty days prior to filing; and (3) the goods were sold to the debtor in the ordinary course of business.

In re Goody's Family Clothing Inc., 401 B.R. 131, 133 (Bankr. D. Del. 2009) (citing In re Brown & Cole Stores, LLC, 375 B.R. 873, 878 n. 7 (B.A.P. 9th Cir. 2007)); In re NE Opco, Inc., 501 B.R. 233, 241 (Bankr. D. Del. 2013).  The claimant bears the burden of proof with the respect to the validity of administrative claims, including claims asserted under Section 503(b)(9).  See In re Goody's Family Clothing Inc., 401 B.R. at 136 ("An administrative expense claimant bears the burden of establishing that its claim qualifies for priority status").

23.     As a general matter, any subsection of Section 503 should be "strictly construed because administrative expense priority claims reduce the funds available for creditors and other claimants."  City of White Plains v. A&S Galleria Real Estate, Inc. (In re Federated Dep't Stores, Inc.), 270 F.3d 994, 1000 (6th Cir. 2001); see also In re World Imports, 516 B.R. 296, 297-98 (Bankr. E.D. Pa. 2014) ("Not intended to create a new class of creditors, § 503(b)(9) is to be strictly construed.") (citing Howard Delivery Serv. Inc. v. Zurich Am. Insur. Co., 547 U.S. 651, 655, 126 S.Ct. 2105, 2106, 165 L.Ed.2d 110 (2006) (noting discrete exceptions to the general equality principle must be "clearly authorized by Congress.")); In re SemCrude, L.P., 416 B.R. 399, 403 (Bankr. D. Del. 2009) ("a wealth of case law teaches that administrative claims are to be strictly construed.") (citing In re Bernard Techs., Inc., 342 B.R. 174, 177 (Bankr. D. Del. 2006)).

10

**ii.  Interpreting Terms In Section 503(b)(9).**

24.  Terms in section 503(b)(9), such as "goods," "sold," and received," are not defined in the Bankruptcy Code.  Bankruptcy courts, including courts in the District of Delaware, have used the Uniform Commercial Code (the "UCC") to construe these terms.  See In re Goody's Family Clothing Inc., 401 B.R. 131, 134 (Bankr. D. Del. 2009) (concluding that the term "goods" in Section 503(b)(9) conforms with U.C.C. § 2-105(1) because "[u]se of the UCC Article 2's definition of 'goods' in interpreting section 503(b)(9) is suggested in a leading treatise and has been adopted by bankruptcy courts") (citations omitted); In re NE Opco, Inc., 501 B.R. 233, 256 (Bankr. D. Del. 2013) (using the UCC to interpret "goods" and whether electricity was a "good").

25.  Notably, the Court in In re Semcrude, L.P., remarked that:

> There is nothing in the Code or in the legislative history accompanying the recent enactment of § 503(b)(9) suggesting that Congress intended that bankruptcy courts should look beyond the Uniform Commercial Code to construe or define these terms as they apply to sales of goods. Indeed, Article 2 of the Uniform Commercial Code has been adopted in all but one of the fifty states and there is an abundance of case law and scholarly commentary thereon, such that adoption of these definitions should thus be consistent with commercial expectations in the marketplace.

416 B.R. 399, 405 (Bankr. D. Del. 2009).

**iii.  Only *Goods* Are Afforded Administrative Priority Under Section 503(b)(9).**

26.  Bankruptcy Code section 503(b)(9) provides administrative expense priority status only to claims for the value of goods received by a debtor within the 20 days preceding the commencement of a case.  11 U.S.C. § 503(b)(9) (emphasis added).  Consistent with the plain language of the statute, a claim is afforded administrative expense status under Section 503(b)(9) only for claims arising from a claimant's sale and delivery of goods to the

11

Debtors, not from the provision of services. See In re Goody's Family Clothing, 401 B.R. at 135

("[B]ased upon the distinction between 'goods' and 'services' throughout in [sic] the Bankruptcy

Code, a claim for an administrative expense under section 503(b)(9) cannot be a claim for

services provided."); Brown & Cole Stores, LLC v. Associated Grocers, Inc. (In re Brown &

Cole Stores, LLC), 375 B.R. 873, 878 (B.A.P. 9th Cir. 2007) ("By the plain terms of the statute,

a vendor's right to assert an administrative claim is limited [in that] the vendor must have

provided goods (not services)"); In re Samaritan Alliance, LLC, No. 07-50735, 2008 Bankr.

LEXIS 1830, at *6-7 (Bankr. E.D. Ky. June 20, 2008) (finding section 503(b)(9) inapplicable

because claimant provided what was "more properly characterized as a 'service.'"). As one

court explained:

> [Section] 503(b)(9) administrative expense priority extends only to
> the value of goods received by the debtor in the ordinary course of
> its business within 20 days before the bankruptcy case. It does not
> extend to the value of the services rendered to a debtor during this
> 20 day time frame. Nor does it extend to the value of goods that a
> debtor may have received in this time frame if such goods were not
> received in the ordinary course of the debtor's business.

In re Plastech Engineered Prods., 394 B.R. 197, 151 (Bankr. E.D. Mich. 2008) (emphases in

original).

   27.    Bankruptcy courts have almost universally applied Article 2's definition

of the term "goods." E.g., In re Goody's Family Clothing Inc., 401 B.R. at 134 (discussing wide

application of Article 2 and stating that " 'Goods' are something that is 'moveable.'") (citing In

re Plastech Engineered Prods., 397 B.R. 828, 836 (Bankr. E.D. Mich. 2008) (adopting UCC

Article 2 definition of goods for 503(b)(9) claims)); see also In re Samaritan Alliance, LLC,

2008 WL 2520107, at *3 (Bankr. E.D. Ky. 2008) (same); In re Deer, No. 06-02460, 2008 WL

12

723982, at *1-2 (Bankr. S.D. Miss. June 14, 2007) (same).  Under UCC § 2-105(1), "goods" are

defined, in relevant part, as:

> all things (including specially manufactured goods) which are
> *movable at the time of identification to the contract for sale* other
> than the money in which the price is to be paid, investment
> securities (chapter 8 of this title) and things in action.

In re Goody's Family Clothing Inc., 401 B.R. at 134 (quoting UCC § 2-205(1)) (emphasis in

original).

28.    Claims for services do not arise from the sale of "goods" and, accordingly,

are not goods under Section 503(b)(9).  Electricity, shipping and freight, labor, interest, late fees,

commissions, taxes, and breakage charges are not "goods."  See id. at 135 ("under the plain

meaning of the term 'goods' in both the UCC and the English language and based upon the

distinction between "goods" and "services" throughout in the Bankruptcy Code, a claim for an

administrative expense under section 503(b)(9) cannot be a claim for services provided."); In re

NE Opco, Inc., 501 B.R. 233 (Bankr. D. Del. 2013) (in depth analysis of meaning of the term

"good" and holding that electricity is not a "good" under the UCC or Section 503(b)(9))[10]; In re

Pilgrim's Pride Corp., 421 B.R. 231, 237 (Bankr. N.D. Tex. 2009) (freight services provided by a

trucking company are not goods under section 503(b)(9)); In re Plastech Engineered Prods., 397

B.R. at 836 (labor is not a good).

29.    Moreover, Section 503(b)(9) provides administrative expense priority

status only for the value of goods received by a debtor within the 20 days preceding the Petition

---

[10] Two courts have determined that electricity is a "good" for purposes of Section 503(b)(9).  In re Erving
Indus., Inc., 432 B.R. 354 (Bankr. D. Mass 2010); GFI Wisconsin, Inc. v. Reedsburg Util. Comm'n, 440 B.R.
791 (W.D. Wis. 2010).  The Delaware bankruptcy court in In re NE Opco disagreed, holding that electricity is
not a "good."  In re NE Opco, Inc., 501 B.R. 233.

Date.  11 U.S.C. § 503(b)(9).  In <u>Semcrude</u>, the Court stated that the invoice price should

generally be considered the "value" transferred:

> The word "value" is not defined in the Bankruptcy Code.
> However, there is ample and convincing authority to support the
> proposition that the invoice or purchase price is presumptively the
> best determinant of value. See 4 Collier or Bankruptcy, at ¶
> 503.16[1] (15th ed. 2008) ("In most situations "value" and
> "purchase price" ought to be synonymous under § 503(b)(9).").
> This presumption favoring the purchase price may be rebutted by
> evidence indicating that, under the facts and circumstances of a
> particular transaction, the purchase or invoice price is not an
> appropriate or relevant indicator of the "value" obtained by the
> Debtors.

416 B.R. at 405.

30.    Further, the Court in <u>Goody's</u> explained that costs required to make the

goods saleable are not entitled to administrative priority status, because "the word *received*

modifies the word goods in § 503(b)(9).  It is the *goods* and not the *value* that must be received

by the debtor to trigger § 503(b)(9)."  <u>In re Goody's Family Clothing Inc.</u>, 401 B.R. at 136

(quoting <u>In re Plastech Engineered Prods. Inc.</u>, 2008 WL 5233014, at *2 (Bankr. E.D. Mich.

2008)) (emphasis in original).

31.    Thus, fees included in invoices for freight and shipping, labor, interest,

taxes and late fees are not part of the "value" of the goods transferred.  <u>See</u>, <u>e.g.</u>, <u>In re Pilgrim's</u>

<u>Pride Corp.</u>, 421 B.R. at 237 (sustaining objection to 503(b)(9) claim for freight services); <u>In re</u>

<u>Plastech Engineered Products, Inc.</u>, 397 B.R. at 839 (sustaining objection to a 503(b)(9) claim

for the portion designated "labor"); <u>see also</u> Judith Greenstone Miller & Jay L. Welford,

503(b)(9) Claimants--The New Constituent, a/k/a "the 500 Pound Gorilla," at the Table, 5

DEPAUL BUS. & COMM. L.J. 487, 489 (2007) ("Presumably, the invoice price of the goods

(*exclusive of interest, freight or other charges*) would be the applicable amount in valuing the

claim, so long as it represents the price that was ordinarily used between the parties.") (emphasis added).

32.     In reviewing the Misclassified Claims, CP OpCo identified a number of charges for shipping and freight, electricity, labor, taxes, interest, breakage charges, and commissions, which are not claims for goods or the value thereof, and therefore are not entitled to administrative priority status.  As such, these Misclassified 503(b)(9) Claims should be reclassified as general unsecured, non-priority claims in the amounts set forth in Exhibit A.

### iv.  Goods Must be *Received* by the Debtor Within the Twenty-Day Period Preceding the Petition Date to Obtain Administrative Priority Status.

33.     Bankruptcy Code Section 503(b)(9) grants administrative expense priority status to claims for the value of goods sold to and received by a debtors within the 20-day period preceding the petition date.  11 U.S.C. § 503(b)(9).  Accordingly, a claim for goods delivered to the Debtors outside of this 20-day period (i.e., earlier than January 24, 2014 or later than February 12, 2014) (in its entirety, the "503(b)(9) Period") is not entitled to priority.

34.     After reviewing each of the Misclassified 503(b)(9) Claims, CP OpCo has determined that several of such claims are not for goods received by the Debtors within the 503(b)(9) Period.  Rather, those claims are based on goods received by the Debtors more than 20 days prior to the Petition Date.  Accordingly, such claims do not satisfy the requirements of Section 503(b)(9) and therefore should be reclassified as general unsecured, non-priority claims.

### v.  Claims Arising From the Lease or Rental of Goods Are Not Entitled to Administrative Expense Status.

35.     Section 503(b)(9) grants administrative expense priority status to claims for the value of any goods sold to and received by a debtor within the 20-day period preceding the petition date.  11 U.S.C. § 503(b)(9).  Though the Bankruptcy Code does not define "sale,"

15

the UCC defines a "sale" as "the passing of title from the seller to the buyer for a price." UCC §

2-106(1). The transfer of possession, but not title, is not a sale. See In re Modern Metal

Products Co., No. BANKR. 08-73908, 2009 WL 2969762, at *2 (Bankr. N.D. Ill. Sept. 16, 2009)

("Without the passing of title, there could be no sale."); see also In re Goody's Family Clothing

Inc., 401 B.R. at 136 (Bankr. D. Del. 2009) ("However, section 503(b)(9) does not provide for

the allowance of an administrative claim for goods shipped. Instead, section 503(b)(9) allows an

administrative claim for goods sold.").

      36.     After reviewing each of the Misclassified 503(b)(9) Claims, CP OpCo has

determined that several are claims for goods that the Debtors rented or leased. As such goods

were never sold to the Debtors, such claims are invalid and should be reclassified as general

unsecured, non-priority claims.

**B.     The Misclassified Administrative Claim.**

      37.     Bankruptcy Code Section 503(b)(1)(B) provides, in relevant part:

> there shall be allowed administrative expenses, other than claims
> allowed under section 502(f) of this title, including—
>
>     any tax—
>
> > incurred by the estate, whether secured or unsecured. . .
> > except a tax of a kind specified in section 507(a)(8) of this
> > title; . . .

11 U.S.C. § 503(b)(1)(B)(i) (emphasis added).

      38.     Taxes which are administrative expenses are taxes "which the trustee

incurs in administering the debtor's estate, including taxes on capital gains from sales of property

*by* the trustee and taxes on income earned *by* the estate during the case." Matter of Columbia

Gas Sys., Inc., 146 B.R. 114, 116 (Bankr. D. Del. 1992) (emphasis in original) (quoting S.Rep.

No. 989, 95th Cong., 2d Sess. 66 (1978)) aff'd sub nom. In re Columbia Gas Transmission

Corp., 37 F.3d 982 (3d Cir. 1994). Generally, a tax liability is incurred on the date it accrues, not on the date of the assessment. In re Columbia Gas Transmission Corp., 37 F.3d at 985 (citations omitted). Therefore, whether a tax is incurred postpetition turns on whether the estate's "legal obligation, or liability on a claim, to pay the tax first arose before or after the filing date." Matter of Columbia Gas Sys., Inc., 146 B.R. at 116 (citing 11 U.S.C. § 101(12)).

39.     After reviewing the books and records of the Debtors and CP OpCo, CP OpCo has determined that a substantial portion of the claim asserted by the Arkansas Department of Finance & Administration is for taxes incurred prior to the commencement of the Chapter 11 Cases, and was not incurred *by the estate* during the Chapter 11 Cases. Accordingly, the portion of such claim for taxes incurred prior to the commencement of the Chapter 11 Cases (the "Misclassified Administrative Claim") is not entitled to administrative priority under Bankruptcy Code Section 503(b)(1)(B) and should be reclassified as an unsecured claim pursuant to Section 507(a)(8), subject to the right of the Liquidation Trust and other parties-in-interest to object to such claim as provided in Article X of the Plan or Section 502 of the Bankruptcy Code and Rule 3007 of the Bankruptcy Rules.

## RESPONSES

### A.     Filing and Service of Responses

40.     In order to contest this Omnibus Objection, a claimant must file a written response to this Omnibus Objection (a "Response") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), 824 North Market Street, Wilmington, Delaware 19801, which must be served so as to be actually received no later than **January 7, 2014** at **4:00 p.m. (Eastern Time)** by the following parties:

17

Counsel for CP OpCo

Gordon Silver
1888 Century Park East, Suite 1500
Los Angeles, CA 90067
Attn:  Eve H. Karasik, Esq.

- and –

Fox Rothschild LLP
Citizens Bank Center, Suite 300
919 North Market Street
Wilmington, DE 19801
Attn:  Jeffrey Schlerf, Esq.

United States Trustee

Office of the United States Trustee
844 North King Street, Suite 2207
Wilmington, Delaware  19801
Attn:  David L. Buchbinder, Esq.

**B.**    **Contents of Responses**

41.    Every Response must contain, at a minimum, the following information:

a.    a caption setting forth the name of the Bankruptcy Court, the name of the Debtors, the case number, and the title of the Omnibus Objection to which the Response is directed;

b.    the name of the claimant and description of the basis for the amount of the Misclassified Claim; a concise statement specifically setting forth the reasons why the Misclassified Claim should not be reclassified by the Bankruptcy Court in the manner set forth in the objection, including, without limitation, the specific factual and legal bases in support of the Response;

18

      c.     all documentation or other evidence of the Misclassified Claim to the extent not included with the Misclassified Claim previously filed with the Court, upon which the claimant will rely in opposing the objection;

      d.     the address(es), if different from that or those presented in the Misclassified Claim, to which CP OpCo must return any reply to the Response; and

      e.     the name, address and telephone number of the person possessing ultimate authority to reconcile, settle or otherwise resolve the Misclassified Claim.

## SEPARATE CONTESTED MATTERS

42.     Each of the Misclassified Claims (and CP OpCo's objections thereto, as asserted in this Omnibus Objection) constitutes a separate contested matter as contemplated by Bankruptcy Rule 9014. CP OpCo requests that any order entered by the Court with respect to an objection asserted in this Omnibus Objection be deemed a separate order with respect to each Misclassified Claim.

## RESERVATION OF RIGHTS

43.     CP OpCo expressly reserves the right to amend, modify or supplement this Omnibus Objection, and to file additional objections to any Buyer Pay Claims asserted in the Chapter 11 Cases including, without limitation, omnibus, administrative, and substantive objections with respect to any of the Misclassified Claims, and including, without limitation, claims which are designated Buyer Pay Claims after the date of the Omnibus Objection. Should this Omnibus Objection be dismissed or overruled, CP OpCo also reserves the right to object to any of the Misclassified Claims on any other grounds that law or equity permit.

19

## ADJOURNMENT OF HEARING

44.     CP OpCo reserves the right to adjourn the Hearing on any Misclassified

Claim subject to this Omnibus Objection.  In the event that CP OpCo so adjourns the Hearing,

the adjournment will be reflected on the agenda for the Hearing on this Omnibus Objection.

## FURTHER INFORMATION

45.     Questions about this Omnibus Objection or requests for additional

information about the proposed disposition of the Misclassified Claims should be directed to CP

OpCo's counsel, in writing, at the Los Angeles address listed below (Attn: Danielle A. Pham,

Esq.), or by telephone at (213) 443-8730.  **Claimants should not contact the Clerk of the**

**Court to discuss the merits of their Claims or this Omnibus Objection.**

## NOTICE

46.     Notice of this Omnibus Objection will be given to: (i) the Office of the

U.S. Trustee; (ii) each of the claimants whose Buyer Pay Claims are subject to this Omnibus

Objection; and (iii) all parties who have filed requests for service of papers pursuant to

Bankruptcy Rule 2002.  CP OpCo submits that under the circumstances no other or further notice

is necessary.

## CONCLUSION

WHEREFORE, CP OpCo respectfully requests that the Court enter an order,

substantially in the form annexed hereto as Exhibit E, (i) reclassifying the Misclassified

503(b)(9) Claims as set forth in Exhibit A, (ii) reclassifying the Misclassified Administrative

Claim as set forth in Exhibit B, and (iii) granting such other relief as may be just and proper.

Dated: Wilmington, Delaware

December 18, 2014

**FOX ROTHSCHILD LLP**

By: _____

Jeffrey M. Schlerf (No. 3047)
John H. Strock (No. 4965)
L. John Bird (No. 5310)
919 North Market Street
Suite 300
Wilmington, Delaware 19801
Telephone:    (302) 654-7444

—and—

GORDON SILVER
Eve H. Karasik (California Bar No. 155356)*
Danielle A. Pham (California Bar No. 269915)*
1888 Century Park East, Suite 1500
Los Angeles, California  90067
Telephone: (213) 443-8730
Facsimile:  (310) 201-5974

Gabrielle A. Hamm (Nevada Bar No. 11588)*
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada  89169
Telephone: (702) 796-5555
Facsimile:  (702) 369-2666

*Admitted *pro hac vice*

Counsel for CP OpCo, LLC

21